Eric A. Grasberger (*pro hac vice*)
eric.grasberger@stoel.com
Mario R. Nicholas (SB #273122)
mario.nicholas@stoel.com
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for JH Kelly, LLC*

Aaron R. Gruber (SB #209509)
agruber@rallsgruber.com
Ralls Gruber & Niece LLP
1700 S. El Camino Real, Suite 150
San Mateo, CA 94402
Telephone:  650.445.0543
Facsimile:  650.240.2250

*Attorneys for Pacific Gas and Electric Company*

Marion T. Hack (SB #179216)
marion.hack@troutman.com
Luke Nicholas Eaton (SB #280387)
Luke.eaton@troutman.com
Troutman Pepper Hamilton Sanders LLP
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:  213.928.9800
Facsimile:  213.928.9850

*Attorneys for AECOM Technical Services, Inc.*

Henry A. Wirta, Jr. (SB #110097)
hwirta@hfdclaw.com
Harrington Foxx Dubrow & Canter, LLP
601 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:  415.288.6600
Facsimile:  415.288.6618

*Attorneys for Ed Staub & Sons Petroleum, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>PG&E CORPORATION<br><br>           v.<br><br>AECOM TECHNICAL SERVICES, INC. | Case No. 4:20-cv-05381-HSG (Lead Case)<br><br>(Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008)<br><br>(Consolidated with Case No. 3:20-cv-08463-EMC)<br><br>**STIPULATED ORDER REGARDING ELECTRONIC DISCOVERY** |

This Stipulated Order Regarding Electronic Discovery ("eDiscovery Protocol") governs

discovery of electronically stored information ("ESI"), paper, and other identified relevant media

in this case between JH Kelly, LLC ("Kelly"), AECOM Technical Services, Inc. ("AECOM"),

Pacific Gas and Electric Company ("PG&E"), and Ed Staub & Sons Petroleum, Inc. ("Staub")

(each a "Party" and collectively the "Parties") regarding the construction project ("Project") that is the subject of the above-captioned lawsuit.

## I.    OBJECT AND PURPOSE

The object and purpose of this eDiscovery Protocol is to define, clarify and express the processes and procedures the Parties will follow with respect to their discovery obligations under the Federal Rules of Civil Procedure in the above-captioned lawsuit, and specifically with respect to ESI.[1]

## II.    COOPERATION

The Parties agree to cooperate in good faith in conducting discovery throughout the course of the matter.  Specifically, the Parties agree to (i) develop knowledge about the technical aspects of e-discovery related to the Project (or have reasonable access to those with such knowledge), including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology; and (ii) cooperate to minimize disputes regarding e-discovery or other discovery in this proceeding.

## III.    E-DISCOVERY LIAISONS

The Parties agree to designate one or more individuals to act as liaisons for purposes of meeting and conferring regarding discovery of ESI.  At least one designated liaison(s) shall be an attorney (outside counsel), and all designated liaison(s) shall be prepared to accomplish the goals of cooperation set forth above.

## IV.    PRESERVATION

The Parties agree that preservation and production of potentially relevant ESI will be reasonable and proportional to what is at issue in the case, including, but not limited to, the disputed factual issues, expert issues and the amounts in dispute.  The Parties will cooperate on the scope of preservation.

---

[1] Kelly and AECOM executed a prior version of this eDiscovery Protocol while Kelly's lawsuit against AECOM was pending in the Superior Court of the State of California, County of Shasta, as Case No. 192600.  To the extent a dispute arises between Kelly and AECOM regarding either party's e-discovery practices and procedures prior to the date of execution of this eDiscovery Protocol, Kelly and AECOM agree to comply with the dispute process in Article X herein.

**A.     Preservation of Metadata**

The Parties agree to take reasonable steps to preserve records in a form that will permit the collection and production of metadata that is necessary to fulfill their agreement on the form of production.

**B.     Specific Preservation Agreements**

As of the date of the execution of this eDiscoveryProtocol, but without waiving any rights, claims, or defenses regarding the Parties' conduct prior to execution of this eDiscovery Protocol, the Parties agree to use reasonable steps to preserve documents consistent with the Party's record management systems, routine computer operation, ordinary business practices, the guidelines, rules and standing orders of this Court, and the preservation requirements of this eDiscovery Protocol.  As used in this eDiscovery Protocol, "reasonable steps" include: (a) identifying and agreeing on individuals reasonably likely to possess or control potentially relevant documents; (b) notifying such individuals of their duties to preserve potentially relevant documents under the terms of this Order; (c) identifying non-custodial sources of potentially relevant documents (including, but not limited to public folders, project databases and shared network folders); and (d) monitoring compliance with the preservation requirements of this Order.

The Parties specifically agree that:

1. As of the date of the execution of this eDiscovery Protocol, but without waiving any rights, claims, or defenses regarding the Parties' conduct prior to execution of this eDiscovery Protocol, potentially-relevant ESI and documents ("PRM") created or received from January 1, 2015, to the completion of all discovery under Paragraph V.C of this eDiscovery Protocol will be preserved.  If a Party discovers that PRM created or received from January 1, 2015, through the completion of all discovery under Paragraph V.C has not been preserved in accordance with applicable law, that Party shall immediately notify the other parties of all material facts related to the PRM that was not preserved.  Nothing in this paragraph shall be a waiver of any Parties' rights with respect to spoliation of evidence.

2. By February 5, 2021, the Parties shall agree on a list of the custodians (the "Custodian List") (1) for whom PRM should be preserved, and (2) for whom relevant and responsive PRM ("Relevant Material") should be initially produced in the manner described herein, to the extent not already preserved and/or produced. Subject to the dispute process in Article X herein, the Parties may seek to add or remove individuals from the Custodian List, or change the designation status of the individuals on the Custodian List, as may be appropriate as the lawsuit progresses. An initial Custodian List is attached hereto as **Exhibit 3**, subject to amendment in writing by agreement of the Parties.

3. By February 5, 2021, the Parties shall agree on a list of the non-custodial data sources and systems from which PRM should be preserved.  Subject to the dispute process in Article X herein, the Parties may seek to add or remove sources and systems from this list as may be appropriate as the lawsuit progresses.

4. The following data sources need not be preserved:

   (a) deleted, slack, fragmented, or unallocated data on hard drives;

   (b) random access memory (RAM) or other ephemeral data;

   (c) online access data such as temporary internet files, history, cache, or cookies;

   (d) data in metadata fields that are frequently updated automatically, such as last-opened dates; and

   (e) System or executable files (.exe., .d11, etc.).

5. The Parties agree to preserve ESI from data sources that are not reasonably accessible because of undue burden or cost, including without limitation data from smartphone devices (Blackberry, Android, or iPhone, for example), but such ESI need not be searched, reviewed, or produced absent a showing of good cause by the requesting Party.

# V.   SCOPE AND PHASING OF DISCOVERY

**A.   Time Frame for e-Discovery**

The Parties agree to initially limit collection to PRM created or received from January 1, 2015 to January 29, 2019, the period of time likely to contain information most relevant to this dispute.  This means that for the purposes of an initial document production in response to any party's discovery requests ("Initial Production"), the Parties shall collect and produce Relevant Material, subject to objections, using the search protocol to be established under Section VI, from each and every custodian identified in Exhibit 3 and each and every non-custodial data source identified for Initial Production under Paragraph IV.B.3 from January 1, 2015 to January 29, 2019, with the following exceptions: (a) AECOM and PG&E have negotiated specific date ranges for certain witnesses, and (b) AECOM has requested and PG&E has agreed to expand the date range prior to January 1, 2015 for certain documents regarding Gulf Interstate Engineering's work related to the Project, and after January 29, 2019 for certain documents related to PG&E's backcharge claims on the Project (AECOM and PG&E continue to meet and confer regarding the scope of any productions concerning documents dated during these extended date ranges). Besides those agreed-upon expansions to the date range, the January 1, 2015 to January 29, 2019 date range shall be expanded only upon a showing of good cause.  The Parties agree to continue to meet and confer about the scope and phasing of discovery.

**B.   Identification and Collection of Relevant Material**

The Parties agree that they are prioritizing for production the custodian and non-custodial sources likely to have any Relevant Material. Additional PRM, while preserved, will not be searched unless deficiencies in the initial production are evidenced and additional production is requested.

**C.   Additional Deadlines for Discovery**

Discovery shall proceed according to the following deadlines:

1.   By February 5, 2021, to the extent not already completed (Kelly and AECOM previously agreed to a list of search terms in this matter), the Parties shall agree on

1    search terms and other search criteria to be applied to collected data pursuant to

2    Section VI below.

3    2.    The Parties shall complete their document productions as follows:

4    a.    To the extent not already produced, Responsive Material shall be produced

5    on a rolling basis and, in all cases, be produced no later than March 15,

6    2021.

7    b.    To the extent not already produced, privilege logs meeting the

8    requirements of Section VIII.B shall be produced by April 15, 2021.

9    ## VI.    SEARCH

10    The Parties agree to meet and confer about the terms they will use to (1) search PRM to

11    identify Relevant Information that is subject to production, and (2) filter out PRM that is not

12    subject to production.  The Parties will cooperate in the development of appropriate search terms.

13    ## VII.    PRODUCTION FORMATS

14    **A.    General Agreement**

15    The format of the production will contain a cross-reference load file with a formatted

16    metadata load file (.DAT) and an image formatted load file (.OPT).

17    **1.    Physical Source Documents (Paper) Documents**

18    (a) All Physical Source Documents (Paper) shall be scanned and produced as
    **single-page Group IV TIFFs**, with at least 300 dots per inch (dpi).  Each
19    TIFF image shall be named according to the corresponding bates number
    associated with the document.  Each image shall be branded according to the
20    bates number.  TIFFs shall show all text and images that would be visible to a
    user of the hard copy documents. Images may be reduced by up to 5% to allow
21    for a dedicated space for page numbering and other endorsements of
    documents.
22

23    (b) A commercially acceptable technology for optical character recognition
    ("OCR") shall be used for all scanned, hard copy documents. OCR text shall
24    be provided as a single text file for each document, and the filename itself
    should match its respective TIFF filename.

25    (c) Any documents containing color elements that are integral to better
    understanding a document (i.e., charts, graphs, photographs, diagrams,
26    drawings, etc.) shall be scanned in color and provided as **single-page JPG
    images**.
27

28    (d) Parties may make any oversize drawings and plans that are not already
    produced electronically available for review and production as requested on a

case-by-case basis.

(e) **Scanned documents are to be physically <u>and</u> logically unitized[2] by the producing Party**.  Document unitization is the process of determining where a document begins. Multiple distinct documents will not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

**2.**   **Electronic (ESI) Documents**

(a) ESI shall be produced as single-page Group IV TIFF images (for black-and-white documents) or single-page JPG images (for color documents) with the production number burned in, document metadata (including extracted text), *and a link to the native*.  Individual ESI items that will exceed 150 imaged pages will be produced natively with a slip sheet and without an image.

(b) The following file types are exempted from imaging:  Excel spreadsheets, Autocad files, .dwg files (or the like), Microsoft Project files, Access databases, and any scheduling software files.  These files shall be produced with a TIFF slip sheet with a single identifying bates number, document metadata (including extracted text), and a link to the native. The Parties will meet and confer regarding additional file types (e.g., audio/video files) that are only to be produced in native format.

(c) All ESI shall be processed using Pacific Standard Time and Pacific Daylight Time.

(d) The Parties will exchange the following metadata fields:

        BEGDOC
        ENDDOC
        BEGATTCH
        ENDATTCH
        DOCTYPE
        DOCTITLE
        SUBJECT
        FILEEXT
        DOCDATE

---

[2] As defined by the Sedona Conference, "unitization" is:

The assembly of individually scanned pages into documents. Physical Unitization utilizes actual objects such as staples, paper clips and folders to determine pages that belong together as documents for archival and retrieval purposes. Logical unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers and other logical indicators. This process should also capture document relationships, such as parent and child attachments.

The Sedona Conference Glossary (4th ed. Apr. 2014).

1
2
3
4
5
6
7
8
9
10
11
12

PARENTDATE
MD5HASH
AUTHOR
FROM
TO/RECIP
COPIED
BCC
DATESENT
TIMESENT
DATE RECEIVED
TIME RECEIVED
DATECREATED
DATELSTMOD
TIMELSTMOD
PGCOUNT
FULLTEXT (extracted text)
DOCLINK (native link)
FILEPATH
CUSTODIAN
DUPCUSTODIAN
FILENAME
FILESIZE

Prior to the first production, the Parties will confirm the naming conventions for the metadata fields of their respective database systems to ensure all relevant metadata is in the desired format and field name variations are accounted for the respective databases. The Parties agree to continue to meet and confer about the production formats as necessary.

**B.     De-Duplication**

A Party is only required to produce a single copy of a responsive document.  Parties will globally de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). Parties will also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document will be produced, assuming that all previous emails in the thread are contained within the final message.  Where a prior email contains an attachment, that email and attachment **shall not be removed** as a "near-duplicate."  ESI that is not an exact duplicate shall not be removed. Paper documents shall not be eliminated as duplicates of responsive ESI.  To the extent the Parties de-duplicate stand-alone electronic documents against an email attachment, the attachment to the email must be the document that is produced.

**C.     Production of Emails**

Parent-child relationships (the association between emails and attachments) will be preserved, and attachments to emails will not be eliminated from the parent email.  Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata.

**D.     Other Specific Production Agreements**

The Parties further agree as follows:

1. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced even if part of families.

2. The Parties will identify as exception files those documents that contain little or no relevant content, and agree to exclude such files from processing and production (e.g., v-cards and calendar appointments).

3. The Parties will identify the categories of paper files that it intends to scan and produce prior to production to ensure that the receiving party is receiving relevant data and not "filler."  Alternatively, the Parties will make the paper available for the other to pick and choose relevant files.

4. The Parties will make reasonable efforts to identify as exception files those documents that cannot be produced or imaged due to technical difficulties (such as corruption, password protection, digital rights management, or proprietary software associated to the file).

5. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied).

6. The Parties will confer as to the means and methods to transmit the productions. All productions will be encrypted for transmittal.

## VIII.     DOCUMENTS PROTECTED FROM DISCOVERY

**A.     Non-Waiver of Protection**

Pursuant to the Federal Rules of Civil Procedure, any Party's production of documents covered by an applicable privilege or protection shall not constitute a waiver of the privilege or protection with respect to those documents or the subject matter of those documents in this case or any other federal or state proceeding.  Nothing in this paragraph shall require a Party to produce documents that are protected from disclosure.  This paragraph shall be interpreted to provide the greatest protection permitted by law.  The Parties' Clawback Agreement, attached as **Exhibit 1**, shall apply to documents processed under this eDiscovery Protocol.

1  **B.      Privilege Logs**

2          **1.      Relevant Material Withheld on Grounds of In-House Counsel**

3                   **Communication**

4          To the extent not already completed, the Parties agree to identify and exchange a list of in-

5  house attorney(s) who communicated on legal issues that are relevant to the claims and defenses

6  in the case.  Each party may supplement the list of identified attorneys as may be appropriate as

7  the lawsuit progresses.  The Parties agree that these communications will be withheld

8  preliminarily subject to requests for further analysis or review.  The Parties will promptly meet

9  and confer to try to reach agreement on search terms, date restrictions, and custodians.  Privileged

10  or protected communications involving trial counsel's law firm(s) need not be placed in the First

11  Level In-House Privilege Log or the First Level Other Grounds Privilege Log.

12         A Party that withholds Relevant Material on the grounds of in-house counsel

13  communication:

14              a.   shall provide a listing of such withheld Relevant Material in Microsoft Excel
                     format ("First Level In-House Privilege Log") and shall be limited to objective
15                   information downloaded from ESI metadata and will include: a document control
                     number, date, from/author(s), to/recipient(s), subject/title, file type, and
16                   attachments;

17              b.   will only redact the privileged portion of the text or body of documents that are
                     produced with redactions (*i.e.*, to, from, and date fields will not be redacted); and
18

19              c.   will not include redactions on the privilege log.

20         Based on the First Level In-House Privilege Log, the Parties may challenge on a

21  document-by-document basis if the first-level information appears insufficient.  The Parties will

22  provide a more detailed entry for challenged items, including an indication of the privilege and/or

23  protection being asserted and a brief description of the subject addressed in the communication.

   The Parties agree to meet and confer to address undue burden related to this requirement.

24         **2.      Relevant Material Withheld on Other Grounds**

25         A Party that withholds Relevant Material on other grounds:

26
               a.   shall provide a listing of such withheld Relevant Material in Microsoft Excel
27                   format ("First Level Other Grounds Privilege Log") and shall be limited to
                     objective information downloaded from ESI metadata and will include: a
28

document control number, date, from/author(s), to/recipient(s), subject/title, file type, attachments, and a brief description of the document;

b.  will only redact the privileged portion of the text or body of documents that are produced with redactions (*i.e.*, to, from, and date fields will not be redacted); and

c.  will not include redactions on the privilege log.

Based on the First Level Other Grounds Privilege Log, the Parties may challenge on a document-by-document basis if the first-level information appears insufficient.  The Parties will provide a more detailed entry for challenged items, including an indication of the privilege and/or protection being asserted.  The Parties agree to meet and confer to address undue burden related to this requirement.

## IX.   THIRD-PARTY DISCOVERY

Any Party requesting documents from a non-party by subpoena ("Receiving Party") shall request that the non-party produce documents in compliance with the formatting requirements specified in Section VII and the privilege log requirements specified in Section VIII of this agreement.  Upon written request from the Party that did not issue the subpoena (the "Other Party"), the Receiving Party shall make available to the Other Party copies of all documents, communications or information obtained in response to the subpoena as processed by the Receiving Party (*i.e.*, with the same Bates numbering). The Other Party shall bear the reasonable costs, if any, of processing and producing such documents, communications or information, in accordance with the Federal Rules of Civil Procedure. The Receiving Party will also serve a declaration attesting that all of the documents, communications or information received from the third party have been shared with the Other Party (form attached as **Exhibit 2**).  All documents withheld by a Receiving Party shall be entered on a privilege log.

## X.   DISCOVERY DISPUTES

### A.   Discovery Disputes

All disputes concerning the scope and extent of discovery under this eDiscovery Protocol or the Federal Rules of Civil Procedure shall be heard and decided by the Court.  Prior to presenting a discovery related dispute to the Court, the Parties shall make a reasonable and good

1  faith attempt at an informal resolution of each issue intended to be presented to the Court, and

2  must satisfy any applicable meet and confer requirements.

3  **B.     Disclosure of Privileged Information Not a Waiver**

4       Disclosure of privileged or protected information connected with the litigation to the

5  Court shall not be a waiver of privilege or a right of protection in this cause and is also not a

6  waiver in any federal or state proceeding.

7                    **XI.     COSTS OF DISCOVERY**

8       Each Party shall be responsible for its own costs for collecting, culling, searching,

9  formatting, and producing its documents to the other Party, with the exception of the costs

10  incurred in processing and producing documents obtained from a non-party in response to a

11  subpoena, which shall be borne in the manner described in Paragraph IX.

12                      **XII.     MODIFICATION**

13       This eDiscovery Protocol may only be modified by stipulation in writing of the Parties

14  or upon motion of any Party for good cause shown, subject to approval by the Court.

15  **PURSUANT TO STIPULATION, IT IS SO ORDERED**

16  Dated: 2/9/2021

17  _____

18  HAYWOOD S. GILLIAM, JR.
    United States District Judge

19

20

21

22

23

24

25

26

27

28

1    **IT IS SO STIPULATED:**

2    DATED:  February 2, 2021

3                                                                **STOEL RIVES LLP**

4                                                                By:   */s/ Mario R. Nicholas*
                                                                         Eric A. Grasberger
5                                                                        Mario R. Nicholas

6                                                                *Attorneys for JH Kelly, LLC*

7

8    DATED:  February 2, 2021

9                                                                **RALLS GRUBER & NIECE LLP**

10                                                               By:   */s/ Aaron R. Gruber*
                                                                         Aaron R. Gruber
11
                                                                *Attorneys for Pacific Gas and Electric*
12                                                              *Company*

13   DATED:  February 2, 2021

14                                                               **TROUTMAN PEPPER HAMILTON**
                                                                 **SANDERS LLP**
15

16                                                               By:   */s/ Luke N. Eaton*
                                                                         Marion T. Hack
17                                                                       Luke N. Eaton

18                                                               *Attorneys for AECOM Technical Services,*
                                                                 *Inc.*
19

20   DATED:  February 2, 2021                                    **HARRINGTON FOXX DUBROW &**
                                                                 **CANTER, LLP**
21

22                                                               By:   */s/ Henry A. Wirta, Jr.*
                                                                         Henry A. Wirta, Jr.
23

24                                                               *Attorneys for Ed Staub & Sons Petroleum,*
                                                                 *Inc.*
25

26

27

28

1    I, <u>Mario R. Nicholas</u>, am the ECF user whose ID and password are being used to file this

2  Stipulation in compliance with Civil L.R. 5-1(i)(3).  I hereby attest that the concurrence of the

3  filing of this document has been obtained from each of the other signatories indicated by a

4  conformed signature (/s/) within this document.

5  DATED:  February 2, 2021

6                                                     _/s/ Mario R. Nicholas_____

1

**Exhibit 1**

2

3

4

5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

| | |
|---|---|
| In Re | Case No. 4:20-cv-05381-HSG (Lead Case) |
| PG&E CORPORATION | (Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008) |
| v. | |
| AECOM TECHNICAL SERVICES, INC. | (Consolidated with Case No. 3:20-cv-08463-EMC) |
| | CLAWBACK AGREEMENT |

8

9

10

11

12

13

14      THIS CLAWBACK AGREEMENT ("Agreement") is made, entered into, and effective as

15  of February 1, 2021 (the "Effective Date"), by and between JH Kelly, LLC ("Kelly"), AECOM

16  Technical Services, Inc. ("AECOM"),  Pacific Gas and Electric Company ("PG&E"), and Ed

17  Staub & Sons Petroleum, Inc. ("Staub").  Throughout this Agreement, Kelly, AECOM, PG&E,

18  and Staub are sometimes individually referred to as a "Party" and collectively as the "Parties".

19      For purpose of defining terms in this Agreement, references made to the "Project" means

20  the construction project that is the subject of this lawsuit, commonly known as the Burney K2

21  Replacement Project and generally located at 37667 Highway 299, Burney, CA 96013, APN 028-

22  370-001, in Shasta County, California.

23      WHEREAS, an exchange of relevant, non-privileged documents and electronically-stored

24  information is necessary in the lawsuit;

25      WHEREAS, the timely production of such a large volume of paper and electronically-

26  stored information may include documents or electronically-stored information that are subject to

27  the attorney-client privilege and/or the work product doctrine ("Privileged Material");

28      NOW THEREFORE, the Parties agree and stipulate as follows:

1.      To maintain the schedule of the lawsuit and to minimize the cost and time necessary to review the large volume of documents and electronically-stored information, production of all documents and electronically-stored information by any of the Parties to this lawsuit is made without waiver of the attorney-client privilege or protection afforded to the documents or electronically-stored information under the work product doctrine.  Any privileged document or document and any electronically-stored information subject to the work product doctrine that is disclosed as part of the production of documents related to this lawsuit shall be deemed to have been inadvertently disclosed.

2.      With regard to all documents and electronically-stored information produced in this lawsuit, the Parties agree that (a) the Parties have exercised and/or will exercise all reasonable precautions to prevent inadvertent disclosure of privileged documents and electronically-stored information in light of the large volume to be produced in the time allotted; (b) any Party subsequently asserting privilege or work product protection (whether such inadvertent disclosure was identified by that Party or any other Party) shall be deemed to have immediately rectified the inadvertent disclosure; and (c) the prejudice to the disclosing Party of the inadvertent disclosure shall be deemed far in excess of the prejudice to the receiving Party for the purpose of determining the fairness of the subsequent assertion of privilege or work product protection.

3.      At any time after producing a document or electronically-stored information, a Party may assert the attorney-client privilege, work product protection or other privilege relating to that specific document or electronically stored information, and the validity of such assertion shall not be affected by the disclosure of such document or electronically-stored information to any other Party to this lawsuit.

4.      As a sign of mutual courtesy and professionalism, to the extent it appears to any Party that any electronically-stored information or other document or information produced by another Party may contain Privileged Material, the Party that received the electronically-stored information or other document or information (the "Receiving Party") shall treat the material as privileged and confidential and shall: (a) promptly notify the Party that produced the document or

electronically-stored information (the "Producing Party") in writing of the production; (b) return, sequester, or destroy the material, including all copies thereof; and (c) not use in any way or disclose the material or any information therein unless the Producing Party states in writing that it does not claim any privilege with respect to the material at issue.

5.      After being notified of a claim of privilege, the Receiving Party agrees to and must:  (a) promptly return, sequester, or destroy the specified electronically-stored information or other document or information, and any copies thereof (including electronic and otherwise); (b) not use or disclose the specified electronically stored information or other document or information until the claim is resolved;  and (c) take reasonable steps to retrieve the specified electronically-stored information or other document or information, and any and all information found within it, if the Receiving Party disclosed it before being notified of the claim of privilege by the Producing Party.

6.      The Parties shall not disclose any electronically-stored information or other document or information produced as part of this lawsuit to any other person or entity that is interested or involved in this lawsuit unless and until such new person or entity agrees to the terms of, and becomes a party to, this Agreement.

7.      This Agreement shall apply retroactively to all electronically-stored information or other document or information produced in connection with this lawsuit, as well as to all future exchanges of electronically-stored information or other document or information in this lawsuit.

8.      In the event of a dispute between the Parties about whether the material at issue should be protected by privilege, the Parties shall submit the dispute to the Court. All protections and requirements of this Agreement shall remain in effect – and both Parties will continue to comply with the requirements – unless and until the Court has issued a ruling which states that the material at issue is not privileged.

9.      Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of each of his or her individual law firms and their respective clients.

IN WITNESS WHEREOF, the Parties have executed this Agreement by and through their

attorneys, as of the date first above written.

2   DATED:  February 2, 2021

3                                                          **STOEL RIVES LLP**

4                                                          By:   _/s/ Mario R. Nicholas_
                                                                Eric A. Grasberger
5                                                                Mario R. Nicholas

6                                                          *Attorneys for JH Kelly, LLC*

7

8   DATED:  February 2, 2021

9                                                          **RALLS GRUBER & NIECE LLP**

10                                                         By:   _/s/ Aaron R. Gruber_
                                                                Aaron R. Gruber
11
                                                           *Attorneys for Pacific Gas and Electric*
12                                                         *Company*

13  DATED:  February 2, 2021

14                                                         **TROUTMAN PEPPER HAMILTON**
                                                           **SANDERS LLP**
15

16                                                         By:   _/s/ Luke N. Eaton_
                                                                Marion T. Hack
17                                                               Luke N. Eaton

18                                                         *Attorneys for AECOM Technical Services,*
                                                           *Inc.*
19
    DATED:  February 2, 2021                               **HARRINGTON FOXX DUBROW &**
20                                                         **CANTER, LLP**

21

22                                                         By:   _/s/ Henry A. Wirta, Jr._
                                                                Henry A. Wirta, Jr.
23
                                                           *Attorneys for Ed Staub & Sons Petroleum,*
24                                                         *Inc.*

25

26

27

28

1

**Exhibit 2**

2

3

4

5
UNITED STATES DISTRICT COURT

6
NORTHERN DISTRICT OF CALIFORNIA

| 7 | In Re | Case No. 4:20-cv-05381-HSG (Lead Case) |
|---|---|---|
| 8 | PG&E CORPORATION | (Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008) |
| 9 | v. | |
| 10 | AECOM TECHNICAL SERVICES, INC. | (Consolidated with Case No. 3:20-cv-08463-EMC) |
| 11 | | |

12

13
I, _____, hereby certify and declare as follows:

14
1. As of the date of this declaration, the documents referenced as [bates

15
range/identification] are a true and complete copy of all the records received from

16
_____, as requested by _____.

17
2. No documents have been removed or altered.

18
I hereby declare that the above statement is true to the best of my knowledge and belief,

19
and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

20

21
[*signature page follows*]

22

23

24

25

26

27

28

DATED: _____, 2021.

_____

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stoel Rives LLP
Attorneys At Law
Portland

EXHIBIT 2 – DECLARATION OF [****]
REGARDING DISCOVERY OBTAINED FROM          -2-          CASE NO.: 4:20-CV-05381-HSG
[****]

109584973.3 0034592-00012

# Exhibit 3

## LIST OF CUSTODIANS FOR WHOM PRM SHOULD BE PRESERVED

### I.   JH KELLY, LLC

#### a.   Preservation and Collection

| Name | Job Title/Role | Date Range |
|------|----------------|------------|
| TC Cain | Safety | 01/01/2015 – 01/29/2019 |
| Jose Chavez | Field Engineer | 01/01/2015 – 01/29/2019 |
| Debby Davenport | Fab Shop Coordinator | 01/01/2015 – 01/29/2019 |
| Marianee Dean | AR Rep | 01/01/2015 – 01/29/2019 |
| Mark Deller | Iron Worker Superintendent | 01/01/2015 – 01/29/2019 |
| Mason Evans | President | 01/01/2015 – 01/29/2019 |
| Mike Frasier | Civil Estimator | 01/01/2015 – 01/29/2019 |
| Glenn Gaumitz | Field Engineer | 01/01/2015 – 01/29/2019 |
| Gabe Gourde | Electrical Department Lead | 01/01/2015 – 01/29/2019 |
| Rob Harris | VP/Business Development | 01/01/2015 – 01/29/2019 |
| Brad Hayes | Electrical Field Engineer | 01/01/2015 – 01/29/2019 |
| Tom Lee | Controller/Scheduler | 01/01/2015 – 01/29/2019 |
| Steve Lennon | Senior PM | 01/01/2015 – 01/29/2019 |
| Willy McOmie | VP/Safety Director | 01/01/2015 – 01/29/2019 |
| Beau Meek | Iron Worker Superintendent | 01/01/2015 – 01/29/2019 |
| Stacy Moore | Electrical Superintendent | 01/01/2015 – 01/29/2019 |
| Larry Nulliner | Site Superintendent | 01/01/2015 – 01/29/2019 |
| Sean O'Farrell | Senior Project Manager | 01/01/2015 – 01/29/2019 |
| Mike Pomeroy | Field Engineer | 01/01/2015 – 01/29/2019 |
| John Ragan | Fab Shop Superintendent | 01/01/2015 – 01/29/2019 |
| Mark Sandblast | Piping Estimator | 01/01/2015 – 01/29/2019 |
| Todd Simonis | Piping Superintendent | 01/01/2015 – 01/29/2019 |
| Chris Wend | Electrical Superintendent | 01/01/2015 – 01/29/2019 |
| Kris Wika | Carpenter Superintendent | 01/01/2015 – 01/29/2019 |

#### b.   Preservation and Limited Collection

[*None*]

#### c.   Preservation Only

| Name | Job Title/Role | Date Range |
|------|----------------|------------|
| Mark Andres | Field Engineer | 01/01/2015 – 01/29/2019 |
| Ron Boursaw | QA/QC | 01/01/2015 – 01/29/2019 |
| Luab Cha | Electrical Field Engineer | 01/01/2015 – 01/29/2019 |
| Grant Eby | Safety | 01/01/2015 – 01/29/2019 |
| Zach Grau | Electrician | 01/01/2015 – 01/29/2019 |
| Don Huffman | Safety | 01/01/2015 – 01/29/2019 |
| Amanda Kjallin | Safety | 01/01/2015 – 01/29/2019 |
| Jay Liang | Field Engineer | 01/01/2015 – 01/29/2019 |
| Nicole McOmie | Safety | 01/01/2015 – 01/29/2019 |
| Audel Pineda | Field Engineer | 01/01/2015 – 01/29/2019 |

| Jarod Pithan | Field Engineer | 01/01/2015 – 01/29/2019 |
| Kevin Van Fleet | Contracts Manager | 01/01/2015 – 01/29/2019 |
| Jim Voyles | Electrician | 01/01/2015 – 01/29/2019 |

## II.   AECOM TECHNICAL SERVICES, INC.

### a.   Preservation and Collection

| Name | Job Title/Role | Date Range |
| --- | --- | --- |
| Peter Apostolakis | CM | 01/01/2015-01/29/2019 |
| Lawrence Beh | Mechanical Engineer | 01/01/2015-01/29/2019 |
| Mike Belanger | Commissioning Mgr | 01/01/2015-01/29/2019 |
| Jose Cortes | Project Scheduler (Construction phase) | 01/01/2015-01/29/2019 |
| Don Divers | Senior VP | 01/01/2015-01/29/2019 |
| Rowena Domingo | Project Scheduler (Engineering phase) | 01/01/2015-01/29/2019 |
| Winston Ekren | Project Engineer | 01/01/2015-01/29/2019 |
| Patrick Elliot | CM | 01/01/2015-01/29/2019 |
| Dean Goward | Lead Electrical Engineer | 01/01/2015-01/29/2019 |
| Pete Holland | Executive VP; CEO West Region | 01/01/2015-01/29/2019 |
| Raymond Huang | Electrical Engineer | 01/01/2015-01/29/2019 |
| Gurpreet Kaur | Mechanical Engineer | 01/01/2015-01/29/2019 |
| Shawn Kelly | Project Director | 01/01/2015-01/29/2019 |
| Brad Killingsworth | Deputy CM | 01/01/2015-01/29/2019 |
| Savas Kolankaya | Lead Civil/Structural Engineer | 01/01/2015-01/29/2019 |
| Jeff Lowe | Lead Instrumentation & Controls Engineer | 01/01/2015-01/29/2019 |
| Steve Petto | Project Manager | 01/01/2015-01/29/2019 |
| Joe Rosinski | Construction PM | 01/01/2015-01/29/2019 |
| Derrick Shumpert | Procurement Mgr | 01/01/2015-01/29/2019 |
| John Talamo | Architect | 01/01/2015-01/29/2019 |
| Bob Turley | Project Director | 01/01/2015-01/29/2019 |
| Ocie Williams | Procurement Mgr | 01/01/2015-01/29/2019 |
| Brad Wolf | Lead Mechanical Engineer | 01/01/2015-01/29/2019 |

### b.   Preservation and Limited Collection

| Name | Job Title/Role | Limitation (i.e., date range, search terms) |
| --- | --- | --- |
| Shannon Couch | Safety Mgr | Jan. 1, 2017 to July 31, 2018 |
| Sundar Rajan | Electrical Engineer | Jan. 1, 2015 – June 30, 2017 |
| Teri Zink | Executive VP of Operations | Jan. 1, 2015 to Dec. 31, 2017 |

### c.   Preservation Only

| Name | Job Title/Role | Date Range |
| --- | --- | --- |
| Victor Auvinen | COO Pacific Region | 01/01/2015-01/29/2019 |
| Kimberly Choy | Electrical Engineer | 01/01/2015-01/29/2019 |
| Shannon Couch | Safety Manager | 01/01/2015-12/31/2016; 08/01/2018-01/29/2019 |
| Cynthia David | Instrumentation & Controls Engineer | 01/01/2015-01/29/2019 |
| Quirino Davis | Piping Engineer | 01/01/2015-01/29/2019 |

| Manuel Farias | Site Safety Representative | 01/01/2015-01/29/2019 |
| Eric Haase | Business Unit Manager | 01/01/2015-01/29/2019 |
| Hatem Harraz | Process Engineer | 01/01/2015-01/29/2019 |
| Yura Kit | Field Engineer | 01/01/2015-01/29/2019 |
| Gustavo Orozco | Civil Engineer | 01/01/2015-01/29/2019 |
| Sundar Rajan | Electrical Engineer | 07/01/2017-01/29/2019 |
| Ram Subramanian | Contract I&C Engineer | 01/01/2015-01/29/2019 |
| Ron Wika | Construction Manager | 01/01/2015-01/29/2019 |
| Galen Wu | Electrical Engineer | 01/01/2015-01/29/2019 |
| Teri Zink | Executive VP of Operations | 01/01/2018-01/29/2019 |

### d. Disputed Custodians

| Name | Job Title/Role | Parties' Response |
| --- | --- | --- |
| Patrick Dunn | Senior PM | JH Kelly requests that Patrick Dunn be included in the "Preservation and Collection" category for the date range Jan. 1, 2015 – Jan. 29, 2019 (or, alternatively, subject to meeting and conferring with AECOM, a more limited date range). AECOM agrees to and shall include Dunn in the "Preservation and Limited Collection" category and produce all emails exchanged between James Stanford and Patrick Dunn during the date range Jan. 1, 2015 – Jan. 29, 2019 which were not addressed to any other recipient(s). AECOM shall also preserve all PRM for custodians James Stanford and Patrick Dunn for the date range Jan. 1, 2015 – Jan. 29, 2019.  The parties are continuing to meet and confer regarding the possible collection of Dunn's emails and the parties reserve all rights, claims and defenses in this regard, including without limitation spoliation. |
| Vera Lovejoy | Project Scheduler (Construction phase) | JH Kelly requests (and PG&E joins in the request) that Vera Lovejoy be included in the "Preservation and Collection" category for the date range Jan. 1, 2015 – Jan. 29, 2019. AECOM advises that it no longer has possession, custody or control of any of Lovejoy's emails. The parties are continuing to meet and confer regarding the possible collection of Lovejoy's emails and the parties reserve all rights, claims and defenses in this regard, including without limitation spoliation. |
| James Stanford | Deputy CM | JH Kelly requests that James Stanford be included in the "Preservation and Collection" category for the date range Jan. 1, 2015 – Jan. 29, 2019 (or, alternatively, subject to meeting and conferring with AECOM, a more limited date range). |

|  |  | AECOM agrees to and shall include Stanford in the "Preservation and Limited Collection" category and produce all emails exchanged between James Stanford and Patrick Dunn during the date range Jan. 1, 2015 – Jan. 29, 2019 which were not addressed to any other recipient(s). AECOM shall also preserve all PRM for custodians James Stanford and Patrick Dunn for the date range Jan. 1, 2015 – Jan. 29, 2019. The parties are continuing to meet and confer regarding the possible collection of Stanford's emails and the parties reserve all rights, claims and defenses in this regard, including without limitation spoliation. |
|--|--|--|

### III.   PACIFIC GAS & ELECTRIC

#### a.   Preservation and Collection

| Name | Job Title/Role | Date Range |
|------|----------------|------------|
| Raul Ayala | Supervising Engineer/Facility Engineering | 01/01/2015 – 01/31/2019 |
| Ted Bestor | Principal Consulting Engineer | 01/01/2015 – 01/31/2019 |
| Pierre Bigras | Senior Director Construction - Facilities, Transmission, Distribution | 06/01/2017 – 01/31/2019 |
| Bryce Chamberlain | Construction Engineering Supervisor | 01/01/2015 – 01/31/2019 |
| Joe Cruz | Senior Project Manager - Gas Ops Project and Program Management | 09/01/2018 – 01/31/2019 |
| Charles Eglian | Senior Gas Asset Specialist | 01/01/2015 – 01/31/2019 |
| Chris Ellis | Principal Land Planner – Environmental Management | 01/01/2015 – 12/11/2017 |
| Hua Feng | Expert Business Analyst – Gas Transmission (Jul 2016-Dec 2017); Principal Technical Consultant (May 2015-Jul 2016). | 05/01/2015 – 07/31/2016 |
| Jeff Gravelle | Director, Gas Transmission Portfolio Management and Engineering (as of July 2017); Director, Gas Distribution Engineering and Design (prior to July 2017). | 07/01/2017 – 11/31/2018 |
| Geoffrey Jarpe | Manager of Instrumentation, Controls & Electric | 01/01/2015 – 01/31/2019 |
| Kristofer Kaupanger | Senior Control Systems Engineer. | 01/01/2015 – 01/31/2019 |
| Shudong Ma: | Supervising engineer. | 01/01/2015 – 11/22/2016 |
| Khaled Malsen | senior consulting electrical | 01/01/2015 – 01/31/2019 (or |

| | engineer | end of date of employment) |
|---|---|---|
| Gun Shim | Vice President Supply Chain and CPO | 01/01/2015 – 01/31/2019 |
| Evan Stark | Gas Transmission Portfolio Management | 07/01/2017 – 01/31/2019 |
| Roland Trevino: | Vice President Gas Operations Engineering & Design. | 01/01/2015 – 01/31/2019 |
| Ron Whyte | Construction manager | 01/01/2015 – 01/31/2019 |
| Mel Wong | Sr. Consulting Project Manager | 01/01/2015 – 01/31/2019 (or end of date of employment) |

### b.   Preservation Only

| Name | Job Title/Role | Date Range |
|---|---|---|
| Adam Cohen | Sourcing – Gas Transmission | 01/01/2015 – 01/31/2019 |
| James Davenport | *Unknown to AECOM* | 01/01/2015 – 01/31/2019 |
| Steven Delledera | Senior Manager, Gas Construction Management | 01/01/2015 – 01/31/2019 |
| Katrina Dyrby | Category Lead, Expert; Mechanical Engineer, Gas; T&D Materials Sourcing | 01/01/2015 – 01/31/2019 |
| Bill Granger | Senior Construction Manager | 01/01/2015 – 01/31/2019 |
| Kerry Green | Director, IT Sourcing (Feb 2015 – Oct 2017); Director, Materials and Gas Sourcing (Oct 2017 – Present) | 01/01/2015 – 01/31/2019 |
| Sam Khairi | Supervisor - Project Management (2013-Jul 2017); Manager, Gas Workstream Program (Jul 2017-present) | 01/01/2015 – 01/31/2019 |
| Sumeet Singh | Vice President of Portfolio Management & Engineering in PG&E's Gas Operations; Vice President, Asset & Risk Management in PG&E's Gas Operations | 01/01/2015 – 01/31/2019 |
| Andy Sipila | Associate Gas Engineer (2015); FIMP Gas Engineer | 01/01/2015 – 01/31/2019 |
| Ray Stanford | Director of Gas Transmission Engineering & Design | 01/01/2015 – 01/31/2019 |
| Kenny Taylor | Design Engineer | 01/01/2015 – 01/31/2019 |
| Tom Thompson | Senior Safety Specialist (Oct. 2006-present) | 01/01/2015 – 01/31/2019 |
| Deana Zane | Senior Design Drafter (Jun 2015 – Jun 2019); SCADA Specialist (Jul 2019-Jun 2020) | 01/01/2015 – 01/31/2019 |

### III.   ED STAUB & SONS PETROLEUM, INC.

[*To be Added*]

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing STIPULATED ORDER REGARDING
ELECTRONIC DISCOVERY on the following named person(s) on the date indicated below by:

☒   mailing with postage prepaid

☐   hand delivery

☐   overnight delivery

☒   email

☒   notice of electronic filing using the CM/ECF system (if person(s) is/are registered
with CM/ECF system)

to said person(s) a true copy thereof, contained in a sealed envelope, addressed to said person(s)
at his or her last-known address(es) indicated below.

Aaron R. Gruber
agruber@rallsgruber.com
Ralls Gruber & Niece LLP
1700 S. El Camino Real, Suite 150
San Mateo, CA 94402

Theodore Tselerodes
Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

*Attorneys for Pacific Gas and Electric
Company*

Marsha Ann Houston
Katten Muchin Zavis
2029 Century Park E #2600
Los Angeles, CA 90067-3012

*Attorneys for AECOM Technical
Services, Inc.*

Henry A. Wirta, Jr.
hwirta@hfdclaw.com
Harrington Foxx Dubrow & Canter, LLP
601 Montgomery Street, Suite 800
San Francisco, CA 94111

*Attorneys for Ed Staub & Sons Petroleum,
Inc.*

DATED: February 2, 2021.

STOEL RIVES LLP

By: ___/s/ Mario R. Nicholas___
MARIO R. NICHOLAS (SB #273122)
mario.nicholas@stoel.com
Attorneys for Plaintiff