1  AARON R. GRUBER (CABN 209509)
   agruber@rallsgruber.com
2  DYLAN J. CROSBY (CABN 299536)
   dcrosby@rallsgruber.com
3  Ralls Gruber & Niece LLP
   1700 S. El Camino Real, Suite 150
4  San Mateo, CA 94402
   Telephone:  650.445.0543
5
   Attorneys for Counterclaimant
6  PACIFIC GAS & ELECTRIC COMPANY
7
8              **UNITED STATES DISTRICT COURT**
9              **NORTHERN DISTRICT OF CALIFORNIA**
10                    **OAKLAND DIVISION**

| | |
|---|---|
| 11  In Re | Case No. 4:20-cv-05381-HSG (Lead Case) |
| 12  PG&E CORPORATION | (Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008) |
| 13              v. | |
| 14  AECOM TECHNICAL SERVICES, INC. | (Consolidated with Case No. 3:20-cv-08463-EMC) |
| 15 | |
| 16 | **COUNTERCLAIM OF PACIFIC GAS & ELECTRIC COMPANY** |
| 17 | **DEMAND FOR JURY TRIAL** |
| 18 | Complaint Filed:  January 25, 2019 |
| 19 | Trial Date:        February 14, 2022 |

20
21
22
23
24
25
26
27
28

Counterclaimant Pacific Gas and Electric Company (PG&E) files this Counterclaim against Counter-Defendant AECOM Technical Services, Inc. (AECOM) and alleges as follows:

**INTRODUCTION**

1.      This action concerns the Burney K2 Replacement Project (Project) located at 37667 Highway 299, Burney, California 96013 in Shasta County (Property).  The Project generally involved the replacement of the Burney Compressor Station to improve its reliability and operability, and the performance of various upgrades to the Station.  The Project also included demolition of existing equipment and facilities.

2.      The Burney Compressor Station is located along PG&E's "backbone" natural gas transmission pipeline and distribution system that provides service to around 4.2 million customers from Bakersfield, California to the southern border of the State of Oregon.  The Station compresses gas to a specified pressure, thereby allowing it to continue traveling along the pipeline.

3.      PG&E entered into an Engineering, Procurement and Construction of Natural Gas & Electric Transmission Facilities Agreement (EPC Agreement) with AECOM, wherein AECOM agreed to design, procure materials for, and construct the Project.

4.      As detailed below, AECOM failed to meet its obligations under the EPC Agreement, and eventually abandoned the Project without completing the Project.  To this day, PG&E continues to incur costs to remedy AECOM's failures on the Project.

**THE PARTIES**

5.      Counterclaimant PG&E is a California corporation with its principal place of business located at 77 Beale Street, San Francisco, California.  PG&E is the owner of the Property on which the Project at issue was constructed.

6.      Counter-Defendant AECOM Technical Services, Inc. (AECOM) is a California corporation with its principal place of business located at 300 South Grand Avenue, Los Angeles, California.  AECOM represents that it is and at all times during the project was a licensed contractor in the State of California under Contractors State License Board License No. 641639.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), which grants federal district courts original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

8.      Venue is proper in the Northern District pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which a substantial part of the events or omissions giving rise to PG&E's claims occurred, or a substantial part of property that is the subject of the action is situated.  Venue is also proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**INTRADISTRICT ASSIGNMENT**

9.      This matter was assigned to the Oakland Division of the Northern District of California.  Pursuant to Civil L.R. 3-2(c) intradistrict assignment to the Oakland Division is proper because this action was withdrawn from PG&E's bankruptcy proceeding that arose in San Francisco County.

**FACTUAL BACKGROUND**

A.      **PG&E and AECOM Enter Into the EPC Agreement.**

10.      In 2014, PG&E engaged Gulf Interstate Engineering (GIE) to prepare documents, including preliminary engineering and design documents, to be included in the Request for Proposal (RFP) for the Project.

11.      On August 3, 2015, PG&E solicited a competitive bid for the Project from AECOM (among other bidders) through the RFP.

12.      As part of the RFP and bidding process, AECOM was provided access to the (i) package prepared by GIE as part of the RFP and (ii) Project site.  AECOM was also provided an opportunity to ask PG&E questions concerning the Project, RFP, and other materials provided as part of the bidding process.

13.      The RFP package required AECOM to "evaluate all deliverables previously generated as part of the Burney K2 Replacement Preliminary Engineering contained in [the GIE

1  RFP package] to determine its adequacy and compatibility with the requirements of the" Project.

2  EPC Agreement, Attach. 1, Art. 20.2.1.   The RFP also provides that AECOM "shall take into

3  account when performing the scope of the Work" that the "documentation is in varying states of

4  accuracy" and that PG&E "makes no claim that any documentation is accurate."  *Id.* at Art. 20.2.2.

5  The RFP notes that "preliminary versions of some" of the engineering documents "were completed

6  in 2014" and that AECOM "shall update these as necessary."  *Id.* at Art. 20.2.8.

7         14.     The EPC Agreement's General and Specific Conditions contain similar notices

8  concerning the adequacy and accuracy of the RFP documents.  For example, the General Conditions

9  provide:

> INFORMATION FURNISHED BY PG&E: Data made available to Contractor by
> PG&E for preparing Contractor's Proposal and data made available to Contractor
> by PG&E during performance of the Work shall not relieve Contractor of
> responsibility for determining, through independent investigation if desired, the
> conditions affecting the cost and performance of the Work. PG&E makes no
> representation as to the completeness of the data and is not responsible for
> Contractor's conclusions drawn therefrom.

14  EPC Agreement, Attach. 2, Art. 3.1.  The Specific Conditions provide that AECOM's failure to

15  "assess fully the Scope of Work as required and described in the Contract shall not be accepted as

16  a basis for variations to the firm, fixed price and any pricing for changes."  EPC Agreement, Attach.

17  3, Art. 5.1.5.

18         15.     Bidders, including AECOM, submitted bids to construct the Project for PG&E's

19  consideration.  PG&E accepted AECOM's bid and thereafter executed a contract for the Project.

20         16.     On February 11, 2016, PG&E and AECOM entered into the EPC Agreement, a true

21  copy of which is attached hereto as **Exhibit A**.[1]  The EPC Agreement was for a total bid value of

22  $40,510,262.

23         17.     The EPC Agreement required AECOM to (i) furnish "all labor, equipment, and

24  materials necessary" and (ii) to "perform all engineering procurement and construction services to

25  complete" the Project.

26

27  _____
[1] Due to the size of the EPC Agreement, we have attached the executed Agreement, relevant portions of Attachment 1
28  (Project Specific Information), Attachment 2 (General Conditions), and Attachment 3 (Specific Conditions) to the
    Agreement.

18.     As such, AECOM was responsible for designing the Project, purchasing material and equipment for the Project, obtaining necessary permits and approvals to construct the Project, and constructing the Project.

19.     Thereafter, AECOM entered into a subcontract agreement with JH Kelly to perform AECOM's construction obligations under the EPC Agreement.  Specifically, on October 21, 2016, AECOM and JH Kelly entered into an Agreement Between Design-Builder and Subcontractor (Where Subcontractor Does Not Provide Design Services), Subcontract No. 60482831-SC-001 (Subcontract).

**B.     The EPC Agreement Required AECOM to Meet Certain Set Deadlines.**

20.     Section 4.1 of Attachment 3 the EPC Agreement provides a schedule, which includes the following milestones:

- **30% Design Review**: April 2016
- **60% Design Review**: May 2016
- **90% Design Review**: July 2016
- **IFC Drawings Complete**: September 2016
- **Engineering Completion**: October 17, 2016
- **Construction Mobilization**: October 2016
- **Preliminary Construction**: October-November 2016
- **Project Construction at Site**: March-November 2017
- **Commission and Testing Complete**: November 1, 2017
- **Substantial Completion**: November 17, 2017
- **Project Complete and Mobilization**: December 2017

The EPC Agreement provides that "Time is of the essence."

21.     AECOM failed to meet the design deadlines set forth in the EPC Agreement.

22.     AECOM also failed to obtain substantial completion of the Project by the November 2017 deadline.  "Substantial Completion" is defined in the EPC Agreement as "the date upon which: (i) construction is sufficiently complete and is functional for its intended use, in accordance with the Contract Documents, including to enable PG&E to perform full operations, (ii) all systems

are tested, commissioned and functioning satisfactorily, (iii) only punch list work or similar minor corrective work remains to be completed, and the completion of such work will not unreasonably interfere with PG&E's operations, and (iv) the remaining punch list work has been agreed by Contractor and PG&E."  EPC Agreement, Attach. 3, Art. 2.24.

23.  Specifically, as of November 2017, AECOM still had not completed work that included the following required to obtain substantial completion.  This included, among other things:

a.  Completion of all construction necessary to perform full operation of the Burney Compressor Station, including resolving issues with the mainline gas valves and repairing or replacing leaking valves;

b.  Testing of all systems to ensure satisfactory functioning, including battery load testing;

c.  Providing a fully functioning HVAC system in the new auxiliary building;

d.  Providing a reliable emergency standby generator;

e.  Completing the venting system for gas sources in all valve buildings;

f.  Completing the ventilation for the generator room;

g.  Demolition of all abandoned equipment and facilities, including the old auxiliary building and remaining underground utility facilities;

h.  Completing backfilling at all excavation sites;

i.  Remedying non-functioning fuel gas heaters;

j.  Completing coating in the fuel gas and compressor buildings;

k.  Installation of new conduit and power supply for the main gas solenoid and anti-surge valve;

l.  Painting of all above-ground facilities, piping, and valves;

24.  Where, as here, AECOM failed to obtain substantial completion, and work remained unfinished, the EPC Agreement permitted PG&E to "retain sufficient funds from payments due [AECOM] to repair or replace Work judged defective or incomplete by PG&E, to provide security for property damage liability [ ], and to discharge liens[.]"  EPC Agreement, Attach. 2, Art. 4.9.

25.     In addition to failing to meet the EPC Agreement's design and substantial completion deadlines, AECOM also failed to meet several additional deadlines, including failing to provide PG&E with complete "as-built" drawings by September 4, 2018.  To date, the as-built drawings remain incomplete.  PG&E considers this a major safety concern because they provide important details concerning the HVAC system, underground and above-ground electrical systems, and piping and duct routing.  Since as-built drawings highlight safety concerns and potential dangers existing in the Burney Compressor Station, they contribute to the emergency preparedness of PG&E's employees.

26.     AECOM abandoned the Project on January 19, 2019, without completing the Project.  To this date, PG&E continues to incur costs to complete the Project.

**C.      Key Provisions of EPC Agreement.**

27.     The EPC Agreement allows for the submission of written "change orders" to compensate AECOM for changes in the scope of work required to complete the Project.  For example, if PG&E asks AECOM to perform additional work or to make changes concerning the Project, such "Additional Work or changes shall be performed by Contractor only when authorized in writing and signed by PG&E."  EPC Agreement, Attach. 2, Art. 8.1; *see also* Attach. 2, Art. B-11.15 ("All formal notices, requests, demands, approvals and communications under the Contract (other than routine operational communications) [ ] will be in writing").  Likewise, AECOM is required to "immediately notify the PG&E representative of any changes, additional Work, or conflicts or discrepancies in the Work, in writing, prior to performing that portion of the Work." *Id*.; *see also* Attach. 3, Arts. 8.1-8.2, 12.1-12.2.

28.     If AECOM believes it has encountered a changed construction or engineering condition that "differs materially" from those specified in PG&E's documents and drawings, AECOM is required to notify PG&E, in writing, within either 72 hours (construction) or 5 business days (engineering), and before conditions are disturbed.  EPC Agreement, Attach. 2, Art. 8.2.  "If PG&E agrees with [AECOM's] claim, an equitable adjustment will be made and a Change Order will be issued."  *Id*.  However, if AECOM fails to provide timely notice, the EPC Agreement provides that "[n]o claim will be allowed."  *Id*.

29.     If AECOM claims extra compensation or time from PG&E concerning additional or changed work performed with PG&E's written consent, the EPC Agreement requires AECOM to submit to PG&E within 30 days "a written statement supporting the claim."  EPC Agreement, Attach. 2, Art. 4.8.  However, "[p]ortions of Contractor's claim incurred prior to written notification to PG&E shall be considered waived and failure to submit a statement within 30 days shall constitute a waiver of the entire claim."  *Id.*  Additionally, acceptance by AECOM of payment from PG&E concerning any additional or changed work "shall be deemed a waiver by Contractor of claims against PG&E."  *Id.*

30.     The EPC Agreement makes clear that AECOM waives its right to costs associated with any additional or changed work it may have performed if it did not receive PG&E's prior written approval.  *See*, *e.g.*, EPC Agreement, Attach. 3, Arts. 8.2, 12.1-12.2.  Specifically, the EPC Agreement provides: "CONTRACTOR AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONTRACTOR'S SOLE RISK AND EXPENSE."  EPC Agreement, Attach. 3, Art. 12.1 (uppercase in original).

31.     Similarly, AECOM waives its right to costs associated with any delays if it did not "promptly notify PG&E in writing of any impending cause for delay."  EPC Agreement, Attach. 2, Art. 9.1.

32.     The EPC Agreement also required AECOM to provide PG&E periodic updates concerning the Project as a condition of payment.  *See*, e.g., EPC Agreement, Attach. 3, Arts. 5.4.1.5, 8.3.  For example, Article 8.3 of the Specific Conditions provides that AECOM "shall on a monthly basis prepare a summary of the work performed for and the number of hours worked on behalf of PG&E."  The summary was required to include the following information: (i) "Work performed or completed by [AECOM], including significant progress, set-backs, or outstanding issues, for example, permitting, regulatory or PG&E approval" (ii) "Changes, additions or decreases, to the scope of Work" (iii) "Review of the schedule for the Work as compared to actual progress" and (iv) notification "regarding any problems which may significantly affect the performance of Services by [AECOM]."  *Id.*

33.     The EPC Agreement also allows for PG&E to recover "liquidated damages" up to $1.5 Million in the event AECOM failed to meet specified completion dates because the parties agreed that it "will be extremely difficult . . . to identify the amounts of increased or additional costs attributable to [AECOM's] failure[.]"  EPC Agreement, Attach. 3, Art. 5.7.1.1.  AECOM also specifically acknowledged that the liquidated damages "are reasonable, considering the anticipated damages that PG&E will suffer" and "difficulty of ascertaining the exact amount of damage that will be actually incurred by PG&E" in the event AECOM fails to meet the specified completion dates. *Id*. At 5.7.1.4.  The liquidated damages amounts are "applicable regardless of the amount of such damages actually incurred by PG&E." *Id*.

**D.     PG&E and AECOM Negotiate Project Changes.**

34.     Throughout the course of the Project PG&E, and AECOM negotiated and executed six change orders.

35.     Change Order No. 1 was based on requests for information submitted to PG&E by AECOM related to miscellaneous clarifications to the work under the Agreement.  As required by the EPC Agreement's General and Specific Conditions, AECOM, to the best of PG&E's knowledge, notified PG&E of all changes in costs and schedule created by Change Order No. 1.  Thereafter, Change Order No. 1 was executed between the parties on or about September 16, 2016.  As part of the change order, AECOM agreed that the "Change Order represents full and final consideration of the changes described herein, including, but not limited to all adjustments to price, schedule, guaranteed dates and performance criteria.  All other items and conditions shall remain unchanged and in full force and effect."

36.     Change Order No. 2 was based on requests for information submitted to PG&E by AECOM related to negotiated modifications to the Agreement between AECOM and PG&E.  As required by the EPC Agreement's General and Specific Conditions, AECOM, to the best of PG&E's knowledge, notified PG&E of all changes in costs and schedule created by Change Order No. 2.  Thereafter, Change Order No. 2 was executed between the parties on or about January 9, 2017.  As part of the change order, AECOM agreed that the "Change Order represents full and final consideration of the changes described herein, including, but not limited to all adjustments to price,

1    schedule, guaranteed dates and performance criteria.  All other items and conditions shall remain

2    unchanged and in full force and effect."

3         37.     Change Order No. 3 was based on requests for information submitted to PG&E by

4    AECOM related to negotiated modifications to the Agreement between AECOM and PG&E.  As

5    required by the EPC Agreement's General and Specific Conditions, AECOM, to the best of

6    PG&E's knowledge, notified PG&E of all changes in costs and schedule created by Change Order

7    No. 3.  Thereafter, Change Order No. 3 was executed between the parties on or about February 20,

8    2017.  As part of the change order, AECOM agreed that the "Change Order represents full and final

9    consideration of the changes described herein, including, but not limited to all adjustments to price,

10   schedule, guaranteed dates and performance criteria.  All other items and conditions shall remain

11   unchanged and in full force and effect."

12        38.     Change Order No. 4 was based on requests for modifications to the design schedule

13   and modifications to the scope of AECOM's work on the Project.  As required by the EPC

14   Agreement's General and Specific Conditions, AECOM, to the best of PG&E's knowledge,

15   notified PG&E of all changes in costs and schedule created by Change Order No. 4.  Thereafter,

16   Change Order No. 4 was executed between the parties on or about March 29, 2017.  As part of the

17   change order, AECOM agreed that the "Change Order represents full and final consideration of the

18   changes described herein, including, but not limited to all adjustments to price, schedule,

19   guaranteed dates and performance criteria.  All other items and conditions shall remain unchanged

20   and in full force and effect."

21        39.     Change Order No. 5 was based on modifications to the scope of AECOM's work on

22   the Project.  As required by the EPC Agreement's General and Specific Conditions, AECOM, to

23   the best of PG&E's knowledge, notified PG&E of any changes in costs and schedule created by

24   Change Order No. 5.  Thereafter, Change Order No. 5 was executed between the parties on or about

25   June 6, 2017.  As part of the change order, AECOM agreed that the "Change Order 5 represents

26   full and final consideration of the changes described herein, including, but not limited to all

27   adjustments to price, schedule, guaranteed dates and performance criteria."

28

---

40.     Change Order No. 6 was based on modifications to the scope of AECOM's work on the Project.  Change Order 6 also included an agreement between AECOM and PG&E to extend the completion date of the Project from December 31, 2017 to March 31, 2108.  As required by the EPC Agreement's General and Specific Conditions, AECOM, to the best of PG&E's knowledge, notified PG&E of all changes in costs and schedule created by Change Order No. 6.  Thereafter, Change Order No. 6 was executed between the parties on or about December 7, 2017.  As part of the change order, AECOM agreed that the "Change Order 6 represents full and final consideration of the changes described herein, including, but not limited to all adjustments to price, schedule, guaranteed dates and performance criteria."

41.     Change Order No. 7 was negotiated between AECOM and PG&E based on requests for information submitted to PG&E by AECOM.  As required by Article 8.1 of the EPC Agreement's General and Specific Conditions, AECOM, to the best of PG&E's knowledge, notified PG&E of all changes in costs and schedule created by the work at issue in Change Order No. 7.  AECOM however, refused to execute the change order when it was presented for execution.

**E.      AECOM's Performance Included Delays, Mismanagement, and Other Deficiencies.**

42.     AECOM was responsible for designing the Project.  As part of the design process, AECOM was required to submit by dates specified in the EPC Agreement 30%, 60%, 90%, and Final (Issued for Construction – IFC) plans to PG&E for review and approval.  PG&E's approval of the Final IFC plans was required before AECOM could mobilize for construction.

43.     AECOM failed to submit timely, complete design packages to PG&E for review. As a result of these failures, the Project was materially delayed, and PG&E was unable to timely determine if AECOM's design was code-compliant and/or satisfied the requirements of the EPC Agreement.

44.     AECOM was obligated, as part of its responsibilities under the EPC Agreement, to obtain building permits and other approvals from Shasta County on a schedule that allowed for the timely commencement of construction.  AECOM failed to timely procure the necessary permits and approvals and, as a result, the construction of the Project was materially delayed.

45.      AECOM was also required to timely and accurately procure materials for the Project to allow for the timely and proper construction of the Project.  AECOM routinely failed to do so, resulting in significant delays to the construction and cost over-runs.

46.      AECOM was required to maintain a Project schedule and notify PG&E if it would not be able to meet the deadlines set for the in the EPC Agreement.  AECOM failed to (i) maintain an accurate schedule concerning the Project and (ii) notify PG&E of the accurate condition of the work on the Project.  These failures resulted in Project delays that could have been managed and resolved had AECOM provided accurate and timely notice of the delays to PG&E.

**F.      Incomplete and Defective Work Performed by AECOM.**

47.      AECOM failed to complete the work called for by the EPC Agreement and/or performed the work in a defective manner.  As a result, PG&E has had to repair/replace defective work, resulting in PG&E having incurred damages for which AECOM is responsible.

48.      Specifically, due to the negligent, defective, and/or incomplete work by AECOM on the Project, PG&E has incurred, or will incur, damages that includes the following items: (i) V-35 Valve damage; (ii) GOV-2 Valve leaks; (iii) POV-166 (Becker Valve) damage; (iv) Standby Generator performance; (v) Generator Room ventilations; (vi) piping penetrations (vii) fuel gas heaters; (viii) demister; (ix) As-Built Drawings; (x) demolition work; (xi) bollard installment; and (xii) miscellaneous costs, including compaction testing/inspections, failed x-rays, foam discharge clean up, and on-site spill clean-up.

**G.      AECOM Failed to Assure that its Subcontractor JH Kelly Performed in Accordance with the EPC Agreement.**

49.      AECOM, itself or through its subcontractor JH Kelly, was obligated to construct the Project pursuant to the terms of the EPC Agreement.  AECOM, through its allegations and verified statements[2] related to JH Kelly's work, acknowledges that it failed to meet the EPC Agreement's construction requirements.

---

[2] AECOM's verified statements concerning JH Kelly's work can be found in its responses to JH Kelly's first set of special interrogatories.

50.     AECOM alleges that "JH Kelly failed to perform all contractual obligations necessary for AECOM to meet its obligations to PG&E by, amongst other reasons:" (1) "delaying the Project"; (2) "failing to properly schedule and sequence construction activities"; (3) "failing to provide adequate supervision and adequate staffing"; (4) "failing to properly perform various items of work"; and (5) "failing to follow appropriate safety practices."  For example, AECOM alleges that JH Kelly failed or refused to perform "certain demolition work, certain painting and coating work, and the application of protective coatings for certain above and below-ground piping."  Dkt. No. 21 at ¶ 143 (AECOM Counterclaim); *see also* ¶¶ 24, 144-145.

51.     Specifically, with respect to painting AECOM alleges that " JH Kelly failed to paint all existing facilities inside the station fence line, including but not necessarily limited to the existing Control Building, the 'Jet' (or 'GG') Building, the Sulfur Analyzer Building, and the Instrument and Valve Shelters not demolished as part of the Work; all new and existing above ground piping and related steel supports and appurtenances; all existing above ground equipment (e.g., the Gas Cooler, Inlet Scrubbers C- 1 and C-2 and related large and small bore piping and drain vessels), the pipeline blowdown stack, and the pipeline scraper trap piping."

52.     AECOM also alleges that JH Kelly failed, in whole or in part, to properly perform the certain work required by the EPC Agreement, including: (i) "paint[ing] certain existing buildings and piping on the Project" (ii) "properly install[ing] the underground domestic water system" (iii) "failed to properly perform excavation work" (iv) "devot[ing] adequate resources to planning for hydro-testing and failed to provide sufficient documentation prior to the testing" (v) "repeatedly breach[ing] its obligations to maintain a safe work site" and (vi) "complet[ing[ the demolition scope required under the contract, including by refusing to complete demolition work related to existing underground utilities and equipment."

53.     According to AECOM, "JH Kelly's conduct also directly and significantly interfered with the progress and completion of construction."   AECOM Countercl., ¶ 21. For example, AECOM alleges that "JH Kelly failed to supply an adequate number of workers and supervisors, which hampered the progress of work, including the electrical wire installation, field coating of gas pipe, and excavation work."  *Id*.; *see also* ¶¶ 142, 147. Additionally, "JH Kelly [ ]

---

PG&E'S COUNTERCLAIM                                          CASE NO. 4:20-CV-05381-HSG

1   delayed completion of work on the critical path of the Project," including in "certain excavation

2   work related to the installation of underground electrical conduit" and "work to complete pulling

3   wire through electrical conduit and terminating the connections[.]"  *Id.* at ¶ 22; *see also* ¶ 142.

4        54.    Specifically, AECOM alleges that the delay, inefficiencies, and impacts to the

5   Project, attributed to JH Kelly include: (i) "failure to provide enough qualified workers, including

6   its failure to employ qualified welders sufficient to maintain reasonable and expected weld reject

7   rates, subsequently prolonging the pipe installation work, and its failure to ensure sufficient

8   manpower during the installation of underground conduit;" (ii) "high turnover rate of craft

9   workers;" (iii) "failure to properly sequence the work;" (iv) "failure to accept and fulfill its

10  responsibility to adequately plan and schedule its work using the critical path method;" (v) "failure

11  to properly assess and report the impact of its CORs to the critical path;" (vi) "failure to adjust its

12  construction plan to ensure its work force was progressing the work;" (vii) "failure to provide

13  adequate supervision to efficiently complete work;" (viii) "decision to prioritize non-critical work

14  over critical path work;" (ix) "inefficiencies in pulling the wire through the conduit pipe and lack

15  of cable;" (x) "inadequate safety practices and supervision, which resulted in (among other things)

16  the valve strike;" (xi) "mishandling of the strainer installation;" (xii) "restricting movement at the

17  work site and progress of the work;" (xiii) "late start of excavation for underground duct banks;"

18  (xiv) "failure to maintain planned progress of the large diameter buried pipe, including coating

19  repair at the welded joints, subsequently prolonging the underground work in the northeast quadrant

20  of the site;" and (xv) "failure to inspect prefabricated items in advance of installation, resulting in

21  late discovery and subsequent delay to re-fabrication and installation."

22        55.    AECOM also alleges that JH Kelly was responsible for the Valve Strike incident

23  due to its "consistent[ ] fail[ure] to follow proper safety practices on site."  AECOM Countercl., ¶

24  23; *see also* ¶ 146.  Specifically, JH Kelly "failed to properly supervise and provide safety

25  personnel, including spotters, for its subcontractor who backed a fuel truck into the gas line at

26  issue."

27        56.    AECOM's allegations concerning JH Kelly's work regarding the Project constitute

28  a breach of AECOM's obligations under the EPC Agreement.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR BREACH OF CONTACT
### (Against AECOM)

57.     PG&E realleges and incorporates by reference Paragraphs 1 through 56 above as if fully stated herein.

58.     AECOM and PG&E entered into the EPC Agreement on February 11, 2016.

59.     AECOM materially breached the EPC Agreement by and through the following actions and inactions (among others):

a.     Failing to timely and accurately submit and complete its design of the Project;

b.     Failing to timely and accurately procure materials for the Project;

c.     Failing to timely and accurately construct the Project;

d.     Abandoning the Project without completing its obligations under the Agreement; and

e.     Performing work that resulted in property damage to PG&E that PG&E has incurred, or will incur, costs to repair.

60.     PG&E has performed, or has been excused from performing, its obligations under the EPC Agreement due to the actions or inactions of AECOM.

61.     As a result of AECOM's breaches of the EPC Agreement, PG&E has been damaged in an amount to be determined at trial, but in excess of $9,000,000.  PG&E's damages include incurred repair costs and costs to complete work, damages to the Project that will require future repairs, and Liquidated Damages under the EPC Agreement.

### SECOND CLAIM FOR NEGLIGENCE
### (Against AECOM)

62.     PG&E realleges and incorporates by reference Paragraphs 1 through 56 above as if fully stated herein.

63.     AECOM had, through the EPC Agreement and as the general contractor on the Project, a duty to perform work in a manner that did not result in property damage or personal injury to PG&E.

64.     AECOM breached that duty through the negligent performance of its work concerning the Project, including causing damage to the V-35 Valve and GOV-2 Valve.

65.     As a direct and/or proximate result of AECOM's breaches of its duty, PG&E suffered damages to its property at the Project site in an amount to be determined at trial, including:

a.      Damage to the V-35 Valve at the Project site due to the valve being struck as a result of the negligence of a fuel supplier under contract with JH Kelly; and

b.      Damage to the GOV-2 Valve at the Project site due to the failure of AECOM to clean construction debris out of the gas-line.

**THIRD CLAIM FOR INDEMNIFICATION**

**(Against AECOM)**

66.     PG&E realleges and incorporates by reference Paragraphs 1 through 56 above as if fully stated herein.

67.     JH Kelly alleges that throughout the course of the Project, AECOM failed to pay JH Kelly all amounts due under the terms of the Subcontract, including unpaid contract amounts, change order requests, out-of-pocket schedule and productive impact damages, and interest.  *See* Dkt. 18 at ¶ 1.d.-f. (JH Kelly's First Amended Complaint [FAC]).

68.     As a result, on November 1, 2018, JH Kelly recorded in the official records of Shasta County, a verified Claim of Mechanic's Lien (Document No. 2018-0030534) against the Property for $15,881.776.21.  JH Kelly's FAC, ¶ 54.

69.     AECOM is obligated under Article 5.13 of the EPC Agreement's General Conditions to "discharge at once, and hold PG&E harmless from, liens or stop notices that may be filed in connection with the Work."  AECOM is also obligated under Article B-2.1 of the EPC Agreement's General Conditions to "indemnify, hold harmless and defend PG&E, . . . from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or

otherwise), which arise from or are in any way connected with any . . . delay or failure to pay any Subcontractor, including but not limited to any demands for payment, invoices, or liens[.]"

70.      AECOM, at its own expense, is obligated under section 8470 of the Civil Code to defend, on behalf of PG&E, JH Kelly's Claim to Foreclose on the Mechanic's Lien against PG&E.

71.      As a result of JH Kelly's Mechanic's Lien on the Property, PG&E has incurred damages and continues to incur damage to which it is entitled to be indemnified, defended, and held harmless by AECOM.

72.      AECOM is on notice of its obligation to defend, indemnify, and hold harmless PG&E from and against all claims asserted by JH Kelly.

73.      AECOM has refused to defend and indemnify PG&E.

74.      By the filing of this Counterclaim and service on AECOM, PG&E further notifies AECOM of its defense and indemnity obligations.

75.      AECOM has breached the EPC Agreement and is in violation of Civil Code section 8470 by failing to defend, indemnify, and hold harmless PG&E.

76.      As a direct and proximate result, PG&E has incurred and will continue to incur costs, attorneys' fees, and other damages related to the claims of JH Kelly, which are the responsibility of AECOM.   PG&E has been damaged in an amount to be determined at trial, together with attorney's fees and interest thereon at the legal rate.   PG&E seeks leave to set forth the full amount of said damages at the conclusion of the trial in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, PG&E prays for judgment against AECOM as follows:

1.      For compensatory damages in an amount to be determined at trial;

2.      For interest at the prevailing legal rate;

3.      For attorney's fees and costs as permitted by contract, including pursuant to Section B-2.1 of the EPC Agreement's General Conditions, statute, at law, or in equity; and

4.      For such other relief as this Court deems proper.

1

### **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, PG&E hereby demands a

3   trial by jury on all triable issues concerning its Counterclaim.

4

5   Dated: March 5, 2021                          RALLS GRUBER & NIECE LLP

6

7

8                                                By: _____
                                                     AARON R. GRUBER
9

10                                                Attorneys for Counterclaimant
                                                  PACIFIC GAS & ELECTRIC COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



Contract – Long Form

# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"),  a California corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | AECOM Technical Services Inc. | PG&E Contract No. 2501335149 |
| Contractor's Address: | 515 S. Flower St. 4th Floor Ste. 1050<br>Los Angeles, CA 90071-2201 | This Contract consists of 1935 pages. |

| Project Name: | Burney K2 Replacement Project |
| Job Location: | Burney Compressor Station, California |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Project Specific Information.  Contractor shall perform all engineering procurement and construction services to complete the Burney K2 Replacement project.

**ATTACHMENTS:  Each of the following documents is attached to this Contract and incorporated herein by this reference:**

See Page 3 for the listing of the Attachments and Exhibits to this Contract.

| CONTRACT TERM: | This Contract is effective upon signature by both parties and expires on 12/31/2017. |
| COMPLETION: | Contractor shall commence performance hereof when directed to do so by PG&E.  Work shall be completed by the completion date of 12/31/2017.  Time is of the essence. |
| INSURANCE: | Contractor shall maintain insurance in accordance with Article 7 of the General Conditions. |
| TERMS OF PAYMENT: | In accordance with Section Article 4 of the General Conditions. |

**CONSIDERATION:** As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount.  This amount is inclusive of all taxes incurred in the performance of the Work.  Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

**TOTAL:** $40,510,262.00 @ Lump Sum Pricing

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: AECOM Technical Services Inc. | |
| Signature | | Signature | |
| Name | Gun Shim | Name | Robert K. Turley |
| Title | Vice President, Supply Chain | Title | Vice President |
| Date | 2/11/2016 | Date | 2/8/16 |

62-4073 (9/26/11)                    Sourcing



Contract – Long Form

PG&E Contract No. 2501335149
Page 2 of 3

| ADMINISTRATION | | | | |
|---|---|---|---|---|
| PG&E Negotiator | Francis Del Rosario | | Contractor Representative | |
| Phone | 925-328-5051 | | Phone | |
| Email | fpd3@pge.com | | Email | |
| Accounting Reference | s/c 1002685122 / Order# 30603707 | | | |
| PG&E Work Supervisor: | Mel Wong | | Phone: 510-541-2196 | |

| INVOICE INSTRUCTIONS: Contractor shall send invoices for each payment when due, showing the Contract number, to: PACIFIC GAS AND ELECTRIC COMPANY | Send ORIGINAL Invoice to: (See note below if using PG&E's electronic invoicing system) | PG&E Accounts Payable* PO Box 7760 San Francisco, CA 94120-7760 |
|---|---|---|
| | Send COPY of Invoice to: | GTInvoicing@pge.com |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. | |
| | *Note: Contractors using PG&E's electronic invoicing system do not need to mail a copy of the invoice to PG&E Accounts Payable. | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| Distribution Date | | |
| Distribution of Copies | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☒ Contractor (Signed Original Copy) |
| | ☒ Work Supervisor Mel Wong | ☐ Manager |
| | ☒ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☒ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |



Contract – Long Form

PG&E Contract No. 2501335149
Page 3 of 3

## EXHIBITS & ATTACHMENTS

**Each of the following documents is attached to this CWA and incorporated herein by reference:**

Attachment 1:  Project Specific Information, Pages 1 through 1829
Attachment 2:  General Conditions, Pages 1 through 48
Attachment 3:  Specific Conditions, Pages 1 through 22
Attachment 4:  Pricing Workbook, Pages 1 of 1
Attachment 5:  Material Traceability, Pages 1 through 20
Attachment 6:  Risk Register, Pages 1 of 1
Attachment 7:  Boulder Pricing, Pages 1 of 1
Attachment 8:  Billing Schedule, Pages 1 of 1
Attachment 9:  Organization Chart, Pages 1 of 1
Attachment 10: Questions and Clarifications Set, Pages 1 though 6
Attachment 11:  Demo Pricing, Pages 1 through 2

**Pacific Gas and Electric Company**

01-5873 (Rev 06/14)
Sourcing

Page 1 of 2

### List of Subcontractors and Disbursement Record

**EXHIBIT 1-A**

| | |
|---|---|
| Prime Contractor/Supplier: AECOM Technical Services, Inc. | Name of Preparer: Steve Petto |
| PG&E Contract Number (if any): 2501335149 | Telephone: (510) 874-1731 |
| PG&E Project/Product: Burney K2 Replacement Project | E-Mail: steven.petto@aecom.com |
| Contract Duration (Year): From: Feb 2016 To: Dec 2017 | Total Bid Value . Same as (9) below: $40,510,262 |

| Name of Subcontractor (1) | WMDVBE/LGBTBE Status Code* (2) | V** (3) | NV* ** (4) | Address (5) | Description of Work (6) | Estimated Amount to be Paid to Subcontractors (7) |
|---|---|---|---|---|---|---|
| BECI Electrical Inc. | WBE | V | | 8137 Capwell Dr., Oakland, CA 94621 | Procurement Agent | $14,394,864 |
| CM Distributor Inc. | WBE | V | | 118 S. Hale Ave., Escondido, CA 92029 | Valve Supplier | $857,493 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

\* Refer to Instructions/Codes/Definitions on page 2.
\*\* V = Subcontractor is a verified WMDVBE or LGBTBE
\*\*\* NV = Subcontractor is <u>not</u> a verified WMDVBE or LGBTBE

**Certification Agencies:**

WMBE: **CPUC Clearinghouse : DVBE:**
Department of General Services LGBT:
National Gay and Lesbian Chamber of
Commerce (NGLCC)

| | | |
|---|---|---|
| (8) | Estimated Total Amount to be Paid to All Verified WMDVBE and LGBTBE Subcontractor(s): | $15,252,357 |
| (9) | Total Bid Value: | $40,510,262 |
| (10) | Estimated Percentage to be Paid to All Verified WMDVBE and LGBTBE Subcontractor(s) (8+9): | 37.6% |

Signature: *Steven R. Petto*   / Date 2/5/16

I hereby verify that the listed information is true and accurate to the best of my knowledge.

The successful bidder(s) will be expected to register and report all monthly subcontracting spending with verified WMDVBE and LGBTBE subcontractors for the duration of the contract at: https://cvmas10.cvmsolutions.com/pge/default.asp

**EXHIBIT 4**

**INJURY AND ILLNESS PREVENTION PROGRAM**

Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Contractor ensures that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. This Compliance Certificate shall be executed by the person with the authority and responsibility for implementing and administering such Injury and Illness and Prevention Program.

**Injury and Illness Prevention Program Compliance Certificate**

The undersigned, the _____ Project Manager _____ of
                                      (title/position)

_____ AECOM Technical Services, Inc. _____ (Contractor), hereby certifies to PG&E as follows:
        (name of Contractor)

1.  That Contractor has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code and that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract has an effective Injury and Illness Prevention Program; and

2.  That he or she is the person with the authority and responsibility for implementing and administering Contractor's Injury and Illness Prevention Program.

IN WITNESS WHEREOF, the undersigned has executed this Compliance Certificate on                                    .

_____
                      Signature

_____
        Steven R. Petto
                    Print Name

### PACIFIC GAS AND ELECTRIC COMPANY
### NONDISCLOSURE AND USE OF INFORMATION AGREEMENT

THIS AGREEMENT is by and between    AECOM Technical Services, Inc.    ("Company"),
 Steven R. Petto            ("Undersigned"), the authorized employee of Company (together, Company and
Undersigned are referred to as the "Receiving Party"), and PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") on the
date set forth below.

Undersigned and Company agree as
follows:

1.      The Receiving Party acknowledges that in the course of the Burney K2 Replacement Project, the Receiving Party
will  be given access to technical information and materials including, but not limited to, original design and construction
drawings and documents in electronic and/or hard-copy format                                    , which are owned by PG&E,
its parent company, subsidiaries, or affiliates, and/or owned by third parties and in the possession of or licensed to PG&E, and
which constitute valuable, confidential and proprietary information, know-how, and trade secrets, belonging to PG&E, its
parent company, subsidiaries, or affiliates and/or third parties (hereinafter referred to as "Proprietary Information").

2.      In consideration of being made privy to such Proprietary Information, and of the contracting for the Receiving Party's
professional services by PG&E, the Receiving Party hereby agrees to hold the same in strict confidence, and not to disclose
it, or otherwise make it available, to any person or third party, including but not limited to any affiliate of PG&E that produces
energy or energy-related products or services, without the prior written consent of PG&E. The Receiving Party agrees that
all such Proprietary Information:

(a)      shall be used only for the purpose of performing the required engineering design activities
prerequisite to procuring equipment and materials and developing an Issued For Construction
drawing and specifications package for the construction of the new project facilities; and

(b)      shall not be reproduced, copied, in whole or in part, except as specifically authorized and in conformance
with PG&E's instructions when necessary for the purposes set forth in (a) above; and

(c)      shall, together with any copies, reproductions or other records thereof, in any form, and all information and
materials developed by the Receiving Party therefrom, be returned to PG&E when no longer needed for the
performance of Receiving Party's services for PG&E.

3.      The Receiving Party hereby agrees that any third parties owning any Proprietary Information are express third party
beneficiaries of this Agreement.

4.      The Receiving Party hereby agrees that for any violation of any provision of this Agreement, a restraining order
and/or injunction may be issued against the Receiving Party in addition to any other remedy PG&E may have at law.

5.      This Agreement shall be governed by and interpreted in accordance with the laws of The State of California.

UNDERSIGNED:

COMPANY

Signature
    Steven R. Petto

Name
    Project Manager

Title
    AECOM Technical Services, Inc.

Company
    February 5, 2016

Date

    AECOM Technical Services, Inc.
Company Name

Signature of Authorized Agent of Company
    Robert K. Turley

Name
    Vice President

Title
    February 5, 2016

Date

PACIFIC GAS AND ELECTRIC COMPANY
GAS TRANSMISSION
SAN RAMON, CALIFORNIA

PROJECT SPECIFIC INFORMATION, SPECIFICATION NUMBER 12107
FOR ENGINEERING, PROCUREMENT AND CONSTRUCTION
FOR BURNEY K2 COMPRESSOR UNIT REPLACEMENT
AT BURNEY COMPRESSOR STATION,
NATURAL GAS TRANSMISSION LINES 400/401, ORDER 30603707

Requirements Comprised of:
- General Conditions and Exhibits
- Specific Conditions to Specification 12107
- This Specification 12107 and Attachments

The following Attachments are provided in CD form, enclosed with this Request for Proposal:

|   |   |
|---|---|
| Attachment 1 | Scope of Work |
| Attachment 2 | Burney Location Map |
| Attachment 3 | Burney Compressor Preliminary Design Basis |
| Attachment 4 | Proposed Burney Operating Diagram |
| Attachment 5 | Proposed Burney Main Gas P&ID |
| Attachment 6 | Various Proposed Station Plot Plan Drawings |
| Attachment 7 | Gas Turbine Centrifugal Compressor Package Specification |
| Attachment 8 | Burney Gas Compressor Package Proposal Attachment 9 Single Line Drawings from Preliminary Engineering |
| Attachment 10 | PG&E Safety, OQ, and GSE Guidelines and Requirements |
| Attachment 11 | PG&E Gas Transmission Standards, Specifications, & Procedures |
| Attachment 12 | PG&E CAD Specifications and Guidelines |
| Attachment 13 | Burney Control Philosophy |
| Attachment 14 | Electronic Version of Preliminary Engineering Deliverables |
| Attachment 15 | Wind and Seismic Design Parameters |
| Attachment 16 | PG&E Project Delivery System Forms |

BIDDER SIGN HERE TO INDICATE THIS SPECIFICATION HAS BEEN USED IN PREPARATION OF THE BID

Firm: _____   By: (print)_____

Signature: _____

Date: _____   Telephone No.: _____

7/21/15

drawings. Multiple copies of as-built mark-ups are not allowed.

19.6    Contractor shall provide as-built redline mark-ups immediately after unit Commissioning. Contractor shall provide as-built redline mark-ups for elementary drawings and operating diagrams two weeks prior to Commissioning, excepting only punch list items.

19.7    Contractor shall request Engineering Documents from the PG&E GTE&D GSM Records Center (GSMRecords@pge.com) located at 6121 Bollinger Canyon Rd, San Ramon, CA 94583.  Request instructions shall be followed in accordance to the PG&E GTE&D Drafting Standards, "RECORDS" section.

   19.7.1  Specific response times to Engineering Document requests are outlined in the PG&E GTE&D Drafting Standards, "RECORDS" section.


## 20    PRODUCTION ENGINEERING

20.1    No later than thirty (30) calendar days following receipt of PG&E's notice of award of Contract, Contractor shall provide to PG&E an estimate of the total design hours required to perform the Work hereunder, by classification; for example, Drafting, Electrical Engineer, Civil Engineer.  Contractor shall complete the Fee Schedule in the Pricing Workbook to support this estimate.

   20.1.1  No later than forty-five (45) calendar days following the conclusion of all Work, Contractor shall provide to PG&E a detailed itemization of the actual design hours performed to accomplish the Work, by classification.

20.2    Contractor shall provide the following engineering services.  Contractor's design and engineering shall incorporate and be compatible with all of the existing and to-be-installed facilities to accomplish the scope of Work and adhere to PG&E's Project Delivery System.

   20.2.1  Preliminary Engineering:  Contractor shall evaluate all deliverables previously generated as part of the Burney K2 Replacement Preliminary Engineering contained in Attachment 14 to determine its adequacy and compatibility with the requirements of this Specification.

   20.2.2  Existing BCS documentation is in varying states of accuracy.  PG&E makes no claim that any documentation is accurate.  Contractor shall take this into account when performing the scope of Work.

   20.2.3  Production\Detailed Engineering:  Contractor shall generate specifications,

new and modified existing drawings, calculations, subcontract, purchase order documents, procedures and any other work required for the procurement, construction, and commissioning of the new turbine/compressor unit, unit auxiliary and station equipment.

20.2.3.1   Contractor shall develop project management and control documents including, but not limited to, project scope definition, CPM schedule plan, cost plan, project execution plan, and project procedures such as safety, QA/QC, document control, communications, WMDVBE subcontracting, and organization charts.

20.2.3.2   Contractor shall provide engineering, design, and the development of construction documents.

20.2.3.3   PG&E reserves the right to reject the package deliverables produced for the 30/60/90% or IFC stage if the content and/or quality of the package are, in PG&E's sole opinion, significantly substandard.  Contractor shall not proceed to the next design stage or to construction until PG&E approval is obtained.  Contractor shall not receive additional compensation to correct the deliverables nor will Contractor be granted schedule relief in the event substandard Work causes this issue.

20.2.4   Contractor shall plan for at least one monthly site PG&E visit during the engineering phase of the project to gather data and/or evaluate constructability issues on site with PG&E.  These site visits can be either at the San Ramon office or at Burney Compressor Station.  The design shall incorporate constructability and future maintenance considerations.

20.2.5   Contractor shall include construction representation at the 30/60/90% review meetings to provide input for constructability.

20.2.6   Contractor shall host a project kick-off meeting and three engineering review meetings at a PG&E facility.  The three engineering review meetings shall be based upon the percentage complete of 30 percent, 60 percent and 90 percent of the engineering Work.  PG&E, at its option, shall review Contractor's specifications, calculations, and drawings in progress during each of these meetings

20.2.7   Kick-Off Meeting and Site Visit:  Contractor shall schedule a project kick-off meeting no later than two (2) weeks after receipt of PG&E's Notice to Proceed.  Contractor shall tour Burney Compressor Station with PG&E as

part of the kick-off meeting.  Minimum attendees for Contractor shall include Contractor's Project Manager, Contractor's Project Engineer, Contractor's Construction Manager, and lead discipline engineers.  As a minimum, discussion topics and materials will include:

20.2.7.1    Presentation of the project team by Contractor and PG&E
20.2.7.2    Scope of Work as outlined in this Specification
20.2.7.3    Contractor and PG&E responsibilities as outlined in this Specification
20.2.7.4    Project objectives
20.2.7.5    Project goals
20.2.7.6    Communication strategies, including requirements set forth in this Specification
20.2.7.7    Roles and responsibilities for all team members
20.2.7.8    Client expectations

20.2.8    <u>Thirty (30) Percent Complete Design Review Meeting</u>:  Note that preliminary versions of some of the documents listed below were completed in 2014.  Contractor shall update these as necessary.  Contractor shall provide all documents to PG&E in accordance with the PG&E Project Delivery System (PDS) for review no later than ten (10) working days before the date of the design review meeting.  If so requested by Contractor, PG&E will return markups to Contractor within ten (10) working days after the date of the design review meeting.  Information to be provided to PG&E by Contractor at the 30 percent complete design review meeting includes, but is not limited to, the following:

20.2.8.1     Noise Study
20.2.8.2     Geotechnical Investigation Report
20.2.8.3     Station Pressure Drop Study
20.2.8.4     Discharge Gas Cooler Study
20.2.8.5     Inlet Gas/Liquids Separation Study
20.2.8.6     Electrical Load Study
20.2.8.7     Document Management and Control Plan
20.2.8.8     Outline of subcontracting specifications
20.2.8.9     Master Drawing List, including affected pre-existing drawings
20.2.8.10    Milestone schedule which includes Phase I and Phase II activities
20.2.8.11    Draft cost plan which tracks expected costs directly related to the milestone schedule
20.2.8.12    Risk Register
20.2.8.13    Updated Design Basis Document

| | |
|---|---|
| 20.2.8.14 | Preliminary Estimate of Phase II costs |
| 20.2.8.15 | 3D CAD Model of the unit and station facilities |
| 20.2.8.16 | Site Plan and Layout |
| 20.2.8.17 | Draft Demolition Plan |
| 20.2.8.18 | Preliminary Pothole Plan / Sketch |
| 20.2.8.19 | Preliminary Equipment Layout |
| 20.2.8.20 | Preliminary Building Plans, Elevations, Sections and Details |
| 20.2.8.21 | Preliminary Foundation Plan, Sections and Details |
| 20.2.8.22 | Preliminary calculations for buildings |
| 20.2.8.23 | Draft Piping and Instrumentation Diagrams (P&IDs) |
| 20.2.8.24 | Draft Piping Plans |
| 20.2.8.25 | Draft Electrical Schematic |
| 20.2.8.26 | Draft Electrical One Line Drawings |
| 20.2.8.27 | Preliminary Control System Architecture Drawing |
| 20.2.8.28 | Draft control philosophy which includes overview, description of operations, I/O list of alarms, PLC I/O listing, and shutdowns |
| 20.2.8.29 | Draft Hazardous Area Classification |
| 20.2.8.30 | Calculations for Sizing Major Equipment and Gas Piping |
| 20.2.8.31 | Blow Down Volume and Time Calculations (Total Suction, Discharge and Unit Volumes) |
| 20.2.8.32 | Preliminary Material quantity takeoffs |
| 20.2.8.33 | Listing of long-lead material/equipment items* |
| 20.2.8.34 | Equipment List including Instrument List/Index* |
| 20.2.8.35 | Commodity Materials List – Major Piping and Valves* |
| 20.2.8.36 | All other items necessary to convey general construction requirements. |

\* Items to be listed in Bill of Materials (BOM)

20.2.9  <u>Sixty (60) Percent Complete Design Review Meeting</u>:  A design review meeting shall be conducted by Contractor prior to final development of drawing details and shall illustrate the system layout and operation of the new units and existing station modifications. Contractor shall provide all documents to PG&E in accordance with the PDS for review no later than ten (10) working days before the date of the design review meeting.  If so requested by Contractor, PG&E will return markups to Contractor within ten (10) working days after the date of the design review.  Information to be provided to PG&E by Contractor at the 60 percent complete design review meeting includes, but is not limited to, updates to information, calculations and drawings provided during the 30 percent complete design review and the following:

| | |
|---|---|
| 20.2.9.1 | Updated Site Plan |
| 20.2.9.2 | Site Grading, Road and Drainage |
| 20.2.9.3 | Soil Erosion and Sediment Control |
| 20.2.9.4 | Foundation Plan(s) |
| 20.2.9.5 | Site and Drainage Calculations |
| 20.2.9.6 | Steel Support and Foundation Calculations |
| 20.2.9.7 | Piping Plan and Section and Detail Drawings |
| 20.2.9.8 | Thermal/Mechanical Stress Analysis |
| 20.2.9.9 | Conduit Fill |
| 20.2.9.10 | Conduit Layouts |
| 20.2.9.11 | Electrical Details |
| 20.2.9.12 | Panel Layout Outlines |
| 20.2.9.13 | Lighting Drawings |
| 20.2.9.14 | Electrical Schematics |
| 20.2.9.15 | Connection Diagrams |
| 20.2.9.16 | Grounding Plot Plan |
| 20.2.9.17 | Station Control functions and hardware summary, see Section 14 of this Specification and Attachments 13 and 14. |
| 20.2.9.18 | Material Listing of Takeoffs and Bulk Items |
| 20.2.9.19 | Equipment and Instrument Listing by Number and Description |
| 20.2.9.20 | Outage and Clearance Plan |
| 20.2.9.21 | Cause and Effect Chart |

20.2.10    <u>Ninety (90) Percent Complete Design Review Meeting</u>:  This final drawing review meeting shall include the total drawing package necessary for construction.  Design development and preparation of construction documents shall be 100 percent complete after incorporating the design review comments.  Contractor shall provide all documents to PG&E for review no later than ten (10) working days before the date of the design review meeting.  All drawings shall be detail checked and cross-discipline checked before submittal to PG&E.  All construction documents shall be complete and suitable for construction bidding.  If so requested by Contractor, PG&E will return markups to Contractor within ten (10) working days after the date of the design review meeting. Information to be provided to PG&E by Contractor at the 90 percent complete design review meeting includes, but is not limited to, updates to information, calculations and drawings provided during the 30 and 60 percent design review and the following:

| | |
|---|---|
| 20.2.10.1 | All drawings |
| 20.2.10.2 | Piping Material Sheets |

| | |
|---|---|
| 20.2.10.3 | Conduit Wire and Cable Schedule |
| 20.2.10.4 | Hydrostatic Testing Scheme and Materials |
| 20.2.10.5 | Completed Material Listing of Takeoffs and Bulk Items |
| 20.2.10.6 | Purchase Order documentation for turbine/compressor and other long lead materials |
| 20.2.10.7 | Equipment and Instrumentation Listing Complete with Manufacturer and Model Number |
| 20.2.10.8 | Line Schedule |
| 20.2.10.9 | Calibration Information |
| 20.2.10.10 | Bulk Materials Lists |
| 20.2.10.11 | Final construction plans |
| 20.2.10.12 | Final subcontracting specifications |
| 20.2.10.13 | Material specifications |
| 20.2.10.14 | Stress Analyses |
| 20.2.10.15 | Preliminary PLM Add/Edit Form |
| 20.2.10.16 | Short circuit analysis, protective device coordination and arc flash analysis |
| 20.2.10.17 | Other design calculations |
| 20.2.10.18 | Copy of the unit PLC program printout |
| 20.2.10.19 | Operating/maintenance documents including, but not limited to, safety and hazardous waste training documentation and welder certification |
| 20.2.10.20 | All other documents necessary to itemize the requirements to accomplish PG&E's objective stated in Section 2 of this Specification and the Scope of Work (Attachment 1). |
| 20.2.10.21 | Draft of detailed project schedule.  No later than thirty (30) calendar days prior to planned construction commence date, Contractor shall submit the final detailed project schedule. |
| 20.2.10.22 | Final cost plan and Phase II cost estimate |

20.2.11   Contractor shall incorporate comments within five (5) working days of Contractor's receipt of PG&E's comments.  Contractor shall then forward the completed drawings and data to PG&E for final review.  PG&E will review the information and provide any comments to Contractor within ten (10) working days for incorporation into the final detailed engineering and design drawings and documents.  Contractor shall incorporate these final comments and return the completed drawings and data to PG&E no later than five (5) working days following receipt of PG&E's final comments.

# GENERAL CONDITIONS

## ENGINEERING, PROCUREMENT, CONSTRUCTION

## OF

## NATURAL GAS & ELECTRIC TRANSMISSION AND DISTRIBUTION FACILITIES

### TABLE OF CONTENTS

PAGE

**PART A: CONSTRUCTION CONDITIONS:**
Article 1.  Definitions .................................................................................................3
Article 2.  Proposals .................................................................................................4
Article 3.  Project Data and Specifications ..............................................................5
Article 4.  Pricing and Payments ..............................................................................6
Article 5.  Certain Obligations and Responsibilities of Contractor ..........................8
Article 6.  Certain Rights and Responsibilities of PG&E ....................................... 11
Article 7.  Insurance ............................................................................................... 11
Article 8.  Changed Conditions............................................................................... 13
Article 9.  Delays in Work ....................................................................................... 18
Article 10. Contractor's Labor Relations ................................................................ 19

**PART B: BASE CONDITIONS:**
Article B-1.  No Guarantee of Work........................................................................ 22
Article B-2.  Indemnification, Liability and Withholding ......................................... 22
Article B-3.  Amendments, Subcontracts and Assignments .................................. 23
Article B-4.  Royalties, License Fees, Use Rights, Infringement Protection .......... 23
Article B-5.  Conflict of Interest/Business Ethics .................................................. 24
Article B-6.  Safety Precautions and Protection of Property ................................. 25
Article B-7.  Guarantees and Equipment Warranty ............................................... 26
Article B-8.  PG&E's Operation .............................................................................. 27
Article B-9.  Availability of Information.................................................................... 28
Article B-10. Cancellation and Termination of Contract......................................... 28
Article B-11  General Provisions ............................................................................ 29
Article B-12. PG&E Requirements and Policies...................................................... 31

**EXHIBITS:**
EXHIBIT 1:     Diversity and Equal Opportunity
EXHIBIT 1A:  List of Subcontractors and Disbursement Record
EXHIBIT 2:     Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged
               Business Concerns
EXHIBIT 3:     Drug and Alcohol Abuse and Testing Policy        Continued on next page

EXHIBIT 4:    Injury and Illness Prevention Program Compliance Certificate
EXHIBIT 5:    Statement of Labor, Material, and Equipment
EXHIBIT 6     PG&E Contractor Document Retention and Production Requirements
EXHIBIT 6A    Document and Data List
EXHIBIT 7     Nondisclosure and Use of Information Agreement
EXHIBIT 8     Outsourced Gas Asset Management Standard
EXHIBIT 9     NERC REQUIREMENTS
EXHIBIT 9A    PG&E NERC CIP Program Non-Employee
              Attestation Form

## PART A:
## CONSTRUCTION CONDITIONS

### ARTICLE 1.
### DEFINITIONS

When used in this Contract, the following terms have the specified meaning:

"**As directed**," "**as required**," "**as permitted**," "**approved**," "**written approval**," "**approval**," "**acceptable**," "**satisfactory**," or similar terms, whether appearing as capitalized or lower case words, shall mean by or to PG&E unless otherwise specified.

"**Change Order**": A Contract document signed by both Parties which modifies the price, schedule, or other terms of the Contract.

"**Construction Schedule**" or "**Schedule**":  Contractor's construction schedule, a document required by PG&E, that identifies the sequence and timing of Work and other activities necessary to meet Contract completion dates.

"**Contract**" or "**Agreement:**" This executed agreement, between PG&E and Contractor, including the Specification and any other materials specifically incorporated therein.

"**Contractor**":  The Party entering into this Contract with PG&E to perform the Work.

"**Days**":  Shall mean calendar days unless otherwise specified.

"**Facilities**":  Properties of the Joint Trench Parties or PG&E, including without limitation, items which generally comprise the PG&E gas or electric transmission or distribution system, such as the following: gas pipe and fittings (including valves, flow control, cathodic protection, regulation and metering devices), electric cable, conduit, poles, and other gas or electric equipment, boxes, vaults, and related material.

"**Hazardous Materials**" and "**Hazardous Waste**":  Any material defined as such in any local, state or federal rule, regulation, law or code for the location in which the Work is performed.  This includes, but is not limited to, the definition of Hazardous Material and Hazardous Waste set forth in the California Health and Safety Code, Division 20, Chapter 6.95.

"**Joint Trench Parties**": The additional party or parties, if any, for whom Contractor is performing Work under the Contract.

"**LM&E Sheet**": Daily Statement of Labor, Material, and Equipment (Form 62-5687) completed by Contractor, and attached hereto in form as Exhibit 5.

"**Party**" or "**Parties**": As applicable, PG&E or Contractor or both.

"**PG&E**":  Pacific Gas and Electric Company, a California corporation.

"**Proposal**": The bid quotation and package to perform Work under this Contract or an individual CWA as submitted by Contractor to PG&E.

"**Rental Rate Blue Book**":  Rental Rate Blue Book for Construction Equipment.

"**Specification**": PG&E's documents and drawings including the specific conditions and these General Conditions, all of which set forth the requirements for performance of the Work and which shall become incorporated in the Contract.

"**Subcontract**": An agreement between Contractor and Subcontractor or between Subcontractors at any level for a portion of the Work under this Specification.

"**Subcontractor**": Party or parties entering into a Subcontract with Contractor or another Subcontractor to perform Work. The obligations of Contractor set forth in this Contract shall also apply to Subcontractors regardless of level or tier.

"**Work**": The construction contemplated by the Contract, including all labor necessary to complete such construction, all material and equipment incorporated or to be incorporated in such construction and all services, facilities, tools and equipment necessary to complete such construction.

"**Work RFP**": A request by PG&E for a Proposal by Contractor to perform Work under this Specification.

**[Remainder of the page intentionally blank.]**

# ARTICLE 2.
# PROPOSALS

2.1    FORM: When required by a Work RFP, Contractor's Proposal shall be made on a Proposal form supplied by PG&E. Contractor's Proposal shall be enclosed in a sealed envelope distinctly marked with the title of the Work, Specification Number, and the word "Proposal," and delivered to the address stated in the Work RFP on or prior to the time specified. The Proposal shall be signed with the full name and local address of Contractor; if a partnership or joint venture, by a member thereof with the name and address of each member; if a corporation, by an officer in the corporate name and with the corporate seal. Late Proposals will be subject to disqualification.

2.2    INFORMATION WITHIN PROPOSAL: Contractor shall submit as part of the Proposal the following information which shall be under Contractor's letterhead: (i) requested information regarding the plant and equipment which Contractor intends to use in the Work; (ii) percentage fees applicable to Sections 8.6.1 through 8.6.4 for Cost-Plus Work charged by Subcontractors; and (iii) if Section 8.5 is included in the Specification, Contractor shall furnish the data required by 8.5(i) therein.

    2.2.1    COMPLIANCE WITH EQUAL OPPORTUNITY LAWS: Contractor must describe with its submission how it will comply with the requirements in Exhibit 1 of the "PG&E SUPPLIER DIVERSITY PROGRAM POLICY". The requirements of Exhibit 1 and the Contractor's response shall be deemed incorporated into the Contract.

    2.2.2    ESTIMATED QUANTITIES AND WEIGHTS: Quantities, weights, or data made available to Contractor by PG&E for preparation of its proposal or for performance of the Work shall not relieve Bidder or Contractor of the responsibility to satisfy itself through investigations as to conditions affecting the cost and performance of the Work. Estimated quantities and information submitted are the best available at the time; however, PG&E assumes no responsibility for the correctness of such information or for Contractor's conclusions drawn therefrom.

    2.2.3    CONTRACTOR'S LICENSE LAW: To qualify for Work subject to the Contractor's License Law, Chapter 9 of Division 3 of the Business and Professions Code of the State of California, Contractor's Proposal shall include a statement that Contractor is licensed under the law and shall indicate the type, number and the expiration date of the license.

2.2.4   RETURN OF MATERIAL: Contractor's Proposal shall be accompanied by the Specification, drawings, and other loaned information. Contractor shall sign in the spaces provided in the Specification and on each drawing used in preparing its Proposal unless otherwise specified.

2.3   SUBMISSION OF PROPOSAL: Once submitted, a Proposal may not be withdrawn by Contractor until its expiration date as provided in the Work RFP. A proposal may be accepted by PG&E up to the Proposal expiration date, and if not so accepted in writing, shall be deemed declined.

2.4   PROPOSAL EVALUATION: Each Proposal will be evaluated using a formula of weighted and defined criteria including, among other things, the strength of its proposed compliance with PG&E's Supplier Diversity Program Policy.

2.5   TIME: Contractor shall perform the Work in as short a time as practicable consistent with good workmanship and without overtime, unless otherwise specified. Time quoted by Contractor for completion of the Work will be an important consideration in making the award of Contract. The time so stated will be incorporated into the Contract. Time is of the essence.

2.6   REJECTION: PG&E RESERVES THE RIGHT TO REJECT ANY AND ALL PROPOSALS AND TO ACCEPT OTHER THAN THE LOWEST PROPOSAL.

## ARTICLE 3.
## PROJECT DATA AND SPECIFICATIONS

3.1   INFORMATION FURNISHED BY PG&E:  Data made available to Contractor by PG&E for preparing Contractor's Proposal and data made available to Contractor by PG&E during performance of the Work shall not relieve Contractor of responsibility for determining, through independent investigation if desired, the conditions affecting the cost and performance of the Work. PG&E makes no representation as to the completeness of the data and is not responsible for Contractor's conclusions drawn therefrom.

3.2   DIMENSIONS: Written or computed dimensions shall be used rather than scaled dimensions. Dimensions which tie into existing work shall be verified by Contractor at the worksite prior to commencing the Work. No claim will be honored which is a result of failure to comply with this requirement.

3.3   PG&E DRAWINGS AND SPECIFICATION: As soon as possible after award of Contract,  PG&E's approved construction drawings will be provided to Contractor. Bidding drawings shall not be used for construction purposes unless otherwise authorized in writing by PG&E. PG&E anticipates that revisions may be made to the Contract drawings prior to the time they are issued as "Approved for Construction" and to the approved drawings from time to time during the Work.  These revisions are expected to be minor changes in dimensions and in embedded items which may require Contractor to change its proposed construction methods and sequence of operations. Contractor shall plan its operations accordingly to accommodate the changes. Changes, as such, will not necessarily involve additional cost to Contractor. An increase or decrease in material quantities will be paid for or deducted under the appropriate Contract pricing items. Where the change involves an increase in other costs to Contractor, PG&E will pay for the costs that are considered justifiable by PG&E. PG&E shall receive credit from Contractor for any reduction in Contractor's costs caused by the changes. However, PG&E reserves the right to be the final judge as to the amount of payments made after the facts are presented and evaluated.

3.3.1   PERMITS:  If Contractor decides that the drawings and Specification do not comply with laws, rules and regulations, Contractor shall notify PG&E in writing at the time its Proposal is submitted and shall indicate as a separate lump-sum item an adjustment to the Proposal to cover the cost of compliance.

3.3.2   INCONSISTENCIES: The Specification and drawings are complementary and are intended to be consistent with each other. Contractor shall promptly report in writing to PG&E any discrepancies, errors, or inconsistencies in the Specification and drawings.

3.4   CONTRACTOR'S DRAWINGS AND SPECIFICATION: If Contractor prepares specifications, calculations, and drawings, they shall be approved in writing by PG&E prior to use. Notwithstanding such approval, Contractor shall be responsible for the accuracy, practicability, and correctness of its specifications, calculations, and drawings, none of which shall operate to change the Specification or PG&E's drawings unless Contractor submits a written statement clearly describing the specific changes to the Specification or PG&E's drawings and obtains PG&E's written prior approval of the changes. In the event of conflict between this Specification or PG&E's drawings and Contractor's specifications, calculations, or drawings, the former shall prevail. Engineering Work performed by Contractor shall be in accordance with the California Civil and Professional Engineers Act.

3.5   CHANGES TO SPECIFICATIONS AND DRAWINGS: Requests by Contractor for changes in the requirements of the Specification and PG&E's drawings shall be specifically identified in writing and brought to the attention of PG&E for written approval of PG&E. No changes shall be made without such written approval.

3.6   REFERENCES: References within the Specification to standard specifications, codes, and requirements of organizations such as the American Society for Testing Materials (ASTM), the American Institute of Steel Construction (AISC), and others are referenced to the latest issue thereof, unless otherwise specified. Requirements of referenced specifications shall be deemed a part of this Specification, except that in the event of a conflict between the requirements of this Specification and those of the referenced specifications, the most stringent shall govern.

## ARTICLE 4.
## PRICING AND PAYMENTS

4.1   PRICING OF WORK: Contractor is requested to quote prices for the Work as classified under the items in the Proposal Form. Prices quoted shall include all taxes incurred in the performance of the Work, but shall exclude the premium for any surety bond.  PG&E will not honor claims by Contractor resulting from unbalanced bid prices where Contractor has quoted unit prices that are either over or under Contractor's estimated cost.

4.2   COMPENSATION: Consideration to be paid Contractor by PG&E will be a sum calculated as set forth in the Contract and based on the prices quoted by Contractor in its Proposal. Except for work specifically excluded, Work necessary to make a complete installation ready for use or operation shall be considered as included in the price or prices quoted for the Work, whether or not specifically classified for payment under the items of the Proposal.

4.2.1   LUMP-SUM ITEMS: Work classified for payment on a lump-sum basis will not be paid for under unit price items, unless specified. A Proposal shall include the proposed progress payment schedule for lump-sum basis Work.

4.2.2   UNIT-PRICE BASIS: When invoices include Work performed on unit-price basis, Contractor shall attach a list stating the unit price item numbers, unit prices, quantities, dollar amounts and other information as required to identify the Work.

4.2.3   COST-PLUS BASIS: A LM&E Sheet must be completed for all Work performed on a cost plus basis including, but not limited to, additional or changed Work. Contractor may use its own form in place of the PG&E LM&E Sheet as long as (i) it contains all the same information as is to be reported on PG&E's LM&E Sheet and (ii) the information clearly matches the categories of information found on PG&E's LM&E Sheet.  Contractor's representative shall prepare the LM&E Sheet daily, providing sufficient detail of Work

Case 4:20-cv-05381-HSG   Document 36   Filed 03/05/21   Page 40 of 103

performed, including labor employed by Contractor and others performing Work, materials drawn from Contractor's stock, use of Contractor's equipment and rental of equipment from others by Contractor. PG&E shall approve the LM&E Sheet daily and retain a copy of the approved LM&E Sheet for comparison to Contractor's actual billing and Contractor's invoice support shall include a copy of the approved LM&E Sheet, receipted bills for materials, subcontracted Work and rented tools and equipment. PG&E shall have the right to inspect and sign the delivery or shipping documents for all tools, equipment, and materials charged to or credited out of cost-plus Work as they are received or removed. PG&E shall have the option of auditing the Contractor's records for cost-plus Work.

4.2.4   HOURLY RATE BASIS: A LM&E Sheet must be completed for all Work performed on an hourly rate basis including, but not limited to, additional or changed Work, following the procedures and requirements of Section 4.2.3.

4.3   INCIDENTAL WORK: During the progress of the Work, Contractor may be required by PG&E to perform certain selected operations which will require Contractor to pay shift differentials or premium time beyond the normal workday or workweek. For this Work, Contractor will be reimbursed the direct premium cost of labor based upon established Contract rates or applicable union wage rates in effect, plus applicable taxes. No additional fee for overhead or profit will be allowed. Examples of this Work may include clearances, work to expedite certain features, work performed in assisting PG&E in conducting testing and "startup," and certain incidental overtime performed for PG&E's convenience.

4.3.1   CONTRACTOR'S CONVENIENCE: Should Contractor elect to perform any phase of the Work on a premium time basis in order to meet the Construction Schedule or for Contractor's convenience, or if required by PG&E pursuant to Section 9.4, Contractor shall do so at no incremental cost to PG&E.

4.3.2   PG&E'S CONVENIENCE: If, in order to meet certain conditions, PG&E places the Work on an accelerated workweek, Contractor will be reimbursed. No reimbursement will be made except as authorized by a Change Order.

4.4   INVOICES: Contractor shall submit itemized invoices for completed Work accepted by PG&E, unless otherwise agreed. Invoices submitted by Contractor to PG&E for payment must be in accordance with the applicable CWA and include the applicable CWA number.

4.4.1   SUPPLIER DIVERSITY DISBURSEMENT RECORD: With each invoice, Contractor shall submit an updated List of Subcontractors and Disbursement Record (Exhibit 1-A) with a current accounting of actual Subcontractor payments as of the date of the invoice (Exhibit 1-A, Column 6).

4.5   PROGRESS PAYMENTS: If specified under the applicable Contract Work Authorization, then PG&E may retain a percentage of the Contract price until final acceptance of the Work; payment of the retention shall be in accordance with Section 4.6 below. Contractor shall submit monthly for PG&E's acceptance four copies of a written contract progress estimate setting forth the quantities of Work satisfactorily performed to date and invoices covering the Contract price applicable to the Work unless otherwise directed.

4.5.1   LIEN RELEASES: If requested by PG&E, Contractor must furnish conditional lien releases with each progress payment for Contractor and all Subcontractors totaling the amount requested in the progress payment estimate and covering the same time period as the estimate.

4.6   FINAL PAYMENTS: As soon as practicable after satisfactory completion of all Work, Contractor shall submit four copies of a final invoice to PG&E certifying to the completion of the Work and setting forth the total progress payments due Contractor less amount withheld and previous payments. Contractor shall also submit four copies of a second invoice in setting forth the balance

of the Contract price, including any retention amount. Invoices shall include any adjustment in labor or other costs if provision for adjustment is made in these General Conditions. PG&E will thereupon prepare certificates of payment for each. After receipt of invoices, PG&E will pay the amount due Contractor under the first described invoice after the final acceptance of Work performed under the Contract and receipt of lien releases and subject to receipt from Contractor of information required under PG&E's insurance program.

    4.6.1   LIEN RELEASE: Prior to submitting a final invoice, Contractor must furnish conditional lien releases for Contractor and Subcontractors covering all labor, materials, and equipment for which a lien could be filed. Within 30 days after final payment, Contractor shall provide unconditional final lien releases for Contractor and all Subcontractors.

4.7   JOINT CHECKS: Should PG&E deem it necessary, checks for payment in Sections 4.5 and 4.6 may be issued to Contractor and Subcontractors or suppliers jointly.

4.8   CLAIMS: If Contractor claims extra compensation or time from PG&E arising out of PG&E's administration or interpretation of the Contract or other action on the part of PG&E, Contractor shall submit to PG&E a written statement supporting the claim as soon as practicable but not more than 30 days after the action or decision giving rise to the claim. Portions of Contractor's claim incurred prior to written notification to PG&E shall be considered waived and failure to submit a statement within 30 days shall constitute a waiver of the entire claim. Acceptance by Contractor of the final payment hereunder shall be deemed a waiver by Contractor of claims against PG&E.

    4.8.1   CLAIMS AGAINST CONTRACTOR: Before Contractor is entitled to the final payment, Contractor shall, if requested by PG&E, furnish satisfactory evidence to PG&E that valid claims against Contractor or a Subcontractor have been paid.

4.9   WITHHOLDING FUNDS: PG&E may retain sufficient funds from payments due Contractor to repair or replace Work judged defective or incomplete by PG&E, to provide security for property damage liability as set forth in Section B-2.2, and to discharge liens as specified in Section 5.14.

4.10   LIABILITY: Neither acceptance of the Work by PG&E nor payment for the Work shall relieve Contractor from liability under the indemnity or guarantees contained in or implied by the Contract.

4.11   BOND REQUIREMENTS:  If requested by PG&E, Contractor shall, within 5 days of request, obtain a payment and performance bond in the amount specified by PG&E up to 100 percent of the Contract price in a form and with a surety acceptable to PG&E. PG&E will reimburse Contractor for the bond separately within 21 days of receipt from Contractor of the surety company's invoice. Failure of Contractor to obtain the bond as specified will be cause to cancel the Contract.

4.12   ADJUSTMENTS: Contractor shall promptly adjust any inaccuracy in the billings. Adjustments shall accrue interest, compounded monthly, at a rate equal to the prime rate charged by the Bank of America, N.A., Charlotte, North Carolina, at the beginning of each month, from the date of payment of the invoice being adjusted to the date that the adjustment is paid.

**ARTICLE 5.**
**CERTAIN OBLIGATIONS**
**AND RESPONSIBILITIES OF CONTRACTOR**

5.1   WORKSITE CONDITIONS: It will be assumed that Contractor has visited the worksite and that the Proposal is based on a full knowledge of all conditions that would affect the cost and conduct of the

Work.  By appointment, PG&E will conduct Contractor over the worksite and will indicate the various features of the Work. Contractor shall inform itself fully and shall assume the risk as to the physical conditions at the worksite, including as applicable: (1) subsurface geology, borrow pit conditions and spoil disposal areas; (2) the availability, location, and extent of construction and storage areas and other facilities or structures above and below ground, including but not limited to, gas, water, sewer, electrical and communication utilities; (3) necessary safety precautions and safeguards; (4) dimensions not shown on the drawings  (5) the extent of established lines and levels; (6) work to be performed by PG&E or others; and (7) rules, regulations and requirements to be observed by Contractor in the conduct of the Work. UNLESS THE PARTIES AGREE  THAT CONTRACTOR IS NOT REQUIRED TO VISIT THE WORKSITE IN ORDER TO PERFORM THE WORK , LACK OF KNOWLEDGE OF EXISTING CONDITIONS WILL NOT BE ACCEPTED AS AN EXCUSE FOR FAILURE TO PERFORM THE SPECIFIED WORK, NOR SHALL SUCH EXCUSE BE ACCEPTED AS A BASIS FOR CLAIMS FOR ADDITIONAL COMPENSATION. CONTRACTOR MAY NOT RELY UPON ALL INFORMATION PROVIDED TO IT BY PG&E REGARDING EXISTING CONDITIONS AT THE WORKSITE WITHOUT INDEPENDENT VERIFICATION UNLESS EXPRESSLY INSTRUCTED OTHERWISE BY PG&E IN WRITING.

5.2    INFORMATION AFTER AWARD OF CONTRACT: Within 21 days after award of Contract , unless otherwise specified in writing by PG&E, Contractor shall submit the following information to PG&E:

   5.2.1    LABOR AGREEMENTS: Copies of labor-craft agreements for the involved unions containing wage rates and fringe benefits in effect. If, during the Contract period, any changes are negotiated between the construction industry and the unions involved, revised copies of the labor agreements shall be furnished to PG&E.

   5.2.2    SEGREGATION: A segregation of Contract price, as directed, for each lump-sum item of the Proposal. The segregation shall itemize the estimated cost of each class of Work, together with an allowance for profit, insurance, and overhead expense, the total of which shall equal the Contract price of the item. When approved, the segregation shall become the basis for determining progress payments for Work performed, unless otherwise specified.

   5.2.3    FABRICATORS: Names and addresses of fabricators who will shop fabricate various items of Work included in the Contract, together with Contractor's purchase order number and the approximate dates fabrication will start and be completed. Fabrication shall not start until PG&E has approved shop detail drawings and arranged for inspection.

   5.2.4    CONSTRUCTION SCHEDULE: A detailed proposed Construction Schedule complying with requirements of the Specification.

   5.2.5    SUBCONTRACTORS: Names and addresses of Subcontractors.

5.3    MAN-HOUR REPORT: If requested by PG&E, Contractor shall submit a daily record of man-hours worked by each of its employees, to facilitate PG&E's accounting.  The transcript shall fully describe the various classes of Work performed in conformance with the applicable classifications set forth in PG&E's item segregation, or the breakdown of the classifications as may be deemed advisable by PG&E.  The transcript shall also indicate the time allotted to each classification of Work and the hourly or daily applicable rates of pay of the employees.

5.4    CONTRACTOR'S REPRESENTATIVE: During construction, Contractor shall retain a qualified representative in charge at the worksite who will supervise and exercise control over the Work, including that of Subcontractors. Contractor shall notify PG&E in writing who is to be Contractor's representative in charge of the Work.

5.5    COORDINATION OF WORK: In order that the entire project will be economically completed with the least delay and inconvenience to involved parties, Contractor shall coordinate its Work with work to be performed by others. Contractor shall make necessary and proper provisions to accommodate the work of others and shall cooperate in the use of equipment and in the exchange of templates and other data to ensure the proper performance of the Work.

5.6     LAYING OUT WORK: PG&E may provide the bench marks and control lines necessary for
        Contractor to lay out the Work. Contractor shall lay out and construct the Work accurately to the
        lines and elevations shown on the construction drawings. Survey field notes of points set by
        Contractor shall be available to PG&E. Contractor shall check the lines, dimensions, and
        elevations of each portion of the Work as it is completed to insure the proper construction of
        subsequent Work. Discrepancies shall be reported immediately to PG&E. Contractor shall use
        reasonable precautions to preserve established lines and grades.

5.7     TIMELY PERFORMANCE OF WORK: Contractor shall schedule and perform its Work to ensure
        completion in accordance with Contract milestone dates.  Failure to meet Contract milestones or
        the completion date can result in significant damage to PG&E including but not limited to direct cost
        to recover time lost, claims paid to other contractors resulting from Contractor's delay, additional
        cost of inspection and project administration resulting from Contractor's delay and additional actual
        cost of project financing resulting from Contractor's delay.  Time of completion is a material
        provision of the Contract.

5.8     CONSERVATION: In view of the national need to conserve resources, material and energy,
        Contractor shall plan and conduct the Work in the most efficient way practical consistent with
        accepted construction practices.

5.9     OBSTRUCTIONS, CUTTING AND PATCHING: Cutting of masonry, steel, woodwork, and other
        materials already in place, to accommodate the Work, shall be at Contractor's expense. Work shall
        be performed only after securing PG&E's approval regarding the location and extent of such
        cutting. Obstructions to the Work shall be removed by Contractor, unless otherwise specified.
        Removed obstructions shall be repaired or replaced at Contractor's expense.

5.10    MATERIALS, FACILITIES, SERVICES, AND STRUCTURES FURNISHED: Materials and
        workmanship shall be new and first class in every respect and shall comply with the requirements
        of the Specification and drawings. Materials and workmanship shall be subject to the inspection of
        PG&E. If Contractor fails to provide materials and workmanship in compliance with the
        Specifications and drawings, PG&E reserves the right to cancel the Contract. Contractor shall
        furnish all labor, materials, equipment, and services required for the Work unless otherwise
        specified.

        5.10.1  BRAND NAME: Items designated within the Specification or drawings by brand name shall
                be as designated or an equivalent approved by PG&E. Furnishing, installing, or both
                furnishing and installing an item shall be in accordance with the manufacturer's
                recommendations or specifications unless otherwise specified.

        5.10.2  ADEQUACY AND SAFETY: Contractor shall inspect, determine to its satisfaction, and be
                responsible for the adequacy and safety of materials, tools, equipment, plant, temporary or
                permanent structures incidental to the Work, storage or office space and other facilities and
                services used in the Work whether furnished or constructed by PG&E, Contractor, or others.
                Drawings of structures furnished by PG&E will show minimum requirements only and shall
                not relieve Contractor of any responsibility.

5.11    PG&E'S EQUIPMENT: When Contractor is permitted to use PG&E materials, tools, facilities, or
        equipment, they shall be maintained by Contractor in first-class condition and good repair.
        Contractor shall be responsible to PG&E for damage, misuse, or loss thereof.

5.12    CONTRACTOR'S EQUIPMENT: Tools, equipment, and other facilities provided by Contractor shall
        be maintained in good repair and efficient operating condition and, if found by PG&E to be unfit,
        shall be removed from the worksite and replaced by Contractor.

        5.12.1  INSTALLATION OF EQUIPMENT: Equipment shall be installed level, properly aligned, and

completely assembled in accordance with the manufacturer's standards and left in acceptable operating condition.

5.12.2 INFORMATION RELATED TO EQUIPMENT: Contractor shall provide to PG&E for use by PG&E, and contractors doing work for PG&E, copies of all instruction manuals, drawings, data, processes and procedures, or other information required to service and maintain the equipment.

5.12.3 EQUIPMENT DESIGN: Equipment and material furnished hereunder shall be so designed and fabricated that when installed it will comply with applicable laws, rules and regulations, including without limitation, the General Industry Safety Orders of the Division of Occupational Safety and Health, Department of Industrial Relations, State of California, which must be complied with before the equipment and material may lawfully be used by PG&E in California. Expenses incurred in complying with these requirements shall be included in the Contract prices.

5.13 LIENS:  Contractor shall discharge at once, and hold PG&E harmless from, liens or stop notices that may be filed in connection with the Work. PG&E may retain from Contract payments sufficient funds to discharge delinquent accounts of Contractor or a Subcontractor for which liens on PG&E's property have been or can be filed or for which stop notices have been or can be filed, and PG&E may at any time pay therefrom, for Contractor's account by joint check or otherwise, such amounts as are admittedly due thereon. Contractor must furnish lien releases to PG&E in accordance with the Lien Release provisions of Article 4, Pricing and Payments.

5.14 CONSTRUCTION LENDERS: PG&E represents that there are no construction lenders for this Work.

## ARTICLE 6.
## CERTAIN RIGHTS
## AND RESPONSIBILITIES OF PG&E

6.1 PG&E'S REPRESENTATIVE: Contractor will be notified in writing who will be PG&E's authorized representative for the Work. Contact between Contractor and PG&E shall be through PG&E's authorized representative, unless otherwise specified. Questions concerning the Contract, including the meaning of its terms and the sufficiency of Contractor's performance, shall be promptly submitted to PG&E for a decision. PG&E's decision, in the exercise of reasonable judgment, shall be final.

6.2 PERMITS: PG&E will obtain use permits, grading permits, general building permits and road relocation permits. Contractor shall at its expense obtain all other necessary permits and licenses, serve notices, arrange for inspection, pay fees and deposits and otherwise comply with applicable laws, rules and regulations.

6.3 INSPECTION AND TESTS: PG&E has the right to make field and shop inspections and tests. PG&E's inspectors shall have free access to the Work at all times. Neither the making nor the failure to make inspections and tests by PG&E nor the express or implied approval of the Work shall relieve Contractor of the responsibility to complete and guarantee the Work as specified. Rejected Work shall be remedied at Contractor's expense.

## ARTICLE 7.
## INSURANCE

Contractor shall, at its sole cost and expense, procure and maintain the following insurance coverage and be responsible for its Subcontractors maintaining sufficient limits of the appropriate insurance coverage.

7.1 WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY: Workers' Compensation insurance or self-insurance indicating compliance with applicable labor codes, acts, laws or statutes, state or

federal, where Contractor performs Work.

    7.1.1    Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

7.2    COMMERCIAL GENERAL LIABILITY (CGL): Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no alterations to the coverage form.

    7.2.1    The limit shall not be less than $10,000,000 each occurrence for bodily injury, property damage, personal injury and products/completed operations. Defense costs shall be provided as an additional benefit and not included within the limits of liability.  Coverage limits may be satisfied using an umbrella or excess liability policy or an Owners Contractors Protective (OPC) policy.

    7.2.2    Coverage shall: a) by "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of the Work performed by or for the Contractor (ISO Form CG2010 1185, or equivalent is preferred).  In the event the CGL policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement: "PG&E, its affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement;" b) be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; c) be endorsed to remove the Care, Custody and Control exclusion; and d) include a severability of interest clause.

7.3    BUSINESS AUTO: Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

    7.3.1    The limit shall not be less than $2,000,000 each accident for bodily injury and property damage.

    7.3.2    If the scope of Work involves hauling hazardous materials, coverage shall be endorsed in accordance with Section 30 of the Motor Carrier Act of 1980 (Category 2) and the CA 99 48 endorsement.

7.4    PROFESSIONAL LIABILITY INSURANCE: Errors and omissions liability insurance appropriate to Contractor's profession with a limits of not less than $5,000,000 per claim and in the aggregate, covering all professional services provided under the Contract for damages incurred by reason of (a) any negligent act, error or omission committed, or alleged to have been committed with respect to any engineering or design services under the Contract, and (b) any negligent acts, errors or omissions while performing or failing to perform any professional services provided under the Contract.

7.5    ALL RISK PROPERTY INSURANCE: An All Risk Property insurance policy including earthquake and flood shall be maintained during the course of Work being performed and include start-up and testing for installed equipment. Policy shall include coverage for materials and equipment while under the care, custody and control of the Contractor during the course of work, at the site, offsite or while in transit to the site.

    7.5.1    Coverage shall be written to cover the full replacement cost of the property. Limits and deductibles shall be approved by PG&E.

    7.5.2    PG&E shall be named as Loss Payee.

7.6    CONTRACTORS POLLUTION LIABILITY: If the scope of Work involves environmental risk,

Contractors Pollution Liability shall be maintained. Coverage for bodily injury, property damage, including cleanup costs and defense costs resulting from sudden and gradual pollution conditions including the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hydrocarbons, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

7.6.1   The limit shall not be less than $1,000,000 each occurrence for bodily injury and property damage.

7.6.2   The policy shall endorse PG&E as additional insured.

7.7   FORM AND CONTENT: All policies or binders with respect to insurance maintained by Contractor shall meet the following requirements.

7.7.1   Documents shall waive any right of subrogation of the insurers hereunder against PG&E, its officers, directors, employees, agents and representatives of each of them, and any right of the insurers to any setoff or counterclaim or any other deduction, whether by attachment or otherwise, in respect of any liability of any such person insured under such policy.

7.7.2   With respect to any additional insured, documents shall provide that such insurance will not be invalidated by any action or inaction of each insured and will insure each such insured regardless of any breach or violation of any warranty, declaration or condition contained in such insurance by the primary named insured.

7.7.3   The insurance documentation shall state that coverage shall not be cancelled except after 30 days prior written notice has been given to PG&E.

7.8   EVIDENCE OF COVERAGE: Before commencing performance of the Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor. Submittals shall comply with the following requirements.

7.8.1   The insurer shall deliver notification to PG&E in accordance with the policy provisions if any of the above-described policies are cancelled before the stated expiration date.

7.8.2   Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only:

Certificate Holder:  Pacific Gas and Electric Company
c/o EXIGIS LLC
E-mail: support@exigis.com
Fax: 646-755-3327

Contractor shall also send a copy of all such insurance documents to PG&E's Contract negotiator and Contract administrator at Contract execution and each time the terms of the insurance policy are renewed or changed.

7.8.3   PG&E may inspect the original policies or require complete certified copies at any time.

7.8.4   Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

# ARTICLE 8.

# CHANGED CONDITIONS

8.1   CONTRACT CHANGE ORDERS: PG&E may require Contractor to perform additional work of a nature similar or related to the Work under the Contract or may require changes or reductions in the Work or in the provisions governing the Work. Additional Work or changes shall be performed by Contractor only when authorized in writing and signed by PG&E.  Contractor shall immediately notify the PG&E representative of any changes, additional Work, or conflicts or discrepancies in the Work, in writing, prior to performing that portion of the Work. Authorization for payment will be by Change Order.  No subsequent claim will be honored for intangible effects or time lost resulting from Work covered and paid for by Change Order.  Pricing in the Change Order shall include indirect or intangible costs.

8.2   CHANGED CONDITIONS: Contractor shall within 72 hours after encountering changed construction conditions or within 5 business days after encountering changed engineering conditions, and before conditions are disturbed, notify PG&E in writing that (i) subsurface or hidden physical conditions at the worksite differ materially from those specified or (ii) unknown physical conditions at the worksite, of an unusual nature, differ materially from those ordinarily encountered and generally recognized as inherent in Work of the character provided for by this Specification.  If  PG&E agrees with Contractor's claim, an equitable adjustment will be made and a Change Order will be issued. No claim will be allowed unless Contractor has given timely notice.

8.3   WORK NOT COVERED:  If PG&E requires Contractor to perform Work that is in Contractor's opinion not covered by prices under either the Contract or a Change Order and for which Contractor intends to make a claim, Contractor shall notify PG&E in writing prior to starting   the Work, or its subsequent claim will not be considered. If PG&E agrees with Contractor's claim, Contractor will be notified in writing and a Change Order will be issued to cover all or part of the claim. If PG&E does not agree with Contractor's claim, Contractor will be notified in writing. Unless Contractor states in writing within 7 days that it will not accept PG&E's decision and that Contractor intends to make another claim, the subject will be considered closed and will not be reopened at a later date.

8.4   ADJUSTMENT DUE TO CHANGES IN WAGE RATES: For this Contract , Contractor shall provide to PG&E it's applicable wage rates in effect on the date of Contractor's signature to this Contract together with the date(s) on which Contractor anticipates an increase in wage rates that may occur during the Contract period as a result of negotiations between the construction industry and the unions involved. Contractor shall also advise) PG&E of any decrease in wage rates.

   8.4.1   No increase in wage rates will be accepted during the term of this Contract unless Contractor has submitted to PG&E, with the project-specific proposal, the date and amount of the anticipated wage rate increase together with Contractor's anticipated impact on the project budget and the increase has been accepted by PG&E, in writing, with the award of Work.

   8.4.2   APPLICATION: Reimbursement will apply only to field labor employed directly by Contractor and engaged directly and exclusively in the performance of the Work at the worksite and will not apply to Contractor's office or clerical personnel, superintendents or other supervisory personnel other than job foreman, nor to Subcontractors' employees. Contractor will not be reimbursed for increases in wage rates that were negotiated prior to the date of the Contract and that provide for future automatic wage increases of known amounts nor any portion of the wages paid as a bonus. In computing authorized reimbursement, wage rates used shall include subsistence, travel time payments, health, welfare, vacation, pension fund payments, and other "fringe" benefits that Contractor is required to pay by union agreement.

8.4.3   CREDITS: In the event that negotiations between the construction industry and the unions involved result in a decrease in wages rates, Contractor shall credit PG&E in payments due Contractor to the extent of 100 percent of the total savings resulting from decreases, computed on the basis specified.

8.4.4   PAYROLL RECORDS: Adjustments of the Contract price for changes in wage rates shall be computed from Contractor's labor payrolls, and Contractor shall furnish PG&E copies of payrolls for this purpose when so requested.

8.4.5   INVOICES:  Invoices covering adjustments due to changes in wage rates for Work performed in any one month shall be presented within 60 days after the end of that month or such invoices may not be accepted for payment.

8.4.6   NO FEE: Amounts payable under this section shall be actual costs without fee for Contractor's home office overhead or profit.

8.5   ADJUSTMENT DUE TO CHANGES IN MATERIAL COSTS: No increase in material costs will be accepted during the term of this Contract.- If Contractor has submitted to PG&E, with the project-specific proposal, the date on which quotations from specific suppliers of material will expire and if PG&E delays award of Work  beyond the expiration date of Contractor's supplier quotations, Contractor shall acquire new material quotations from its suppliers and submit to PG&E documentation of the change in material costs from the original proposal and provide PG&E the anticipated impact of such increases to the total project budget. PG&E reserves the right to reject the increase in cost and may elect to either perform the Work itself or contract with others. PG&E expects to be reimbursed for decreases in costs of materials.

8.5.1   ALTERNATIVE SUPPLIER: PG&E shall have the option to arrange with a different supplier to furnish acceptable material to Contractor at lower overall cost providing conditions of delivery, service, etc., are acceptable to Contractor.

8.5.2   BASIS FOR ADJUSTMENT: Adjustments in material costs shall be computed from Contractor's actual net costs including discounts. Contractor shall furnish PG&E copies of all paid invoices along with Contractor's computations and requests for reimbursement.

8.5.3   CREDITS: If there is a decrease in the cost of material listed in the Specification, Contractor shall credit PG&E in payments due Contractor to the extent of the total savings resulting from decreases.

8.5.4   INVOICES: Invoices covering adjustments due to changes in material costs for material purchased in any one month pay period shall be presented within 60 days after the end of that pay period or such invoices may not be accepted for payment.

8.5.5   NO FEE: Amounts payable or credited under this section shall be actual costs without fee.

8.6   PRICING OF INCREASE IN WORK: Change Orders that require an increase in the Work will be priced, at PG&E's option, on one of the following bases: lump-sum, unit prices, an hourly rate or a cost reimbursable compensation structure basis. The price for these bases shall include the following fees:

8.6.1   WAGES AND SALARIES: Wages and salaries of Contractor's employees, including job foremen engaged directly in performing the Work. Such wages and salaries will include payroll taxes, vacation, holiday and sick leave allowances, and other fringe benefits Contractor is required to pay as a result of collective

bargaining agreements between the construction industry and the labor unions involved.

8.6.1.1  INVOICE SUPPORT: For all Work performed on an hourly rate basis, Contractor shall itemize the labor classifications, the number of individuals who worked that day in each classification, and the total number of hours worked for each classification on the LM&E Sheets. Contractor shall be compensated for labor at the labor rate quoted in the Contract for the classification worked. Excepting only the labor rates subject to Section 10.12, if Contractor elects to pay any individual(s) a rate higher than the classification rate provided in the Contract, the additional cost shall be borne by Contractor and Contractor shall not invoice PG&E a rate higher than that quoted in the Contract.

8.6.2    MATERIAL AND SUPPLIES: Materials and supplies consumed in the Work at actual cost, less trade and cash discounts, if shown on Contractor's receipt, adjusted for i) sales or use taxes; ii) transportation costs; and iii) fair market value of materials and supplies salvaged and retained by Contractor. PG&E has the option to witness and sign for the receipt of materials and supplies. Material furnished by Contractor shall be itemized on the LM&E Sheets.

8.6.3    INSURANCE: Pro rata amounts of premiums for the insurance required in Article 6 but only up to limits of the insurance specified in Section 7.2. Premiums for other insurance shall not be separately reimbursable.

8.6.4    INCIDENTALS: Incidental direct costs to Contractor arising directly from performance of the Work, provided such costs are approved in writing.

8.6.5    FEE: A fee equal to the percentage stated in Contractor's Proposal of the total of Sections 8.6.1 through 8.6.4 to cover among other things profit, supervision of personnel, field office personnel, overhead (including incidental direct costs and materials and supplies actually consumed in the Work), rental charges for use of tools and equipment valued at less than $10,000 each and other general and indirect expenses. Unless otherwise stated, cost of general foreman shall be included in overhead.

8.6.6    EQUIPMENT Charges for Contractor's use of equipment valued at $10,000 or more. Equipment available at the worksite will be paid for on an hourly, daily, weekly or monthly rate, whichever is the most economic to PG&E, based upon the actual hours used, including overtime, at the rates set forth in the equipment pricing schedule, Rates shall include all costs to PG&E including, but not limited to, fuel, the cost of fueling the equipment including, if applicable, fuel truck on site, insurance, licenses, taxes, and maintenance unless otherwise specified. Equipment shall, in the opinion of the PG&E, be in good working condition and suitable for the purpose for which the equipment is to be used. Equipment time, whether Contractor owned equipment or Contractor-rented equipment, will not be reimbursed by PG&E while equipment is inoperative due to breakdowns or malfunctions or for equipment that is no longer required for the performance of the Work. If PG&E requests Contractor to furnish special equipment not on hand at the worksite for use on Work and Contractor could not reasonably have been expected to know that such equipment was required, PG&E will compensate Contractor for the cost of moving the equipment on and off the worksite. If PG&E requests in writing that Contractor hold certain equipment at the worksite for Work for PG&E's convenience, compensation for standby time will be at the most economic rate quoted in Contractor's equipment rates. No other fees shall be applied to the equipment rental rates whatsoever.

8.6.6.1  If Contractor elects to rent equipment for the Work rather than use its

own equipment, the rate charged to PG&E for such Contractor-rented equipment shall not exceed the rate as quoted in this Contract for Contractor-owned equipment, subject to all of the requirements of Paragraph 8.6.6 above. In the event Contractor requests compensation for the use of Contractor- rented equipment that is higher than the most economic rate for Contractor-owned equipment, Contractor shall provide documentation to PG&E of the reason Contractor has elected to rent the equipment and justification for the higher rate.

8.6.6.2  Contractor shall specify equipment description, vehicle identification number or serial number, company equipment number, number of hours utilized, and whether equipment is owned or rented on the LM&E Sheets. Standby time shall be identified separately on the LM&E Sheets. Operator costs shall be separately reimbursed in accordance with the labor rates quoted in the Contractor's proposal. Contractor shall ensure that the rate charged for each such item of equipment is the most economic rate to PG&E for the total usage of the equipment.

8.6.7  DAMAGED OR DESTROYED WORK:  Contingent upon the provisions of the repair and replacement of any portion of the Work destroyed or damaged due to causes beyond Contractor's control, including materials and equipment delivered to the worksite for installation that are not covered by insurance.

8.6.8  SUBCONTRACTOR'S AND FABRICATOR'S FEES: If Contractor requests authorization to have a Subcontractor or fabricator perform additional Work, Contractor shall state in the request the Subcontractor's or fabricator's fee applicable to Sections 8.6.1 through 8.6.4, and not to exceed an amount calculated pursuant to Section 8.6.5. Contractor shall audit and substantiate the data submitted by Subcontractor or fabricator. PG&E shall have the option of auditing Subcontractor's or fabricator's cost-plus records.

8.6.8.1  For approved additional Work or for Work performed on an hourly or time and material basis performed by a Subcontractor, Contractor will be paid the Subcontract amount (including Subcontractor's fee, if any, in conformance with Attachment 3C). This fee shall cover Contractor's profit and expenses incident to administration of the Subcontract. The fee shall not apply to rental of equipment from subsidiaries of Contractor, from its partners or co-adventurers, or from their subsidiaries.

8.6.9  TRANSPORTATION:  Cost of transportation to the job site and from the job site to an agreed destination, including loading and unloading of equipment not self-propelled or readily movable, shall be reimbursed at the hourly rates submitted by Contractor in its Proposal, providing these costs have not been reimbursed indirectly under other items of the Contract. Contractor shall itemize transportation costs on the LM&E Sheets as described in Section 4.2.3.

8.6.10  ITEMS EXCLUDED: Compensation to Contractor shall not include (i) the amount of a penalty, judgment, settlement, or other expense paid or incurred by Contractor as a result of Contractor's actual or alleged violation of a contract, law, rule, or regulation, except to the extent that the penalty, judgment, settlement, or other expense represents wages or taxes otherwise reimbursable; or (ii) the amounts paid by Contractor for repair or replacement of defective Work or costs of material wasted due to careless workmanship, or costs of work performed which, in PG&E's opinion, is not necessary for the performance of the authorized Work.

8.7  LUMP-SUM AND UNIT PRICE EXTRA WORK: For additional Work or changes

performed on a lump-sum, or agreed-price basis, Contractor shall submit for approval by PG&E, if required, a complete price breakdown of amounts and fees based on the actual, additional costs to be incurred. The breakdown shall conform to the cost breakdown and include the fees set forth in Section 8.6 and the fees quoted in the Proposal. Extra Work performed on a unit price basis shall be computed on the basis of the Contract unit prices.

8.8   COST-PLUS WORK: For additional Work or changes authorized to be performed on a cost-plus basis, PG&E will reimburse Contractor to the extent additional costs are incurred to perform the additional Work or changes. Contractor agrees that the amount of Work performed under the terms of Section 8.6 is not specified and no claim will be accepted because the Work is greater or less than anticipated. Contractor must complete an LM&E Sheet for all additional Work performed.

8.9   COST SEGREGATION: Charges made under Section 8.6, 8.7 and 8.8 shall be segregated to PG&E cost accounts in accordance with procedures and details as required.

8.10  DECREASE IN WORK: Change Orders that require a reduction in the Work shall entitle PG&E to a credit, at PG&E's option, of either an amount equal to Contractor's reduced costs as agreed upon between PG&E and Contractor or an amount computed on the basis of Contract unit prices for the Work. If required by PG&E, Contractor shall submit a complete price breakdown of amounts and fees.

## ARTICLE 9.
## DELAYS IN WORK

9.1   DELAYS: Nothing contained in this Article 9 shall serve to relieve Contractor of its obligations and responsibilities for timely completion of all of the Work hereunder. Contractor shall promptly notify PG&E in writing of any impending cause for delay. If possible, PG&E will assist Contractor in reducing the delay. Failure to promptly notify PG&E will constitute waiver by Contractor of concessions or benefits specified under this section.

9.2   DELIVERY OF MATERIALS: Delivery dates for material to be supplied by others, directly or through PG&E, are specified under the Construction Schedule and are scheduled to allow Contractor sufficient time for installation.

9.3   SUSPENSION OF WORK: PG&E reserves the right to suspend the Work or delivery of materials.

9.4   DELAYS WITHIN CONTRACTOR'S CONTROL: No additional compensation or other concessions will be allowed Contractor for expenses resulting from delays for which Contractor is responsible. If, in PG&E's opinion, the delay is sufficient to prevent Contractor's compliance with the specified Construction Schedule, Contractor shall accelerate the Work by overtime or other means, at Contractor's expense, to assure completion on schedule.

9.5   DELAYS CAUSED BY ADVERSE WEATHER: Delays or Work stoppages due to adverse weather conditions considered normal for the area and time of year will not be considered as delays beyond Contractor's control and no additional compensation or extension of schedule will be allowed. Delays due to weather will be considered beyond the contractor's control if Contractor can show that adverse weather was of greater duration or intensity than normally expected for the job area and time of year.

9.6   DELAYS BEYOND CONTRACTOR'S CONTROL: If there is a delay in delivery of material to be furnished by PG&E or a delay, in PG&E's opinion, caused by circumstances beyond Contractor's control, PG&E will investigate the causes and remedies and may require or authorize one of the following procedures. Contractor will be promptly notified as to which procedure will be followed.

    9.6.1   MINOR DELAY: Contractor may be required to complete the Work in accordance with the

specified Construction Schedule, if possible without the use of additional premium or shift work, with no allowance for extra time or extra compensation.

9.6.2   MAJOR DELAY, SCHEDULE CAN BE MET: PG&E will require or authorize the use of overtime and/or shift work as necessary to meet the Construction Schedule. In this case, PG&E will reimburse Contractor for the premium portion only of overtime and any shift differential, with fee, if Contractor was not already working shifts. No other extra compensation including impact, additional supervisory, engineering or clerical expenses required, premium time or shift inefficiencies will be allowed.

9.6.3   MAJOR DELAY, SCHEDULE CANNOT BE MET: PG&E will require or authorize the extension of the Construction Schedule for a period of time equal to the delay plus, in the event of strikes or other causes that make it necessary to close down the Work, an additional 2 days. Contractor will be reimbursed for actual additional expense without fee for (i) job overhead personnel including job superintendent, job engineer, office manager, payroll clerks, and other nonphysical workers; (ii) equipment rental, including automotive, office trailers, etc., both bare and fueled and maintained for equipment required by personnel described in (i); (iii) equipment rental for other equipment that is necessary to be kept at the site at rates shown in current edition of the Rental Rate Blue Book; and (iv) miscellaneous office expenses, including telephone, electric power, and other utilities, office supplies, space rental, etc.

## ARTICLE 10.
## CONTRACTOR'S LABOR RELATIONS

10.1   GENERAL: Contractor shall promptly notify PG&E in writing of any labor dispute or anticipated labor dispute which may affect the time, performance or cost of the Work.

10.2   LOCAL BARGAINING: In addition to Contractor's legal obligations under the Labor-Management Relations Act (LMRA), if Contractor is a subscriber to a multi-employer bargaining association or group, Contractor shall, if PG&E directs, participate to the fullest extent in the collective bargaining of that group with any labor organizations claiming jurisdiction over any portion of the Work.

10.3   INTERIM AGREEMENTS: Contractor shall not make interim agreements with labor unions during contract bargaining designed to avoid strikes sanctioned by an international union or by a local building trades council or engage in other activities which might undermine management efforts at the bargaining table.

10.4   STRIKE: In the event of a labor dispute or strike by Contractor's or its Subcontractor's employees which threatens the progress or cost of the Work or PG&E's labor relations, or which disrupts PG&E's operations, or results in a secondary boycott at PG&E facilities, PG&E reserves the right to restrict additional hiring of Contractor's employees, to suspend or discontinue the Work of Contractor and any Subcontractor, or terminate the Contract. This Section shall be applicable whether or not Contractor or any Subcontractor is directly involved in a labor dispute.

10.5   EXISTING UNION CONTRACTS: Contractor shall not make labor agreements with any local construction trade union affecting the performance of the Work or its cost to PG&E, independent of or in conflict with agreements in effect between the local contractors' association and the union, without first obtaining written approval from PG&E.

10.6   NATIONAL AGREEMENTS: Contractor shall, within 15 days after award of Contract, supply PG&E with copies of national agreements to which Contractor is a party. No later than 5 days before the expiration of any local agreement which may affect the Work, Contractor shall meet with PG&E for the purpose of discussing the appropriate course of action.

10.7   JURISDICTIONAL DISPUTES: Contractor and/or Subcontractor shall take steps to resolve violations of collective bargaining agreements and jurisdictional disputes, including without limitation the filing of appropriate process with any court or administrative agency having jurisdiction to settle,

enjoin or to award damages resulting from violations of collective bargaining agreements or from jurisdictional disputes.

10.8   LABOR SUPPLY: Contractor shall provide a sufficient number of skilled workers to fulfill the requirements of the Specification from whatever sources available, including nonunion sources.

10.9   APPRENTICES: It is important to PG&E that the Work be performed in the most economical manner consistent with the Specification requirements. It is also in PG&E's best interest to have an adequate number of trained workers within its service area to perform construction work that may be required.

   10.9.1   UNION CONTRACTORS: Contractor shall actively participate in union apprentice programs and exert its best effort to maintain the maximum complement of apprentices in the field work force as permitted by the local collective bargaining agreements. Contractor shall employ during the performance of this Contract the number of apprentices or trainees, or both, in each occupation, called for by each applicable labor agreement; shall take whatever steps may be necessary to assure that 25 percent of the apprentices or trainees in each occupation are in their first year of training; and shall agree to maintain and make available for inspection, upon PG&E's request, Contractor's records on employment of apprentices, trainees, and journeymen, in each occupation.

10.10  USE OF PREFABRICATED MATERIAL: Contractor shall install prefabricated or preassembled equipment where specified or purchased by PG&E, or otherwise where it is deemed to be the most economical alternative whether or not fabricated in a union shop and without necessary change.

10.11  TAX WITHHOLDING: Contractor represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Contractor who perform services for PG&E. Contractor shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Contractor's failure to institute any such required withholding.

10.12  PREVAILING WAGES FOR WORK NORMALLY PERFORMED BY IBEW EMPLOYEES: In the event work performed by Contractor under this contract has been identified by PG&E as work normally performed by IBEW represented PG&E employees, Contractor shall pay wages to the Contractor employees which meet or exceed prevailing wages. In addition, pursuant to California Public Utilities Commission Decision 04-12-056 as modified by Decision 04-12-063, Contractor shall pay its workers who are employed on energy utility construction projects, awarded by Pacific Gas and Electric Company on or after December 16, 2004, prevailing wages as determined by the State of California Department of Industrial Relations Department ("DIR"). For purpose of this paragraph, prevailing wages shall be as defined by California Labor Code Part 7, Chapter 1, Article 2, Section 1770, 1773, and 1773.1. Contractor shall provide PG&E a certified copy of their payroll, including benefits, broken out by PG&E department, for all Work performed by Contractor that is identified by PG&E as work normally performed by IBEW represented PG&E employees or subject to the CPUC Decision named above. All requirements of this section shall extend to Contractor's subcontractors. If the provisions of this section conflict with the requirements of other sections of Specific Conditions, if applicable, or these General Conditions, this section will prevail.

10.13  OPERATOR QUALIFICATION: In the event the Work hereunder provides for Contractor to perform tasks or subtasks identified by PG&E as work covered by the Department of Transportation Operation Qualification Guidelines listed in 49 CFR 192 and 195 and in Pacific Gas and Electric Company's Gas Operation Qualification Plan, Contractor and Subcontractor(s) must be qualified to perform such Work. Furthermore, Contractor and Subcontractor(s) must be able to recognize and react appropriately to abnormal operating conditions that may indicate a dangerous situation or a condition exceeding design limits.

   10.13.1  DOCUMENTATION OF COMPLIANCE: Contractor and Subcontractor(s) shall, in order to verify compliance with, and qualifications under, both the DOT Operator Qualification Rule

and PG&E's DOT Operator Qualification Plan, provide copies of (i) Contractor's and/or Subcontractor's Qualification Plan; (ii) Certification of compliance with DOT Operator Qualification Guidelines, dated and signed by Contractor; and (iii) Certification of performance-based testing for each Contractor or Subcontractor employee assigned to perform covered tasks/subtasks, clearly identifying the individual certified. The documents listed shall be provided to the PG&E Operator Qualification Specialist, GSM&TS, 375 North Wiget Lane, Suite 200, Walnut Creek, California 94598, prior to commencing Work.

10.13.2   DOCUMENTATION OF INDIVIDUALS: The documentation that supports an individual's qualification must, as a minimum, include: (i) the identity of the individual including, but not necessarily limited to, full name and the last four digits of the Social Security Number or, preferably, the employee number; (ii) identification of each task/subtask for which he/she is qualified; (iii) date of qualification for each task/subtask; (iv) qualification frequency as determined by PG&E; (v) last qualification date; and (vi) Qualification Method – oral, written, and/or performance-based.

10.13.3   PG&E QUALIFICATION: PG&E. at its option, may also require that Contractor and Subcontractor personnel be qualified under PG&E's Gas Operation Qualification Plan. In such event, PG&E's Operator Qualification Specialist will advise Contractor of the location, date and time for qualification. PG&E may require that the entire crew be qualified or that only lead personnel be qualified. PG&E will provide Contractor with copies of all qualification documents prior to start of covered Work.

10.13.4   EXPIRATION OF QUALIFICATIONS: All Contractor and Subcontractor qualifications will expire upon completion of the project or as determined, in writing, by Pacific Gas and Electric Company.

10.13.5   RECORD KEEPING: As defined in Record Keeping in Section 1.8 of Pacific Gas and Electric Company's Operator Qualification – Basic Plan, Contractor and Subcontractor(s) must maintain records of individual qualification while the individual is performing covered tasks/subtasks and for a minimum period of five years after the individual is no longer performing covered tasks/subtasks.

10.13.6   CONTRACTOR RESPONSIBILITIES: Contractor shall be responsible for all penalties and costs associated with Contractor or Subcontractor failure to comply with the foregoing. Contractor shall notify PG&E immediately of any changes in the status of the employee or Subcontractor that affects their qualification to perform covered tasks.

10.14   PERSONNEL REQUIREMENTS: Contractor shall employ personnel qualified to perform the Work. If the PG&E Representative finds Contractor's employee to be unsatisfactory, Contractor or Contractor's Representative shall replace said employee immediately. This provision in no way requires and PG&E neither expressly or impliedly endorses or approves the Contractor to terminate the employment of any employee replaced under the terms of this Section.

10.14.1   EMPLOYEE DATA: If requested, the Contractor shall furnish PG&E the following information on each employee after award of Contract and each CWA, and prior to starting Work: full name, address, date of birth, employee number, and PG&E work location. If required by PG&E, Contractor shall advise PG&E of temporary or permanent changes in personnel and shall provide the same information for such additional employees.

Case 4:20-cv-05381-HSG   Document 36   Filed 03/05/21   Page 55 of 103

10.14.2   TRADES: Various branches or trades into which the Work is divided are generally specified under separate divisions of the Specification. Contractor shall, in accepting the bid of a Subcontractor for a given trade, be satisfied that the Work to be performed by that trade is included in the Subcontractor's bid, whether or not it is specifically required within the division relating to that trade or class of Work. Journeymen and other workers employed in the Work shall be skilled in their trades. Workers employed by Contractor shall be subject to PG&E approval.

10.15   REPORTING: In accordance with Section 7912 of the California Public Utilities Code, Contractor agrees to report annually to PG&E the number of California residents employed by Contractor, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

## PART B:
## BASE GENERAL CONDITIONS

## ARTICLE B-1.
## NO GUARANTEE OF WORK; INDEPENDENT CONTRACTOR

B1.1   THIS IS NOT AN EXCLUSIVE CONTRACT. THIS CONTRACT DOES NOT GUARANTEE CONTRACTOR ANY VOLUME OR DURATION OF WORK. PG&E EXPRESSLY RESERVES ALL ITS RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO CONTRACT WITH OTHER PARTIES FOR THE PERFORMANCE OF WORK OF THE TYPE CONTEMPLATED BY THIS CONTRACT; THE RIGHT TO REQUEST PROPOSALS FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONTRACTOR AND THE UNRESTRICTED RIGHT TO PERFORM THE WORK WITH PG&E'S OWN EMPLOYEES.

B-1.2   INDEPENDENT CONTRACTOR: In assuming and performing the obligations of this Contract, Contractor is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees. All persons, if any, hired by Contractor shall be employees or Subcontractors of Contractor and shall not be construed as employees or agents of PG&E in any respect.

## ARTICLE B-2.
## INDEMNIFICATION, LIABILITY AND WITHHOLDING

B-2.1   INDEMNIFICATION:  Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; (v) delay or failure to pay any Subcontractor, including but not limited to any demands for payment, invoices, or liens; (vi) delay or failure to pay any employees, laborers, or other personnel of Contractor or any Subcontractor the compensation, monies, wages, benefits or other payment due or allegedly due; so long as such injury, violation, payment or strict liability (as set forth in (i) - (vi) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, (a) excepting only such loss, damage, cost, expense, liability, payment, strict liability, or violation of law or regulation for which indemnity is not allowed under applicable law, and (b)  except to the extent that the alleged claim relates to provision of professional services on the part of the Contractor or its Subcontractors, in which case the Contractor's obligation to indemnify PG&E shall be to the extent of Contractor's negligence and shall be reduced by any active negligence on the part of PG&E. As used in the preceding sentence, "professional" is defined as services that are primarily intellectual rather than manual, including preparation of engineering, designs, reports, drawings and applications. Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this

indemnity. Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

B-2.1.1  HAZARDOUS MATERIAL OR WASTE: Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arise from or are in any way connected with the release or spill of any legally designated hazardous material or waste and arise from or are in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. However, notwithstanding the foregoing, Contractor  and PG&E recognize and agree that  Contractor bears no responsibility whatsoever for the creation, existence or presence of any toxic, hazardous, radioactive, infectious or other dangerous substances existing at PG&E's work site at the time that Contractor commences performance of services at said site ("Pre-existing Conditions"). Under no circumstances will Contractor assume ownership of or legal liability for PG&E's waste under CERCLA or other laws pertaining to hazardous materials and wastes or assume the status of generator, storage agent, treatment facility, or disposal facility for PG&E's waste under RCRA or any state law governing the treatment, storage or disposal of waste. Contractor will, at PG&E's request, help PG&E identify appropriate alternatives for offsite treatment, storage or disposal of hazardous materials, but, Contractor shall not make any independent determination about the selection of a treatment, storage, or disposal facility. PG&E shall sign all manifests or shall provide written authorization for Contractor to sign manifests as agent for PG&E. Any hazardous materials, substances, pollutants or contaminants generated or encountered in the performance of the Work, except for hazardous materials that are brought onto the worksite by the Contractor, shall be the responsibility of PG&E and shall be disposed of under a RCRA hazardous waste Generator Number obtained by and carried in the name of PG&E.

B-2.2    WITHHOLDING:  PG&E may withhold from the final payment due Contractor hereunder such amounts as, in PG&E's opinion, are sufficient to provide security against all loss, damage, expense, and liability covered by the foregoing indemnity provision for damage to property.

B-2.3    RISK OF LOSS OR DAMAGE TO WORK:  Until the Work is completed and accepted by PG&E, the risk of loss or damage to the Work shall remain with Contractor. No damages or extras will be allowed for unforeseen difficulties or obstructions, except as explicitly set forth herein.

B-2.4    INCIDENTAL AND CONSEQUENTIAL DAMAGES: EXCEPT WITH RESPECT THE CONFIDENTIALITY OBLIGATIONS AND THIRD-PARTY INDEMNIFICATION OBLIGATIONS OF CONTRACTOR FOR DEATH AND PERSONAL INJURY CLAIMS UNDER THIS CONTRACT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY (OR ANY INDIVIDUAL OR ENTITY CLAIMING THROUGH SUCH PARTY) FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR UNRECOVERED OVERHEAD AND, UNLESS EXPRESSLY AUTHORIZED IN WRITING BY PG&E, COMMITMENTS TO SUBCONTRACTORS, RENTAL OR LEASE AGREEMENTS, AND PERSONAL SERVICES CONTRACTS.

B-2.5    DIRECT DAMAGES:  EXCEPT AS TO THE CONTRACTOR'S INDEMNIFICATION OBLIGATIONS FOR THIRD PARTY DEATH AND PERSONAL INJURY CLAIMS UNDER THIS CONTRACT, CLAIMS FOR DEATH OR PERSONAL INJURY, AND CLAIMS FOR INFRINGEMENT, A PARTY'S TOTAL AGGREGATE LIABILITY TO THE OTHER PARTY (OR ANY INDIVIDUAL OR ENTITY CLAIMING THROUGH SUCH PARTY) WHETHER IN EQUITY, COMMON LAW, CONTRACT, ESTOPPEL, NEGLIGENCE, TORT, STRICT LIABILITY OR ANY OTHER THEORY (REGARDLESS OF THE FORM OF ACTION), ARISING OUT OF, RESULTING FROM OR RELATING TO THE CONTRACT, SHALL NOT EXCEED TWENTY THREE MILLION DOLLARS.).

B-2.6    THE PARTIES AGREE THAT THE LIMITS OF LIABILITY STATED IN THIS SECTION B-2 ARE CUMULATIVE AND THE AMOUNTS OF ANY SUCH LIMITS OF LIABILITY MAY NOT BE COMBINED WITH ANY OTHER LIMITS OF LIABILITY SET FORTH IN SECTION B-2 SO AS TO INCREASE THE FOREGOING LIABILITY CAP IN ANY PARTICULAR INSTANCE OR SERIES

OF INSTANCES.

## ARTICLE B-3.
## AMENDMENTS, SUBCONTRACTS AND ASSIGNMENTS

B-3.1    AMENDMENT:  No provision of the Contract will be deemed amended or waived by PG&E without prior written approval by Change Order.  No oral statement will modify or otherwise affect the terms and conditions set forth herein.

B-3.2    SUBCONTRACTS:  Contractor shall not enter into Subcontracts and no Subcontractor shall be permitted to perform Work without the prior written approval of PG&E. PG&E's approval of any Subcontract shall not relieve Contractor of its obligations to PG&E under this Contract. The provisions and obligations of this Contract shall apply to any Subcontract and Contractor shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Contract. Nothing in the Contract shall create any contractual relations between a Subcontractor and PG&E.

B-3.3    ASSIGNMENT:  Neither party may assign all or any part of this Contract or its rights and obligations hereunder, directly or indirectly, by operation of law or otherwise without the other party's prior written consent, except that Contractor may assign to Contractor's corporate affiliate in which Contractor holds a majority interest, provided that the Contractor and the affiliate remain obligated under this Contract. Subject to the foregoing, this Contract shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto.

## ARTICLE B-4.
## ROYALTIES, LICENSE FEES, USE RIGHTS,
## INFRINGEMENT PROTECTION

B-4.1    ROYALTIES AND LICENSE FEES:  Royalties, license fees or other charges for patents, copyrights, licenses, or other intellectual property for designs, processes, machinery, equipment, technology, published or unpublished data, information or materials, including but not limited to, manuals, computer programs or other deliverables furnished by Contractor for the Work, or for processes or methods employed by Contractor in performing the Work, shall be included in the Contract price.

B-4.2    OWNERSHIP OF DELIVERABLES: PG&E shall own all data, drawings, designs, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other deliverables produced in the performance of this Contract. Contractor shall retain no ownership, interest, or title in them except as may otherwise be provided in this Contract. Re-use of any such deliverables by PG&E on any extension of the project or on any other project without the written authorization of Contractor shall be at PG&E's sole risk.

B-4.3    PREEXISTING RIGHTS: If and to the extent that Contractor retains any preexisting rights in any materials furnished hereunder, Contractor hereby grants to PG&E the irrevocable, perpetual, non-exclusive, worldwide, royalty-free right and license to (1) make, use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works based upon such preexisting rights and derivative works thereof in connection with PG&E's business, and (2) authorize others to do any or all of the foregoing in connection with PG&E's business. Any claims of Contractor proprietary rights in materials furnished hereunder must be expressly set forth in this Contract or shall have been previously disclosed to PG&E in writing.

B-4.4    CONFIDENTIALITY:  In the course of performing the Work under this Contract, Contractor may have access to confidential, commercial, business or personal information concerning, but not limited to, technological, financial, rate-making, legislative and personnel matters and practices of PG&E, its affiliates, subsidiaries, parent company or members of the public.  Contractor

agrees not to disclose any such confidential information or to otherwise make it available to any other person, including any affiliate of PG&E that provides energy or energy-related products or services, without the prior written approval of PG&E, except to Contractor's employees who need such information to properly perform their duties under this Contract, except to Contractor's employees who need such information to properly perform their duties under this Contract. Prior to execution of this Contract, Contractor shall complete, sign and return Exhibit 7 Nondisclosure Agreement.

B-4.5   USE AND REPRODUCTION RIGHTS:  PG&E shall have the unrestricted right of use and reproduction of all documentation, including but not limited to, instructional manuals, and other materials related to the Work furnished hereunder. Such use and reproduction by PG&E or by contractors doing work for PG&E shall not require further permission by Contractor, nor shall it constitute infringement of Contractor's ownership rights, including copyright, to such materials. Any claims of Contractor to ownership in materials furnished hereunder must be expressly set forth in the Contract or shall be disclosed to PG&E in writing.

B-4.6   INFRINGEMENT PROTECTION:  Contractor represents to PG&E that the Work to be performed, and the materials prepared or used, under this Contract will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Contractor agrees to indemnify and hold PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, harmless from any suit, demand or claim alleging any such infringement or violation. In addition to the foregoing, if there is such a claim, Contractor agrees at PG&E's option to either procure for PG&E the right to continue using the material, replace the material with non-infringing material or modify it so it becomes non-infringing, or remove the item and refund the applicable portion of the Contract price; provided, however, that the replaced or modified material shall be equal to that contracted for hereunder and satisfactory to PG&E. Contractor further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit.

B-4.7   PUBLIC RELEASE OF RESULTS:  Contractor agrees not to release any information relating to the Work performed hereunder for publication, advertising, or for any other purpose, without first providing PG&E with the information sought to be released and a description of the publication for PG&E's prior approval.  Contractor further agrees that a release shall not present any material findings not reasonably inferable from the data. Any public release shall acknowledge PG&E's sponsorship of the Work.

B-4.8   PUBLIC TESTIMONY:  It is further agreed between the Parties that, if requested by PG&E, Contractor shall provide testimony before any federal, state or local court, regulatory body or any other public agency to substantiate any Work performed or data, reports, or materials supplied to PG&E.  Reasonable fees for such testimony will be negotiated at that time.

B-4.9   THIRD PARTY LICENSES:  Contractor represents and warrants that it shall comply (and ensure that its personnel and subcontractors comply) with all third party licenses, terms of use, policies and procedures that apply to or otherwise govern access to and/or use of any third party materials made available by PG&E to Contractor under this Contract.

## ARTICLE B-5.
## CONFLICT OF INTEREST/BUSINESS ETHICS

B-5.1   REASONABLE CARE:  Contractor shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

B-5.2   OTHER EMPLOYMENT:  During the term of this Contract, Contractor or its employees will not accept any employment or engage in any work which creates a conflict of interest with PG&E or in any way compromises the Work to be performed under this Contract.

B-5.3   GIFTS:  Contractor or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties.

B-5.4   ACCURATE DOCUMENTATION:  All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

B-5.5   NOTIFICATION:  The Contractor shall immediately notify PG&E of any and all violations of this clause upon becoming aware of such violation.

## ARTICLE B-6.
## SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY

B-6.1   REGULATIONS AND CONDUCT OF WORK:  Contractor shall plan and conduct the Work to safeguard persons and property from injury. Contractor shall direct the performance of the Work in compliance with reasonable safety and work practices and with all applicable federal, state, and local laws, rules, and regulations, including but not limited to "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health, including the wearing of the appropriate Personal Protective Equipment (PPE) at the worksite.  Work in areas adjacent to electrically energized facilities and/or operating natural gas facilities shall be performed in accordance with said practices, laws, rules, and regulations. PG&E may designate safety precautions in addition to those in use or proposed by Contractor. PG&E reserves the right to inspect the Work and to halt construction to ensure compliance with reasonable and safe work practices and with all applicable federal, state, and local laws, rules, and regulations. Neither the requirement that Contractor follow said practices and applicable laws, rules, and regulations, nor adherence thereto by Contractor, shall relieve Contractor of the sole responsibility to maintain safe and efficient working conditions.

B-6.2   CALIFORNIA HEALTH AND SAFETY CODE:  The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Contract, Contractor, its employees, agents and Subcontractors may be exposed to chemicals on the Governor's list. Contractor is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

B-6.3   CONTROLLED SITE ACCESS:  A distinctive visible identification badge shall be furnished by Contractor and worn by its employees when on PG&E's property. Insofar as practicable, PG&E will require Contractor's employees to use one designated access in going to and from the worksite.  Contractor's guests and visitors shall secure a permit from PG&E to enter the worksite, and will be logged in and out of the property with PG&E retaining the permit at the time of logging out. Contractor's employees shall not enter electrically energized equipment areas or other areas out of construction limits except with written permission.

B-6.4   ADDITIONAL PRECAUTIONS:  If PG&E requests Contractor to provide certain safeguards not in use but considered necessary and if Contractor fails to comply with the request within a reasonable time, PG&E may provide the safeguards at Contractor's expense. Failure to comply with safety precautions required by PG&E may result in cancellation of the Contract in accordance with Article B-10.

B-6.5   PROTECTION OF FLOORS AND WALLS:  Contractor shall protect floors and walls from damage and discolorations due to exposure to oils and other discoloring agents during

performance of the Work. Damage or discoloration shall be repaired to PG&E's satisfaction at Contractor's expense.

B-6.6    STORAGE OF HAZARDOUS MATERIALS AND DISPOSAL OF HAZARDOUS WASTES: Surplus Hazardous Materials and Hazardous Wastes are the property and responsibility of Contractor, and may not be stored or disposed of on or at the Work site. Contractor represents and warrants that any facility to which Hazardous Wastes may be moved is in compliance with any and all federal, state, and local laws, rules and regulations pertaining thereto and that the facility is suitable to receive and/or dispose of, and may lawfully receive and/or dispose of the Hazardous Wastes.

B-6.7    DISCOVERY OF HAZARDOUS WASTES OR HAZARDOUS MATERIAL AND NOTICE TO PG&E: In the event that Contractor discovers Hazardous Waste or Hazardous Material on the job site during the performance of the Work, Contractor shall immediately (1) secure the area around the Hazardous Waste or Hazardous Material, and (2) notify PG&E of the situation.

B-6.8    FIRST-AID FACILITIES:  If first-aid facilities are required, Contractor shall furnish, stock, and provide the necessary qualified personnel to maintain such first-aid facility at Contractor's expense unless other provisions are made and agreed upon with PG&E.  Nothing contained in the Contract shall relieve Contractor from providing and maintaining all stretchers, blankets, first-aid material, and first-aid kits as required by applicable safety order of the State of California Department of Industrial Relations, Division of Occupational Safety and Health (Cal/OSHA) or as required by other federal, state or local laws, rules or regulations.

B-6.9    STANDBY VEHICLES(S):  If one or more standby vehicles is required for the transporting of seriously injured personnel, Contractor shall furnish, maintain and operate such vehicle(s) at Contractor's expense unless other provisions are made and agreed upon with PG&E. If a standby vehicle is provided for transporting seriously injured project personnel to medical facilities, Contractor shall have available specifically assigned workers who are qualified to drive the vehicle and to care for the injured in case of emergency.


**ARTICLE B-7.**
**GUARANTEES AND EQUIPMENT WARRANTY**

B-7.1    EQUIPMENT AND MATERIAL GUARANTEES:  In addition to the guarantees provided under this Contract, or implied in fact or in law, Contractor shall leave the entire project in satisfactory working order and repair or replace at its expense any part of the Work that develops defects due to faulty workmanship, materials, or any failure to comply with or perform in accordance with the requirements of the Specification within a period of twenty-four (24) months after the Work is accepted by PG&E .Contractor shall promptly repair or replace, at Contractor's expense, other Work, equipment or property damaged as the result of the defects, or as a result of the repairing thereof, and hold PG&E harmless from PG&E's repair expenses. The warranty period for a repair or replacement shall be one year from the date of acceptance by PG&E of the repair or replacement.

B-7.2    DESIGN AND ENGINEERING GUARANTEES:  In addition to the guarantees provided above, Contractor shall repair or replace at its expense any part of the Work that develops defects due to faulty design or engineering, or any failure to comply with or perform in accordance with the requirements of the Specification within a period of five years after the Work is accepted by PG&E and Contractor shall promptly remedy, at Contractor's expense, other Work, equipment or property damaged as the result of the defects, or as a result of the remedying thereof and hold PG&E harmless from PG&E's repair expenses throughout the duration of the design and engineering warranty period.

B-7.3    EQUIPMENT WARRANTY:  If any third party materials or components are embodied in the Equipment or furnished with or in connection with the Work and are covered by a third party warranty or indemnity, Contractor shall: (a) provide PG&E with a copy of each such warranty or

indemnity; (b) if such warranty or indemnity does not, by its express terms, pass through to the end customer, then to the extent permitted by the third party, Contractor hereby assigns and transfers to PG&E all warranties and/or indemnities provided by such third party or Contractor shall require the third party (at Contractor's sole cost and expense) to grant PG&E the benefit under such warranties and/or indemnities; and (c) unless specifically provided otherwise herein, PG&E shall have no obligation to pay any third party any fees, royalties or other payments for PG&E's use of any third party materials embodied in or furnished with the Equipment. Contractor shall support and maintain such third party materials during the applicable warranty period.

B-7.4    WORK STANDARDS:  Contractor warrants to PG&E that the Work under this Contract shall be performed with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the Work is performed.

B-7.5    REPAIRS BY PG&E: In the event PG&E determines that it is impractical for Contractor to make repairs or replacements, PG&E reserves the right to undertake or have others undertake the repairs or replacements at Contractor's expense. PG&E's exercise of its rights under this Section shall not waive any rights or remedies PG&E may have under this Contract in law or equity.

## ARTICLE B-8.
## PG&E'S OPERATION

B-8.1    PG&E'S OPERATION:  When working in the vicinity of PG&E's plant or offices, Contractor shall conduct the Work in a manner that will cause a minimum of inconvenience to PG&E's employees and the general public. Contractor shall not interfere with PG&E's business or other operations.

B-8.2    USE OF FACILITIES:  PG&E shall have the use of constructed facilities during the Contract period whether facilities are completed or not. If PG&E makes use of an uncompleted facility, PG&E will reimburse Contractor for actual expense Contractor may incur as a result of such use.

B-8.3    ADVERTISING MATTER:  Contractor shall neither advertise nor allow advertising at the worksite without written approval.

B-8.4    CLEANING UP:  With respect to its own operation, Contractor shall maintain the worksite and related structures, equipment, and facilities in a clean, orderly condition during progress of the Work and clean up debris to the satisfaction of PG&E. If, in PG&E's opinion, the worksite is not being kept in a clean, orderly condition and if upon notice to correct the condition Contractor fails to so do, PG&E may shut down the Work until cleanup is performed or order others to perform cleanup work at Contractor's expense.  Building surfaces, including glass, shall be left clean.  Where more than one contractor is working at the worksite, and there is a disagreement in regard to the amount of cleanup each shall perform, PG&E will designate the amount of cleanup work each contractor shall perform. Upon completion of the Work, Contractor shall remove its tools, construction equipment, debris, and waste material from the worksite and leave the area in a clean and orderly condition to PG&E's satisfaction.

## ARTICLE B-9.
## AVAILABILITY OF INFORMATION

B-9.1    ACCESS:  PG&E's duly authorized representatives shall have, during the term of the Contract and for three years thereafter, access at all reasonable times to all of the Contractor's and its Subcontractors' personnel, accounts and records of all description, including but not limited to computer files, pertaining to the Contract to verify or review the quantity, quality, work program and progress of the Work, reimbursable costs, amounts claimed by the Contractor, estimates of cost for fixed rates including those applicable to proposed changes, and for any other reasonable purposes including any and all records of the Contractor for the purpose of verifying

compliance with Article B-5, CONFLICT OF INTEREST/BUSINESS ETHICS.

B-9.2   APPLICABILITY:  This Article B-9 shall apply to all PG&E contracts but shall not apply to pricing for contracts performed solely on a lump-sum basis. However, where lump-sum and time and materials work (including unit price, reimbursable cost, fixed rates, etc.) are performed together, either as a part of this Contract or as separate contracts, then the above audit right shall also extend to PG&E's access to all Contractor's records pertaining to all PG&E contracts, including the lump-sum, for assurance that the portions of the Work performed on a time and materials basis are not being charged with time, material or other units or cost which are intended to be covered by lump-sum or fixed rates, etc., provided under this Contract, including Change Orders, or other agreements.

B-9.3   ACCOUNTING:  The Contractor's and its Subcontractors' accounts shall be kept in accordance with generally accepted accounting principles in the particular industry and shall be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Contract and the basis for charges or allocations to the Contract.

B-9.4   SUBCONTRACTORS:  The Contractor shall include the necessary provisions in its Subcontracts to ensure that its Subcontractors comply with this Article.

**ARTICLE B-10.
CANCELLATION AND TERMINATION OF CONTRACT**

B-10.1   CANCELLATION FOR CAUSE:  PG&E may, at its option, cancel or suspend this Contract for cause upon, but not limited to, the: (i) failure, refusal or inability of the Contractor to perform the Work in accordance with this Contract for any reason (except for those reasons that are beyond Contractor's control) after receiving notice from PG&E and an opportunity to cure and Contractor has failed to do so; provided however, at PG&E's option, safety or security violations may result in immediate cancellation; (ii) Contractor's insolvency, failure to pay bills, or receipt of returned checks for payment of its bills due to insufficient funds; (iii) placement of a legal action against Contractor which, in PG&E's opinion, may interfere with the performance of the Work; or (iv) the determination by PG&E that the Work will not be completed in the specified time, request by PG&E that Contractor take steps necessary to accomplish the required progress and completion, and failure of Contractor to do so.

    10.1.1   PG&E will be the sole judge whether Contractor is substantially performing Work in accordance with this Specification. Contractor shall be liable for additional costs to PG&E arising from cancellation.

    10.1.2   If the Contract is canceled, Contractor shall vacate the worksite but shall not remove material, plant, or equipment without the approval of PG&E. In the event of such cancellation, PG&E shall pay Contractor for services satisfactorily performed prior to the date of cancellation which are of benefit to PG&E. In no event shall PG&E be liable for lost or anticipated profits or overhead on uncompleted portions of the Work. Any reports, drawings or other documents prepared for PG&E prior to the effective date of such cancellation shall be delivered to PG&E by Contractor. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

    10.1.3   In addition to other remedies, PG&E may at its option and without prejudice to its other rights, take over and complete all or part of the Work using Contractor's equipment and facilities at the worksite.

B-10.2   TERMINATION FOR PG&E'S REASONS:  PG&E may suspend or terminate the Contract, without cause upon written notice to Contractor.  Contractor thereupon shall take whatever action with respect to performance of the Work as will tend to minimize its claim against PG&E.

In the event of termination, PG&E shall be liable to Contractor only for the compensation earned on the Work satisfactorily performed to the date of termination, plus direct costs reasonably incurred by Contractor in terminating its operation. Contractor shall not be entitled to any payment for lost or anticipated profits or overhead on uncompleted portions of the Work. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

## ARTICLE B-11.
## GENERAL PROVISIONS

B-11.1   LEGAL REPRESENTATION:  To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

B-11.2   CHOICE OF LAWS:  This Contract shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction.  Any controversy or claim arising out of or in any way relating to this Contract which cannot be amicably settled without court action shall be litigated in a California State Court of competent jurisdiction; or if jurisdiction over the action cannot be obtained in a California State Court, in a Federal Court of competent jurisdiction situated in the State of California.

B-11.3   COMPLIANCE WITH LAWS:  Contractor shall comply with all federal, state and local laws, rules and regulations applicable to the Work to be performed under this Contract and to all aspects of the employment relationships between Contractor and its employees assigned to this Contract. Unless prohibited by law, Contractor shall hold PG&E harmless from any liability, fine or penalty incurred as a result of Contractor's failure to comply with applicable legal and regulatory requirements.

> 11.3.1  ENVIRONMENTAL LAWS: Contractor shall comply with all environmental and endangered species requirements and shall conduct its operations in a manner that complies with applicable programs and permits. In some cases, PG&E-specific environmental permits or programs may apply to the Work. Contractor is responsible for informing itself about and complying with such permits or programs.

> 11.2.1  WORKERS: Contractor will only assign workers who have a current legal right to work in the country where they will be assigned. Contractor assumes all responsibility for immigration law compliance with respect to the workers it assigns pursuant to this Contract.

B-11.4   PG&E'S SOX EFFORTS: Contractor agrees to work with PG&E in good faith to enable PG&E to comply with SOX, including in particular but without limitation PG&E's management assessment and PG&E's auditor's opinion on the adequacy of internal controls over financial reporting pursuant to Section 404 of SOX. To that end, and in addition to Contractor's other obligations set forth in this Contract, Contractor agrees to the following:

> B-11.4.1   Contractor will maintain complete and accurate records and documentation of transactions, processes and controls performed for PG&E or otherwise relating to the Work, especially as it relates to financial information and any required disclosures thereof, which records and documentation will be subject to audit by PG&E or its representatives as provided in this Contract; and

> B-11.4.2   Contractor will notify PG&E immediately of any organization, security-related or other issues that Contractor knows or suspects may reasonably affect the ability of PG&E to comply with SOX.

> B-11.4.3   BACK-UP CERTIFICATES: Contractor will deliver reasonable back-up certificates relating to its Work under the Contract in a form to be mutually agreed to the extent

reasonably necessary to support PG&E in its filing of its applicable SOX and other certifications with the Securities and Exchange Commission.

B-11.5   DISPUTE RESOLUTION:  The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations between a vice president of PG&E or his or her designated representative and an executive of similar authority of Contractor. Either Party may give the other Party written notice of any dispute. Within 20 days after delivery of said notice, the executives shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to exchange information and to attempt to resolve the dispute. If the matter has not been resolved within 30 days of the first meeting, either Party may initiate a mediation of the controversy. Each Party is required to continue to perform its obligations under this Contract pending final resolution of any dispute arising out of or relating to this Contract.

B-11.6   CONFIDENTIALITY:  All negotiations and any mediation conducted pursuant to this section are confidential and shall be treated as compromise and settlement negotiations, to which Section 1119 of the California Evidence Code shall apply, and Section 1119 is incorporated herein by reference.

B-11.7   PRELIMINARY INJUNCTION:  Notwithstanding the foregoing provisions, a Party may seek a preliminary injunction or other provisional judicial remedy if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

B-11.8   NON-WAIVER:  The waiver by either Party of any breach of any term, covenant or condition contained in this Contract, or any default in the performance of any obligations under this Contract, shall not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor shall any waiver of any incident of breach or default constitute a continuing waiver of the same.

B-11.9   ENFORCEABILITY:  In the event that any of the provisions, or application of any of the provisions, of this Contract are held to be illegal or invalid by a court of competent jurisdiction or arbitrator/mediator, PG&E and Contractor shall negotiate an equitable adjustment in the provisions of this Contract with a view toward effectuating the purpose of this Contract. The illegality or invalidity of any of the provisions, or application of any of the provisions, of this Contract will not affect the legality or enforceability of the remaining provisions or application of any of the provisions of the Contract.

B-11.10  INTEGRATION: This Contract constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written, with respect to the subject matter hereof and has been induced by no representations, statements or agreements other than those herein expressed.  No provision of this Contract may be modified or waived unless in writing and executed by both Parties.

B-11.11  THIRD PARTY BENEFICIARIES: To the extent the scope of Work under the Contract requires Contractor to perform Work for both PG&E and Joint Trench Parties, Contractor and PG&E hereby agree that the Joint Trench Parties are express third party beneficiaries to the Contract.

B-11.12  PRIOR WORK: Work performed prior to award of Contract pursuant to PG&E's authorization shall be performed in accordance with, and shall be subject to, the provisions of this Contract.

B-11.13  SURVIVAL: The provisions entitled Article B-2 "Indemnification, Liability and Withholding," Section B-3.3 "Assignment," Section B-4.3 "Infringement Protection," Article B-7 "Guarantees and Equipment Warranty" as well as Article B-9 "Availability of Information", shall survive termination, cancellation or expiration of this Contract.

B-11.14  USE OF CERTAIN WORDS: Unless the context requires otherwise, (i) "including" (and any of its derivative forms) means "including but not limited to", (ii) "may" means has the right, but not

the obligation to do something, and "may not" means does not have the right to do something, (iii) "will" and "shall" are expressions of command, not merely expressions of future intent or expectation, (iv) "written" or "in writing" is used for emphasis in certain circumstances, but does not restrict the general application of the notice requirements in Section B-11.14 NOTICES in those and other circumstances, (v) use of the singular imports the plural and vice versa, and (vi) use of a specific gender includes the other gender(s).

B-11.15 NOTICES: All formal notices, requests, demands, approvals and communications under the Contract (other than routine operational communications) (collectively, "*Notices*") will be in writing and may be served either (i) in person or (ii) by registered or certified mail or express shipping services or air freight services that provide proof of delivery, with postage or shipping fees prepaid or (iii) facsimile, and addressed to the Party to be served at the address identified on the signature page of the Contract.

## ARTICLE B-12
## PG&E'S REQUIREMENTS AND POLICIES

B-12.1 PG&E'S SUPPLIER DIVERSITY POLICY: It is PG&E's policy that Women, Minority, and Disabled Veteran Business Enterprises (WMDVBEs) shall have the maximum practicable opportunity to participate in providing the products and services PG&E purchases.

   12.1.1   For all PG&E contracts, the Contractor agrees to comply, and to require all Subcontractors and sub-subcontractors to comply, with PG&E's Supplier Diversity Purchasing Policy, as set forth in Exhibit 1 hereto. The Contractor shall provide to each prospective Subcontractor a copy of Exhibit 1.

   12.1.2   In addition, for contracts exceeding $500,000 (or $1 million for construction contracts), the Contractor must comply with the Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, as described in Exhibit 2 hereto. The Subcontracting Plan for these contracts must include provisions for implementing the terms prescribed in Exhibit 2. However, Small Business and Small Disadvantaged Business Subcontracting Plans are not required for any of the following: (i) small business contractors, (ii) personal service contracts, (iii) contracts that will be performed entirely outside of the United States and its territories, or (iv) modifications to existing contracts which do not contain subcontracting potential.

   12.1.3   For all PG&E contracts, the Contractor shall act in accordance with the Subcontracting Plan in the performance of the Work and in the award of all Subcontracts.

   12.1.4   The requirements of Exhibit 1 and the successful Bidder's response will be incorporated into the Contract.

B-12.2   FEDERAL POLICY

   12.2.1   EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION REGULATIONS POLICY: During the performance of this Contract and to the extent they may be applicable, Contractor agrees to comply with all laws, orders, and regulations included by summary or reference in the following paragraphs

   • Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause.
   • Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities.
   • Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-250.5.a: Equal Opportunity Clause.
   • Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-300.5.a: Equal Opportunity Clause.
   • Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause.

    12.2.2    EXECUTIVE ORDER 13496 – EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated by reference into this Contract.

B-12.3    PG&E DRUG AND ALCOHOL POLICY: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel.  To accomplish these objectives, PG&E has established a drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel. If any personnel of Contractor or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Contractor shall comply with PG&E's Drug and Alcohol Abuse and Testing Policies attached as Exhibit 3 to these General Conditions.

B-12.4    INJURY AND ILLNESS PREVENTION PROGRAM:  In the performance of the Work under this Contract, Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. The person with the authority and responsibility for implementing and administering Contractor's Injury and Illness and Prevention Program shall execute the Compliance Certificate attached as Exhibit 4.

B-12.5    DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS: PG&E is committed to maintain documents and records so as to satisfy applicable legal, contractual and regulatory requirements as well as PG&E's on-going business needs; to enable appropriate records management, provide appropriate retrieval and achieve the proper level of security and privacy. In furtherance of this commitment, Contractor agrees to comply with the requirements of Exhibits 6 and 6A, attached to these General Conditions.

B-12.6    WORK ON PG&E OR PG&E CUSTOMER ASSETS OR PREMISES:  The following provisions shall apply to the extent that the Work under the Contract requires any Contractor or Subcontractor personnel (collectively, "Personnel") to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, "Access").

    12.6.1    CRIMINAL BACKGROUND CHECKS:

    (i)    Contractor warrants and represents that it will not assign any Personnel to work requiring Access unless Contractor has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment). Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Contractor must consider the gravity of the individual's offense, the time since the conviction, the successful completion of parole/probation, the individual's age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history. Contractor shall also consider the relation of the offense to the nature of the work the individual will perform.

    (ii)    Notwithstanding the foregoing, in no event shall Contractor grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI's in the past three years.

    (iii)    Contractor shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and make it available to PG&E

for audit if requested pursuant to the audit provisions of this Contract.

    (iv) Contractor also agrees to notify PG&E if any of its Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.

12.6.2    FITNESS FOR DUTY: Contractor shall ensure that its Personnel granted Access report to work fit for duty. Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely. PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely. For example, employees should not be operating equipment under medication that creates drowsiness. As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana, whether or not is it used for medical reasons.

12.6.3    ELIGIBILITY FOR PG&E WORK: When assigning any Personnel to perform Work requiring Access, Contractor shall submit each person's full name and the last four digits of their social security number to PG&E at the following e-mail address: RecruitingOperations@pge.com. PG&E reserves the right to decline or reject any proposed Personnel, in which case Contractor shall promptly propose a replacement.

B-12.7    COMPLIANCE WITH PG&E'S OUTSOURCED GAS ASSET MANAGEMENT STANDARD: In performance of the Work, Contractor shall comply with the terms and conditions of PG&E's Outsourced Gas Asset Management Standard attached as Exhibit 8 to these General Conditions.

B-12.8    NERC REQUIREMENTS: Pursuant to a directive from the North American Electric Reliability Corporation (NERC), all employees and contractors with unescorted access to facilities and functions that PG&E deems critical to the support of the electricity infrastructure ("Critical Facilities") shall undergo employment background screening and training prior to being granted access to these PG&E facilities. To the extent applicable to the Work, Contractor shall comply with the requirements of Exhibits 9 and 9A, attached hereto and incorporated herein.

B-12.9    SUPPLIER CODE OF CONDUCT: CONTRACTOR, ITS SUBCONTRACTORS AND THEIR SUPPLIERS AT ALL TIERS, SHALL COMPLY WITH PG&E'S SUPPLIER CODE OF CONDUCT IN THE AWARD AND PERFORMANCE OF ALL CONTRACTS AND SUBCONTRACTS. The Supplier Code of Conduct requires that Contractor and each of its Subcontractors demonstrate a strong commitment to compliance, ethics, sustainability and supplier diversity as a foundation to successful business. Contractor must complete its Work for PG&E in full compliance with the Supplier Code of Conduct, as it may be modified from time to time. Contractor shall access, read and comply with PG&E's Supplier Code of Conduct and shall make it available to its Subcontractors and suppliers. The Supplier Code of Conduct is hereby incorporated by reference into this Contract. It is available at PG&E's website, www.PGE.com, at the following link:
http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCodeofConductPGE.pdf

**[Remainder of the page intentionally blank.]**

**EXHIBIT 1**

**PG&E'S SUPPLIER DIVERSITY POLICY**

CONTRACTOR AND SUBCONTRACTORS OF ALL TIERS MUST COMPLY WITH PG&E'S SUPPLIER DIVERSITY POLICY IN THE AWARD OF ALL SUBCONTRACTS.  This policy requires that Small, Women, Minority, and Disabled Veteran Business Enterprises (WMDVBEs), and Lesbian, Gay, Bisexual, and Transgender Business Enterprises (LGBTBEs) shall have the maximum practicable opportunity to participate in the performance of Work.

1.  Contractor shall provide a copy of this Exhibit 1 to each prospective Subcontractor.

2.  Women and Minority-owned Business Enterprises (WMBEs) must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156. Disabled Veteran-owned Business Enterprises (DVBEs) must be verified pursuant to the procedures prescribed by the Department of General Services. LGBTBEs must be verified pursuant to the procedures prescribed by The National Gay & Lesbian Chamber of Commerce®.

3.  Contractor shall provide a separate, signed prime supplier plan (Exhibit 1A – List of Subcontractors and Disbursement Plan) consisting of a specific list of Subcontractors that will participate in the performance of the Work. Contractor shall also provide a statement setting forth (i) the Contractor's goals for WMDVBE and LGBTBE Subcontracting of all tiers and (ii) a description of the additional good faith efforts the Contractor and Subcontractors will employ to increase the participation of WMDVBE and LGBTBEs in the performance of the Work.

4.  No later than the 10th of each month, Contractor shall submit its Subcontracting spend with WMDVBE- and LGBTBE-owned suppliers using PG&E's electronic reporting system located at the following address:  https://cvmas10.cvmsolutions.com/pge/default.asp

    a.  To establish a User ID, Contractor shall submit a request via email to the following e-mail address:  PVB1@pge.com.

5.  In addition, for Contracts exceeding $500,000 (or $1 million for construction contracts), the Contractor must comply with the Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, as described in Exhibit 2. The Prime Supplier Plan for these Contracts must include provisions for implementing the terms of this Exhibit 1.

    a.  Small Business and Small Disadvantaged Business Prime Supplier Plans are not required for small business contractors, personal service contracts, contracts that will be performed entirely outside of the United States and its territories, or modifications to existing contracts which do not contain Subcontracting potential.

    b.  For all PG&E contracts, the Contractor shall act in accordance with the Prime Supplier Plan in the performance of the Work and in the award of all Subcontracts.

The **Supplier Diversity Subcontracting Goal** for this Contract (including any Contract Work Authorizations) is **34%.** Contractor shall report its supplier diversity goal as Contractor's spend with verified WMDVBE and LGBTBE Subcontractors on PG&E Work under this Contract.

**Pacific Gas and
Electric Company**

01-5873 (Rev 06/14)
Sourcing

Page 1 of 2

### List of Subcontractors and Disbursement Record

**EXHIBIT 1-A**

| Prime Contractor/Supplier: | Name of Preparer: |
|---|---|
| PG&E Contract Number (if any): | Telephone:   (          ) |
| PG&E Project/Product: | E-Mail: |
| Contract Duration (Year):          From:            To: | Total Bid Value .  Same as (9) below: |

| Name of Subcontractor (1) | WMDVBE/LGBTBE Status Code* (2) | V** (3) | NV*** (4) | Address (5) | Description of Work (6) | Estimated Amount to be Paid to Subcontractors (7) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

\* Refer to Instructions/Codes/Definitions on page 2.
\*\* V   = Subcontractor is a verified WMDVBE or LGBTBE
\*\*\* NV  = Subcontractor is <u>not</u> a verified WMDVBE or LGBTBE

| | | |
|---|---|---|
| (8) | Estimated Total Amount  to be Paid to All Verified WMDVBE and LGBTBE Subcontractor(s): | |
| (9) | Total Bid Value: | |
| (10) | Estimated Percentage to be Paid to All Verified WMDVBE and LGBTBE Subcontractor(s) (8÷9): | |

**Certification Agencies:**

WMBE:   **CPUC Clearinghouse**  :
**DVBE:**    Department of General Services
LGBT:    National Gay and Lesbian Chamber of
          Commerce (NGLCC)

Signature:

/ Date

I hereby verify that the listed information is true and accurate to
the best of my knowledge.

The successful bidder(s) will be expected to register and report all monthly subcontracting spending with verified WMDVBE and LGBTBE subcontractors for the duration of the contract at: https://cvmas10.cvmsolutions.com/pge/default.asp

STEP-BY-STEP INSTRUCTIONS

01-5873 (Rev 06/14)
Page 2 of 2

Complete column numbers 1-10 and return this form with your bid proposal. .

(1)   Include the complete name of the subcontractor.
(2)   Indicate the Subcontractor's minority code (see definitions and codes below).
(3)   Place a "V" in the box if the Subcontractor is *verified* W MBE, DVBE, or LGBT supplier by the applicable certification agency (see above).
(4)   Place a "NV" in the box if the Subcontractor is *not verified by the applicable certification agency (see above)*.
(5)   Include the address, city, state and zip of the Subcontractor.
(6)   Describe the work that the Subcontractor will be performing.
(7)   Indicated the estimated amount to be paid to each Subcontractor for the duration of the contract.
(8)   Indicate the estimated total amount to be paid to all *verified* Subcontractors for the duration of the contract.
(9)   Indicate the proposed bid value.
(10)  Indicate the percentage of the bid value to be paid to all verified Subcontractors. Divide the estimated dollars to be paid to all *verified* WMDVBE and LGBT Subcontractors by the total bid value.

## DEFINITIONS AND CODES

**WBE**   Women Business Enterprise:  A business enterprise that is at least 51 percent owned by a woman or women, or, in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more women, and whose management and daily business operations are controlled by one or more of those individuals

**MBE**   Minority Business Enterprise:  A business enterprise that is at least 51 percent owned by a minority group or groups, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more minority-group individuals, and whose management and daily business operations are controlled by one or more of those individuals.

**DVBE**   The same meaning as defined in subdivision (g) of the Military and Veterans Code and must meet the "Control" criteria.  An enterprise  which is 51 percent owned by a California Service Disabled , or the stock is 51 percent owned, by one or more disabled veterans, and whose management and daily operations are controlled by one or more of those individuals

**LGBT**   A business enterprise that is at least 51 percent owned by a Lesbian, Gay, Bisexual, Transgender Enterprise (LGBTE), or, in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more LGBTBE and whose management and daily business operations are controlled by one or more of those individuals.

**MINORITY CODES:**

| | | | |
|---|---|---|---|
| 001   African American Male | 002   African American Female | 003   Asian Pacific American Male | 004   Asian Pacific Female |
| 005   Native American Male | 006   Native American Female | 007   Hispanic American Male | 008   Hispanic American Female |
| 009   Caucasian Male | 010   Caucasian Female | 011   Multi-Status/Other Male | 012   Multi-Status/Other Female |
| 013   Small Business Enterprise | 014   Service Disabled Business Enterprise | 015   Do Not Use | 016   Handicapped |
| 017   Gay, Lesbian, Bisexual Transgender – Male | | 018   Gay, Lesbian, Bisexual Transgender - Female | |

| | |
|---|---|
| African Americans | Persons having origin in any black racial group of Africa |
| Asian Pacific Americans | Persons having origins in Asia or the Indian Subcontinent, including, but not limited to, persons from Japan, China, the Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territories of the Pacific, Northern Marianas, Laos, Cambodia, Taiwan, India, Pakistan, and Bangladesh. |
| Native American | Persons having origin in any of the original peoples of North America or the Hawaiian Islands, in particular, American Indians, Eskimos, Aleuts, and Native Hawaiians |
| Hispanic Americans | Persons of Mexican, Puerto Rican, Cuban, South or Central American, Caribbean, or other Spanish culture or origin |
| Caucasian | Includes all people of European and North African descent. |
| Multi-Status | An enterprise that is wholly owned and controlled by a combination of minorities or women but whose majority ownership (at least 51%) is not vested with any one of these individuals. |
| Other Groups | Groups whose members are found to be socially and economically disadvantaged by the Small Business Administration pursuant to Section 8 (d) of the Small Business Act as amended (15 U.S.C. 637 (d), or by the Secretary of Commerce pursuant to Section 5 of Executive Order 11625. |
| Small Business Enterprise | A business defined pursuant to Section 3 of the Small Business Act (SBA) and relevant regulations pursuant thereto.  If unsure, please contact your local Small Business Administration office for clarification or clarification. |

# EXHIBIT 2

## POLICY REGARDING UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS

The following policy of the United States shall be adhered to in the performance of this Contract:

a.   It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in performing contracts let by any Federal Agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals.

b.   Contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of Contractor's compliance with this clause.

c.   As used in this Contract, the term "small business concern" shall mean a small business as defined in Section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 percent of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals.  This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirement of 13 CFR part 124. Contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to Section 8(a) of the Small Business Act. Contractor shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

d.   Contractor acting in good faith may rely on written representations by its subcontractors regarding their status as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.[1]

---

[1] Notwithstanding this provision of the federal statute, all WMDVBE subcontractors must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156, as such procedures may be amended periodically.

Exhibit 3

PG&E Drug and Alcohol Testing Policy

I.    **PG&E POLICY**

1.0  PREFACE: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established the following drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel.

2.0  COVERAGE: This policy applies to the personnel of all PG&E Contractors and Subcontractors performing any work or services at PG&E offices and/or any other PG&E facilities.

3.1    POLICY: PG&E may deny access to, or remove from, its facilities the personnel of any Contractor or Subcontractor, who PG&E has reasonable grounds to believe has:

    3.2    Engaged in alcohol abuse or illegal drug activity which in any way impairs PG&E's ability to maintain safe work facilities, to protect the health and well-being of PG&E employees, customers, and the general public, and to promote the public's confidence in PG&E's service and operations; or

    3.3    Been found guilty, pled guilty, or pled nolo contendere to a charge of sale or distribution of any illegal drug or controlled substance as defined under Federal or California law within the past five years, unless the criminal record was later expunged or sealed by a court order.

4.1    PROHIBITED ACTIVITIES: The following activities are prohibited at all facilities owned or leased by PG&E:

    4.2    Possessing, furnishing, selling, offering, purchasing, using or being under the influence of illegal drugs or other controlled substances as defined under Federal or California law;

    4.3    Possessing, furnishing, selling, offering, or using alcoholic beverage, or being under the influence of alcohol.

5.1    ACTIONS: Where reasonable cause exists that paragraph 4 of this policy has been violated, the Contractor or Subcontractor must inform the PG&E representative responsible for the Contract. The Contractor or Subcontractor is also expected to take any or all of the following actions to the fullest extent they are permitted under governing collective bargaining agreements and/or its applicable security and human resources policies.

    5.2    Search the individual, his or her vehicle, locker, storage area, and personal effects;

    5.3    Require the individual to undergo a medical examination to determine their fitness for duty. Such examination shall include obtaining a urine and/or blood specimen for drug or alcohol analysis unless the examining physician deems such tests to be inappropriate;

    5.4    Take any other appropriate action to determine if there has been a violation of paragraph 4. Refusal to comply with a request made under this paragraph shall be grounds for denying access to, or immediate removal from, any PG&E facility.

6.0  PERMISSION TO RE-ENTER: Any individual who has been denied access to, or removed from, PG&E facilities or violating this policy may obtain permission to enter or reenter provided the individual establishes, to the satisfaction of his or her employer and PG&E, that the previous activity which formed the basis for denying access or removal has been corrected and his or her future conduct will conform with this policy. PG&E retains the right of final approval for the entry or reentry of any individual previously denied access to or removed from PG&E facilities.

II.    **U.S. DEPARTMENT OF TRANSPORTATION REGULATIONS FOR DRUG AND ALCOHOL TESTING OF COMMERCIAL MOTOR VEHICLE DRIVERS AND OF NATURAL GAS PIPELINE WORKERS**

1.0    Contractor agrees that, to the extent it may be applicable to this Contract, Contractor shall comply with the U.S. Department of Transportation's (DOT) regulations for (i) commercial motor vehicle drivers, 49 CFR 382, Controlled Substances and Alcohol Use and Testing and (ii) work on gas, hazardous liquid and carbon dioxide pipelines, and liquefied natural gas pipelines, 49 CFR Parts 192, 193 or 195, Control of Drug Use in Natural Gas, Liquefied Natural Gas and Hazardous Pipeline Operations. Contractor shall establish and maintain a drug and alcohol testing program for its employees consistent with 49 CFR Part 40, Procedures for Transportation Workplace Drug Testing Programs and 49 CFR 199, Drug and Alcohol Testing, as applicable. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract that is regulated by 49 CFR 192, 193, 195 or 382 shall also have a drug and alcohol testing program that complies with applicable DOT requirements.

2.0    PG&E's duly authorized representatives, the CPUC, DOT and appropriate agencies shall have, during the term of the Contract and for two years thereafter, access at all reasonable times to Contractor's drug and alcohol testing program records for the purpose of monitoring compliance with DOT regulations. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work regulated by 49 CFR Part 192, 193, 195 or 382 under this Contract shall also provide access to its drug and alcohol testing program records to PG&E's authorized representatives, the CPUC, DOT and appropriate agencies for the purpose of monitoring compliance with DOT regulations. Failure to comply with this requirement may, at PG&E's option, result in cancellation or termination of existing contracts and the loss of opportunity to bid on future contracts

**EXHIBIT 4**

**INJURY AND ILLNESS PREVENTION PROGRAM**

Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Contractor ensures that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. This Compliance Certificate shall be executed by the person with the authority and responsibility for implementing and administering such Injury and Illness and Prevention Program.

**Injury and Illness Prevention Program Compliance Certificate**

The undersigned, the_____of
                                                  (title/position)

_____(Contractor), hereby certifies to
           PG&E as (name of Contractor)

follows:

1.  That Contractor has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code and that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract has an effective Injury and Illness Prevention Program; and

2.  That he or she is the person with the authority and responsibility for implementing and administering Contractor's Injury and Illness Prevention Program.

IN WITNESS WHEREOF, the undersigned has executed this Compliance Certificate on_____.


_____
                              Signature


_____
                              Print Name



{00145100.DOC;1}

**PG&E** *Pacific Gas and Electric Company*

**62-5687** (9/97)
Purchasing

**Daily Statement of Labor, Material, and Equipment**          **EXHIBIT 5**
Furnished by Contractor

JOB LOCATION_____          1 2 3 4 5 6 7 8 9          DATE__

CONTRACT OR SPEC. NO._____

JOB NO._____          DESCRIPTION OF WORK   ITEM NO.        SUBSISTENCE          IF SUBCONTRACT ENTER
FIRM

CHANGE ORDER NO._____          _____

SHEET____OF____SHEETS

**CONTRACTOR'S LABOR**

| CRAFT | NAME | HRS. | | RATE | AMOUNT | | | | | | | | | |
|-------|------|------|---|------|--------|---|---|---|---|---|---|---|---|---|
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |
| | | | PT | | | | | | | | | | | |
| | | | ST | | | | | | | | | | | |

**RENTAL EQUIPMENT**

| EQUIPMENT DESCRIPTION | HRS. | RATE | AMOUNT | ITEM |
|----------------------|------|------|--------|------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL EQUIPMENT RENTAL | | | | |

| MATERIAL | | TOTAL | ITEM |
|----------|---|-------|------|
| SEE ATTACHED INVOICES | | | |
| SALES TAX ON MATERIAL | | | |
| TOTAL MATERIAL | | | |

**CONTRACTOR OWNED EQUIPMENT**

| EQUIPMENT DESCRIPTION | HRS. | RATE | AMOUNT | ITEM |
|----------------------|------|------|--------|------|
| | | | | |
| | | | | |
| | | | | |
| TOTAL OWNED EQUIPMENT | | | | |

| | |
|---|---|
| TOTAL PREMIUM TIME | |
| TOTAL STRAIGHT TIME | |
| **TOTAL LABOR** | |
| PAYROLL TAXES ON TOTAL LABOR OF $ | |
| COMP. INS. ON TOTAL LABOR OF $ | |
| P.L. AND P.D. ON TOTAL LABOR OF $ | |
| WELFARE | |
| SUBSISTENCE | |
| **TOTAL LABOR, P/R TAXES, ETC.** | |

Approved as a true similitude of our certified payroll:

Name of Contractor
_____
Signature of Contractor Superintendent

Verification of Hours and Quantities for PG&E:
_____
Inspector or Foreman

Approved for  PG&E:
_____
Superintendent, Supervisor,  or Resident Engineer

| | |
|---|---|
| TOTAL MATERIAL & SALES TAX | |
| TOTAL EQUIPMENT RENTAL | |
| TOTAL LABOR, TAXES, INS. | |
| FEE        % ON $ | |
| SUB FEE        % ON $ | |
| **GRAND TOTAL** | |

**EXHIBIT 6**

## PG&E Contractor Document Retention and Production Requirements

1. Contractor agrees to retain all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Contract, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports: provided that Contractor is not required to retain (i) draft versions of final written documents such as reports, presentations, or other written deliverables and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables as follows:

   [ ] a. the documents and data specified in Exhibit 5A to this Contract and/or in individual work authorizations (CWA) under this Contract; or

   [ ] b. all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Contract.

   If neither Section 1(a) or Section 1(b) is checked, Section 1(b) shall apply. If Section 1(a) is checked, but documents and data are not specified in Exhibit 5A, or in a subsequently issued CWA, Section 1(b) shall apply. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner. All PG&E Contractor Documents shall be in legible form, whether paper or electronic. In managing and administering PG&E Contractor Documents, Contractor will comply with the requirements of "The Generally Accepted Recordkeeping Principles[®]" (see www.arma.org), or with modified requirements approved in writing by PG&E.

3. Upon completion of the Work or furnishing of the materials under the Contract, or upon completion of the Work or furnishing of the materials under each CWA under the Contract ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

   a. Contractor shall transmit to PG&E, or provide PG&E access to, PG&E Records on request within forty eight (48) hours or sooner if needed (without limitation) for regulatory, CPUC, safety, audit and/or litigation requirements;

   b. PG&E may specify that PG&E Records be delivered to PG&E on a regular basis prior to the Work Completion Date;

   c. With respect to PG&E Contractor Documents not transmitted to PG&E as PG&E Records, Contractor shall retain all such documents for twenty four (24) months after the Work Completion Date ("Post- Termination Retention Period"). During the Post-Termination Retention Period, PG&E Contractor Documents shall be retained by Contractor at no additional cost to PG&E until disposed of in accordance with Section 6 below. To the extent PG&E requests Contractor to retain PG&E Contractor Documents after the Post-Termination Retention Period, the parties will mutually agree on the terms and conditions of such additional retention;

   d. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams and (ii) PDF for all other documents. If PG&E Records transmitted to PG&E consist of data in a proprietary format, Contractor shall make available to PG&E the proprietary tools or software necessary to access the data including after the transfer of the data to PG&E. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Contract, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If PG&E directs Contractor to dispose of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this Exhibit 5.

9. The terms and conditions of this Exhibit 5, including Exhibit 5A if attached, shall survive the termination of this Contract.

**Exhibit 6A**

If Section 1(a) of Exhibit 5 is checked, Contractor agrees that in connection with this Contract or CWA, as applicable, the following PG&E Contractor Documents will be created, received and/or maintained by Contractor:

**[Insert list of all specific PG&E Contractor Documents required under this Contract (CWA)]**

Attachment 2 - General Conditions
Contract # 2501335149

Case 4:20-cv-05381-HSG   Document 36   Filed 03/05/21   Page 78 of 103

AECOM Technical Services, Inc.
Page 46 of 49

EXHIBIT 7

## PACIFIC GAS AND ELECTRIC COMPANY
## NONDISCLOSURE AND USE OF INFORMATION AGREEMENT

THIS AGREEMENT is by and between_____("Company"),
_____("Undersigned"), the authorized employee of Company (together, Company and Undersigned are referred to as the "Receiving Party"), and PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") on the date set forth below.

Undersigned and Company agree as
follows:

1.      The Receiving Party acknowledges that in the course of_____, the Receiving Party will be given access to technical information and materials including, but not limited to, _____ _____, which are owned by PG&E, its parent company, subsidiaries, or affiliates, and/or owned by third parties and in the possession of or licensed to PG&E, and which constitute valuable, confidential and proprietary information, know-how, and trade secrets, belonging to PG&E, its parent company, subsidiaries, or affiliates and/or third parties (hereinafter referred to as "Proprietary Information").

2.      In consideration of being made privy to such Proprietary Information, and of the contracting for the Receiving Party's professional services by PG&E, the Receiving Party hereby agrees to hold the same in strict confidence, and not to disclose it, or otherwise make it available, to any person or third party, including but not limited to any affiliate of PG&E that produces energy or energy-related products or services, without the prior written consent of PG&E. The Receiving Party agrees that all such Proprietary Information:

        (a)      shall be used only for the purpose of _____ _____; and

        (b)      shall not be reproduced, copied, in whole or in part, except as specifically authorized and in conformance with PG&E's instructions when necessary for the purposes set forth in (a) above; and

        (c)      shall, together with any copies, reproductions or other records thereof, in any form, and all information and materials developed by the Receiving Party therefrom, be returned to PG&E when no longer needed for the performance of Receiving Party's services for PG&E.

3.      The Receiving Party hereby agrees that any third parties owning any Proprietary Information are express third party beneficiaries of this Agreement.

4.      The Receiving Party hereby agrees that for any violation of any provision of this Agreement, a restraining order and/or injunction may be issued against the Receiving Party in addition to any other remedy PG&E may have at law.

5.      This Agreement shall be governed by and interpreted in accordance with the laws of The State of California.

UNDERSIGNED:                            COMPANY

_____       _____
Signature                               Company Name

_____       _____
Name                                    Signature of Authorized Agent of Company

_____       _____
Title                                   Name

_____       _____
Company                                 Title

_____       _____
Date                                    Date

Attachment 2 - General Conditions
Contract # 2501335149

Case 4:20-cv-05381-HSG   Document 36   Filed 03/05/21   Page 79 of 103

EXHIBIT 8

AECOM Technical Services, Inc.
Page 47 of 49

OUTSOURCED GAS ASSET MANAGEMENT ACTIVITY

COMPLIANCE TERMS AND CERTIFICATION

OUTSOURCED GAS ASSET MANAGEMENT ACTIVITIES STANDARD: CONTRACTOR AND ITS SUBCONTRACTORS AND THEIR SUPPLIERS AT ALL TIERS SHALL COMPLY WITH PG&E'S OUTSOURCED GAS ASSET MANAGEMENT ACTIVITIES PROGRAM ("OGAMAP") IN THE PERFORMANCE OF ALL WORK PERFORMED FOR PG&E'S GAS OPERATIONS ORGANIZATION. The OGAMAP requires that Contractor and its Subcontractors and suppliers demonstrate a strong commitment to gas safety excellence and maintain appropriate controls over the gas infrastructure supply chain. Any Work performed for PG&E must be completed in full compliance with the following, as it may be modified from time to time:

1. PG&E's Code of Conduct for Contractors, Consultants, Suppliers and Vendors located at
http://www.pgecorp.com/aboutus/ethics_compliance/con_con_ven/index.shtml

2. PG&E's Gas Asset Management Policy TD-01

3. PG&E's Gas Asset Management Strategy and Objectives

4. PG&E's Gas Operations process for raising safety concerns and issues

5. Should PG&E require, Contractors, Consultant, Supplier and Vendors shall obtain a complete understanding of their role(s) supporting PG&E in a gas emergency. As a reference guide, a copy of PG&E's Gas Emergency Response Plan Volumes 1 and 2 ("GERP") and Gas Safety Plan are provided to increase Contractors, Consultant, Supplier and Vendors knowledge and understanding of providing a safe, efficient and coordinated response to emergencies affecting gas transmission and distribution systems. These documents provide emergency response guidance consistent with the Incident Command System (ICS).

6. All terms, conditions, and specifications for the Work as set forth in the Contract.

Contractor shall access and download a copy of PG&E's Code of Conduct for Contractors, Consultants, Suppliers and Vendors at the above referenced internet link item number one (1) referenced above in this Attachment. Contractor shall receive and email invitation to access PG&E's third party internet site www.poweradvocate.com to obtain access and to down load the above referenced documents item numbers two (2) through five (5) in this Attachment.

Contractor hereby represents, warrants, and certifies that Contractor, its Subcontractors, its Suppliers, and their employees performing Work under the Contract have been provided and have reviewed the above-referenced documents and agree to comply with all terms and conditions contained therein.

November 2015

# Exhibit 9
# NERC REQUIREMENTS

Pursuant to a directive from the North American Electric Reliability Corporation (NERC), all employees and contractors with unescorted access to facilities, systems and functions that PG&E deems critical to the support of the Bulk Electric System ("Critical Facilities and/or Critical Systems") shall undergo employment background screening and training prior to being granted access to these PG&E facilities and/or systems.  Contractor hereby agrees to perform background checks ("Personnel Risk Assessments" or "PRA's") on all Contractor and Subcontractor personnel ("Individuals") with unescorted access.  PG&E has included in the category of those with unescorted access all Individuals working within PG&E Critical Facilities and/or Critical Systems.  Contractor shall perform the following background check and comply with the following provisions for any Work subject to the NERC requirements for unescorted access.  The background check can have no findings for any of the criteria (i.e., an acceptable background check):

1.  Contractor shall perform a background screening for each Individual that includes each of the following criteria: (i) Social Security Number verification; (ii) City, County, State and Federal Criminal Check for felonies and misdemeanors over the past seven years (in up to three counties where the Individual has lived in the past seven years); (iii) "Global Watch" (check of 19 Federal and International Terrorist Watch lists); (iv) validation of current residence and confirmation of continuous residence at this site for a minimum of the most recent 6 months (confirmed by period of residence, employment, or education at a specific site) and validation of other locations where, during the seven years immediately prior to the date of the criminal check specified in (ii) above, the Individual has resided for six consecutive months or more.

2.  After performing an acceptable background check for each Individual with unescorted access, the Contractor shall provide PG&E's Human Resources Department with a Personnel Risk Assessment Attestation Form in the form attached hereto as Exhibit 7A for each Individual on assignment to PG&E prior to the Individual being granted unescorted access.  PG&E may request that Contractor provide a copy of complete Personnel Risk Assessment ("PRA") results at the time the Personnel Risk Attestation Form is submitted.

3.  Contractor shall require that each Individual with unescorted access complete an initial training and annual PG&E web-based training session on safety, information security, compliance with PG&E codes and procedures including but not limited to CORP-0804 Cyber and Physical Security Awareness training.  Contractor shall direct that each Individual complete the PG&E training program by CD or by hard copy format, if Contractor informs PG&E that web based training is not feasible.

4.  After Contractor certifies to PG&E completion of the requirements set forth in paragraphs 1-3 above, PG&E will issue each Individual a keycard to access the designated PG&E facility to which they are assigned and/or logical access to the designated Critical System to which they are assigned.  PG&E will deny access to Critical Facilities and/or Critical Systems to any Individual for whom Contractor has not certified completion of the requirements set forth in paragraphs 1-3 above.

5.  Every seven years, Contractor shall perform NERC background screening as described herein for each Individual on continuing assignment to work at PG&E Critical Facilities and/or Critical Systems.

6.  Contractor shall retain documentation supporting the Personnel Risk Assessment Attestation Form for each Individual assigned to PG&E Critical Facilities and/or Critical Systems for a minimum of seven years.

7.  PG&E will audit Contractor's background screening methodology and substantiate the accuracy of Personnel Risk Assessment Attestation Forms for each Individual.  Contractor shall respond to any auditing requests and activities, including but not limited to data requests, within one business day.  PG&E and/or WECC will set the frequency of auditing the Contractor's PRA process and supporting records.

8.  In addition to its other indemnity obligations hereunder, Contractor shall indemnify and hold harmless PG&E for any penalties assessed against PG&E (including but not limited to penalties assessed against PG&E by the Western Electricity Coordinating Council (WECC), NERC or the Federal Energy Regulatory Commission (FERC) for a violation of any NERC reliability standard) caused by Contractor's failure to perform its obligations under this Contract.

**Exhibit 9A**

**PG&E NERC CIP PROGRAM**

**NON-EMPLOYEE ATTESTATION FORM**

**COMPLETION OF PERSONNEL RISK ASSESSMENT (PRA) PROCESS**

Please initial next to each line item below to verify that the following Non-Employee has received satisfactory results for each of the required background checks.

Non-Employee Name: _____

Vendor Name: _____

Requisition and/or PO #: _____

Date NERC Background Check Completed: _____

**Background Investigation – Completed and Passed the Following (Includes International Components When Applicable)** *Initial next to each:*

_____  Criminal Felony / Misdemeanor Search – Past 7 years, all names, all counties off the social trace  (incl. past 7 years residency check)

_____  Federal Criminal Search – Past 7 years, all names off the social trace

_____  Managed Adjudication Standard

_____  Prohibited Parties

_____  SSN Trace

_____  SSN Validation

_____  Statewide Criminal Search

By completing and signing this form, Vendor confirms that the background investigation has been executed and satisfactory results received according to PG&E NERC CIP Program specifications for the above stated Non-Employee.  All supporting documents must be kept on file with Vendor for a minimum of 7 years following the end of the Vendor's last non-employee's assignment at PG&E.  Random audits of supporting documents may be conducted by PG&E or its designee, consistent with its right under the PG&E/Vendor contract, to ensure compliance with the requirements designated in the certification and contract.

☐ **I certify that I am authorized to sign on behalf of the aforementioned Vendor.**

Vendor Representative Signature: _____

Vendor Representative Name: _____

Date Signed: _____

**SPECIFIC CONDITIONS TO TECHNICAL SPECIFICATION NUMBER 12107
Engineering, Procurement and Construction of Burney K2 Replacement
at the Burney Compressor Station, Order No. 30603707**

## 1.0   INTRODUCTION AND PURPOSE

1.1    These Specific Conditions to the Technical Specification Number 12107 for Engineering, Procurement and Construction services, ("EPC") supporting the Burney K2 Replacement located at Burney Compressor Station (BCS)  California as requested by Pacific Gas and Electric Company ("PG&E") supplements the Technical Specification and General Conditions and provides additional PG&E requirements supporting contract management and administration that are not provided in the Technical Specification or General Conditions of this Contract.  This document assists PG&E and Contractor to effectively manage and control Contractor's Work cost and schedule.  This document also provides a listing of the documents contained within the project workbook which has been electronically transmitted and received by Contractor.

1.2    The purpose of the Work is to replace natural gas compressor unit Burney K2 and to perform various upgrades to the Burney Compressor Station (BCS) to improve the reliability and operability.  The Work includes demolition of existing equipment and facilities. PG&E's Project objectives for improving the safety, reliability, and operating flexibility of the facility are summarized below.

    1.2.1   Maintain current gas transmission capacity
    1.2.2   Replace outdated compressor K2 and associated facilities.
    1.2.3   Provide increased flexibility of operation and monitoring.
    1.2.4   Demolish and remove unused equipment in accordance with the proposal contained in Attachment 12 if requested.

## 2.0   DEFINITIONS  The definitions in the General Conditions, Section 1.0, "Definitions," are supplemented with the terms defined below:

2.1    **"Applicable Law"**: Any law including, but not limited to Environmental laws, statute, treaties, rule, regulation, ordinance, code, judgment, enactment, decree, injunction, writ, order, license, permit, consent, approval, agreement or regulation of any Governmental Authority having jurisdiction over a Party or any portion of the Work, in each case applicable to the Work or the rights or obligations of a Party under this Contract.

2.2    **"Claim"**: Any Third Party demand, or any civil, criminal, administrative, or investigative claim, action, or proceeding (including arbitration) asserted, commenced or threatened against an entity or person.

2.3    **"Commercially Reasonable Efforts"**: Taking all such steps and performing in such a manner as a well-managed company would undertake where it was acting in a determined, prudent and reasonable manner to achieve a particular desired result for its own benefit.

2.4    **"Commissioning Complete"**:  Commissioning Complete shall be the date on which all start-up and commissioning testing has been completed in accordance with the project Specification 12107.

2.5 **"Demobilization"**: The activity to clear the site of all temporary construction facilities upon completion of the direct Work. Complete demobilization includes but is not limited to a completely cleared/removed of all contractor tools, equipment, materials and supplies for the Work site. This portion of the Contract Price that becomes payable only when Contractor has demobilized all its labor, equipment and temporary facilities from the site and returned the allocated temporary facilities area(s) to its pre-mobilization condition.

2.6 **"Disposal"**: Total cost associated with disposal of equipment, materials, and hazardous waste.

2.7 "**Engineering Completion**": Engineering Completion shall be the date on which PG&E has approved (1) the Issued for Construction Drawings, including civil, mechanical, electrical, and control as well as (2) the procurement specifications for all major equipment listed in the pricing workbook.

2.8 **"Equipment"**: Total cost to provide and operate equipment including all third party equipment (excluding the cost of operating labor), inclusive of associated consumables, overhead and associated profit.

2.9 "**Goods**": Equipment, materials and parts purchased by PG&E from Contractor pursuant to a Contract, whether or not they are manufactured by Contractor.

2.10 "**Governmental Authority**": Any federal, state, local, government, department, commission, board, bureau, agency, official or other regulatory, administrative or governmental authority, including, without limitation, the CPUC.

2.11 "**Governmental Authorization**": Any permit, license, franchise, approval, certificate, consent, ratification, permission, confirmation, endorsement, waiver, registration, qualification or other authorization issued, granted, given or otherwise made available by or under the authority or any Governmental Authority or pursuant to any Legal Requirement.

2.12 "**Hourly Rate**": See "Time-and-Materials."

2.13 **"Labor"**: All indirect and direct labor costs, including payroll burdens, benefits, consumables, and expendable materials, small tools, overhead and associated profit.

2.14 "**Laws**": All laws, including the common law and all statutes, by-laws, rules, regulations, ordinances, decrees, orders and codes (including any requirements for permits, certificates, approvals and inspections) that are applicable to a Party in any jurisdiction in which the Work is performed, provided to or used by PG&E.

2.15 "**Legal Requirement(s)**": Any law, statute, ordinance, decree, requirement, order, writ, judgment, injunction, award, treaty, proclamation, convention, rule or regulation (or interpretation of the foregoing) of, and the terms of any Governmental Authorization issued, required, or promulgated by, any Governmental Authority.

2.16 "**Loss**" or "**Losses**": all damages and other compensation awarded against a Party or agreed to in a settlement approved by the Parties in connection with a Claim, all fines and penalties lawfully imposed on a Party in connection with a Claim and, subject to the provisions of this Contract, all related costs and expenses suffered or incurred as a result of or in connection with such Claim, including reasonable attorneys' fees and disbursements, costs of investigation, litigation, settlement, and judgment, and any taxes, interest and penalties with respect to any of

the foregoing.

2.17    **"Material"**:  Total cost to procure and supply any and all materials including freight, customs duties and taxes.

2.18    **"Mobilization"**:  The act of bringing resources to the Work site including all activities that have the resources full functional to commence the Contract Work.  A portion of the Contract Price, payable when sufficient site establishment has been mobilized at the jobsite to allow Contractor to commence productive Work.

2.19    **"PG&E Authorized Representative**": Pacific Gas and Electric Company employee authorized to sign a Contract Change Order.

2.20    **"PG&E Work Supervisor"**: The employee representing PG&E's interest in connection with the work described in this Contract or in a subsequent Contract Change Order. Melvin Wong at PG&E shall be the initial PG&E Work Supervisor.

2.21    **"PG&E Project Order Number":**  The PG&E Project Order Number is: 30603707.

2.22    **"Schedule"**: A document required by PG&E that identifies the sequence and timing of Work and other activities necessary to meet Contract completion dates.

2.23    **"Services"**: Includes all labor, material, and equipment necessary to fully perform the requirements of the Contract.

2.24    "**Substantial Completion**" ("SC") or "**Estimated Date Release to Operations**" ("EDRO").  SC and EDRO shall be the date upon which:  (i) construction is sufficiently complete and is functional for its intended use, in accordance with the Contract Documents, including to enable PG&E to perform full operations, (ii) all systems are tested, commissioned and functioning satisfactorily, (iii) only punch list work or similar minor corrective work remains to be completed, and the completion of such work will not unreasonably interfere with PG&E's operations, and (iv) the remaining punch list work has been agreed by Contractor and PG&E.

2.25    **"Third Party":** A person or entity that is not a Party to this Contract.

2.26    **"Time-and-Materials":** A pricing methodology also referred to as "Hourly Rate," which specifies one or more hourly rates for Work, inclusive of all overhead costs and administrative and supervisory support, profit, and taxes, and provides for reimbursement of certain out-of-pocket expenses at actual cost plus any applicable mutually agreed fees.

2.27    **"Transportation"**:  Total cost for transportation of equipment, materials, and hazardous waste offsite for disposal, recycling, or re-use.

# 3   RECITAL AND RELATIONSHIP OF PARTIES.

3.1 Contractor is regularly engaged in the business of providing comprehensive EPC and is fully licensed, financed and qualified to perform such services.

# 4   STATEMENT OF WORK

4.1 Schedule:

| Major Milestone | Phase 1 | Phase 2 | Notes |
|---|---|---|---|

| Select Compressor Supplier | July 30, 2015 | | PG&E Action |
| Award EPC Contract | December 2015 | | PG&E Action |
| NTP | January 29, 2016 | | |
| Begin Phase I | January 19, 2016 | | |
| Procure Compressor Package | February 29, 2016 | | EPC Contractor perform for PG&E |
| 30% Design Review | April 2016 | | |
| 60% Design Review | May 2016 | | |
| 90% Design review | July 2016 | | |
| IFC drawings Complete | September 2016 | | |
| Engineering Completion | October 17, 2016 | | IFCs and Specifications Approved |
| Long Lead Material Purchase | Jan thru Oct 2016 | | |
| Begin Phase II | | October 2016 | |
| Construction Mobilization | | October 2016 | Mobilization at Burney Site |
| Long Lead Materials at Site | | TBD | Compressor Package Delivery |
| Preliminary Construction | | October - November 2016 | Site investigation and site preparation |
| Project Construction at Site | | March – November 2017 | |
| Station outage for Tie-in and Test | | August to Nov 17, 2017 | PG&E Station Clearance |
| Tie-In L-400 and L-401 | | August 2017 | End PG&E Clearance |
| Commissioning and Testing Complete | | November 1, 2017 | |
| Substantial Completion | | November 17, 2017 | Final Turnover to PG&E |
| Project Complete and DEMOB | | December 2017 | |

Contractor's bid proposal and baseline schedule shall indicate sufficient float for inclement weather and a reasonable contingency.

4.3 The Contractor shall not utilize float suppression techniques or artificial restraints, constraints, lags or durations to lessen or control the amount of total or free float contained in the network.  Open Ended activities that have either no predecessor or no successor relationships shall be avoided or documented in the schedule narrative.

4.4 Float shall not be considered as time for the exclusive use of or benefit of either PG&E or the Contractor. Float shall be considered as a resource available to both parties for the benefit of the project.

4.5 Major Milestones:

    4.5.1  Based on PG&E Specifications and criteria, Contractor shall purchase compressor package for the project no later than indicated in Section 4.1.

    4.5.2  Contractor shall achieve Engineering Completion no later than indicated in Section 4.1.

    4.5.3  Contractor shall achieve Substantial Completion no later than indicated in Section 4.1.

    4.5.4  Contractor shall maintain and comply with its BCS Schedule (to be developed) and Contractor shall as required refine its Work schedule as necessary to assure schedule

compliance.

4.6 Technical Specification Number 12107 for Engineering, Procurement and Construction services, ("EPC") supporting the BCS K2 Replacement provides the primary source of project information supporting the BCS Project.  This document contains a comprehensive specification and work scope information, including but not limited to for example, Scope of Work and Technical Requirements, Description of Work Phases, Detailed Engineering Services, Construction Services, and Commissioning Testing and Acceptance.

| Section | Section Title | Page Number |
|---|---|---|
| 1 | DEFINITIONS | 3 |
| 2 | OBJECTIVE | 4 |
| 3 | SITE INFORMATION | 5 |
| 4 | SCOPE OF WORK SAFETY | 5 |
| 5 | WORK PHASES ENVIRONMENTAL | 8 |
| 6 | PROJECT SCHEDULE | 9 |
| 7 | COMMUNICATION | 10 |
| 8 | PROJECT AND CONSTRUCTION MANAGEMENT | 15 |
| 9 | UNIFIER DOCUMENT MANAGEMENT | 17 |
| 10 | QUALITY ASSURANCE AND QUALITY CONTROL | 17 |
| 11 | TURBINE/COMPRESSOR UNITS | 20 |
| 12 | PIPING AND MECHANICAL EQUIPMENT | 20 |
| 13 | ELECTRICAL SYSTEM | 24 |
| 14 | CONTROL SYSTEM | 25 |
| 15 | CATHODIC PROTECTION | 27 |
| 16 | CIVIL, STRUCTURAL AND BUILDINGS | 27 |
| 17 | PAINTING | 29 |
| 18 | PG&E WORK SCOPE | 30 |
| 19 | DESIGN DRAFTING | 31 |
| 20 | PRODUCTION ENGINEERING | 33 |
| 21 | PROCUREMENT | 39 |
| 22 | CONSTRUCTION REQUIREMENTS | 40 |
| 23 | CONSTRUCTION SITE SAFETY | 62 |
| 24 | SITE ENVIRNMENTAL AND HAZMAT | 65 |
| 25 | COPNSTRUCTION SUBMITTALS | 69 |
| 26 | PG&E CONSTRUCTION WORK | 72 |
| 27 | DEMOLITION AND REMOVAL | 74 |
| 28 | COMMISSIONING AND ACCEPTANCE TESTS | 75 |
| 29 | MAINTENANCE | 77 |
| 30 | TRAINING FOR PG&E | 78 |
| 31 | DOCUMENTATION, MANUALS AND DRAWINGS | 82 |
| 32 | CODES AND STANDARDS | 88 |

4.7 Attachment Listing:

The following provides a summary of the documents and drawings.

| Attachment 1 | Scope of Work |
|---|---|
| Attachment 2 | Burney Location Map |
| Attachment 3 | Burney Compressor Preliminary Engineering Design Criteria |
| Attachment 4 | Proposed Burney Operating Diagram |
| Attachment 5 | Proposed Burney Main Gas P&ID |
| Attachment 6 | Various Proposed Station Plot Plan Drawings |

| Attachment 7 | Burney Gas Compression Package Specifications |
| Attachment 8 | Burney Gas Compressor Package Proposal |
| Attachment 9 | Single Line Drawings from Preliminary Engineering |
| Attachment 10 | PG&E Safety, OQ, and GSE Guidelines and Requirements |
| Attachment 11 | PG&E Gas Transmission Standards, Specifications, & Procedures |
| Attachment 12 | PG&E CAD Specification |
| Attachment 13 | Burney Control Philosophy |
| Attachment 14 | Electronic Version of Preliminary Engineering Deliverables |
| Attachment 15 | Wind and Seismic Design Parameters |
| Attachment 16 | PG&E Project Delivery System Forms |

## 5   CONTRACT PRICE FEE, SCHEDULE, AND INVOICES

### 5.1 Pricing Basis

5.1.1   Full compensation to Contractor for all the Work in compliance with all terms and conditions of this contract, and for Contractor's payment of all obligations incurred in, or applicable to the performance of the Work, shall be the firm, fixed price of $40,510,262.00 (hereinafter, "Contract Price") inclusive of all tax, initial surety bond, and builders risk insurance (See Pricing Workbook). The Work will commence after execution of this Contract and pursuant to a Notice to Proceed Agreement. PG&E shall release Contractor to complete long lead procurement for the Compressors on or before January 19, 2016 and the remainder of the long lead procurement required in accordance with the Contractor's approved milestone schedule.

5.1.2   The Contract Price and pricing for changes and all other rates set forth herein are firm for the duration of the Work and include all Contractor's costs, expenses, overhead and profit for complete performance of the Work.

5.1.3   The firm, fixed prices for mobilization, demobilization and site establishment shall be fixed and firm and shall not be subject to adjustment based upon any additions or deletions to the Contract Price.

5.1.4   The Contract Price shall include, but shall not be limited to all taxes, duties, and fees except as otherwise set forth in Section 5.3 Taxes.

5.1.5   Failure by Contractor to assess fully the Scope of Work as required and described in the Contract shall not be accepted as a basis for variations to the firm, fixed price and any pricing for changes.

5.1.6   All pricing shall be in U.S. Dollars and such pricing is not subject to change in the event of fluctuation in the rate of exchange of any other currency against the U.S. Dollar.

5.1.7   All pricing shall include all costs associated with and relative to, performing Work in accordance with and working in accordance with all applicable local, state and federal safety regulations and; as applicable and deemed by PG&E, PG&E's safety, security and fire procedures/requirements or Contractor's safety, security and fire procedures/requirements approved by PG&E.

5.2 Pricing Changes:  In addition to the requirements for changes set forth in the General Conditions, the following additional terms apply to changes.  PG&E may request, and Contractor shall provide, proposals for Scope of Work changes (additions and deletions) which are priced, at PG&E's option, by one or a combination of the following methods:

5.2.1   Price Methods

5.2.1.1 Negotiated firm, fixed price based upon a mutually agreed scope of work.

5.2.1.2 Unit prices agreed to by the parties.

5.2.1.3 On a time and material basis at the labor and equipment rates agreed to by the parties and the terms set forth in Section 5.2.3 below.

5.2.2   Unit Prices for Changes

5.2.2.1 Contractor shall have the responsibility for determine quantities and otherwise establishing the measurement of work that is performed on a unit price basis. The foregoing shall then be subject to PG&E's review and approval.

5.2.2.2 All unit prices shall apply at one hundred percent (100%) of their value for both additions and deletions to the Work.

5.2.2.3 All unit prices shall apply whether the work is performed by Contractor or by a Subcontractor.

5.2.2.4 All unit prices shall be deemed to include each and every item of expense required to perform the work in the respective categories.

5.2.3   Time and Material Basis for Change:  If PG&E directs that changes to the work be performed on a time and material basis compensation to Contractor for such changes shall be as follows:

5.2.3.1 All-inclusive labor rates shall be applied to all agreed hours worked. All labor used for changes and which does not resemble the job classifications must be approved by PG&E prior to their use.

5.2.3.2 Construction Equipment rates set forth in Attachment A shall apply for equipment used for extra work requested by PG&E.

5.2.3.3 For equipment which is specifically mobilized to the jobsite for extra work, Contractor shall separately identify firm, fixed prices for mobilization and demobilization including transportation costs (including loading, off-loading, assembly and disassembly, fueled and operable).

5.2.3.4 Transportation costs shall not be applicable to equipment already mobilized on the site and credited to mobilization/demobilization price.

5.2.3.5 When Contractor's equipment does not resemble the equipment having agreed upon rates, such equipment's rate shall be agreed to by the Parties.

5.2.3.6 Compensation to Contractor for equipment used for extra work which is rented or leased from third parties and which does not resemble Contractor's equipment must be approved by PG&E in writing prior to rental and shall be at actual cost to

Contractor, including transportation to site, (as substantiated by invoices certified paid or by such documentation as may be required by PG&E) plus a mark-up, for all profit and overhead expense of Contractor thereon 5%.

5.2.3.7 Compensation to Contractor for materials supplied by Contractor for (excluding consumable, expendable, and small tools and which cost Contractor less than $3,000 each, as they are included in the markups on labor rates) shall be at actual invoiced cost to Contractor, (exclusive of taxes) including transportation to site, as substantiated by invoices certified paid or by such documentation as may be required by PG&E, plus a mark-up on the material costs only, for all profit and overhead expense of Contractor thereon 5%.

5.2.3.8 PG&E reserves the right to provide, at no cost to Contractor, materials, equipment, services, supplies or incidentals required to perform the Work.

5.2.3.9 All refunds, trade discounts, rebates on materials, supplies and services, and all monies obtained from the disposal of surplus materials or supplies that were obtained by Contractor for execution of extra work shall accrue to PG&E.

5.2.3.10 Subject to the audit provisions of this Contract, all materials authorized by PG&E to be supplied by Contractor must be procured in such a manner as to ensure their competitiveness in both price and schedule.

5.2.3.11 All subcontracts and services provided by others for performance of changes or extra work requested by PG&E shall be at actual cost to Contractor of such subcontracts or services provided by others plus a mark-up for all profit and overhead expense of Contractor thereon of 5%. In no instance shall the mark-ups or rates for changes provided by Subcontractor to Contractor exceed the mark-ups or rates for changes as stipulated in this Section.

5.2.4 Time Sheets: For all construction work performed on a Time and Material basis, Contractor shall provide on a daily basis a Daily Statement of Labor, Material, and Equipment Sheet ("LM&E Sheet" (Form 62-5687)).

5.2.5 Taxes: Subject to the provisions of Section 5.0 set forth herein, all duties, sales and use taxes, excise taxes and similar taxes applicable to and arising directly out of performance of any time and material Work, which are imposed by any governmental authority, excluding personal property taxes on construction equipment and other property owned by Contractor and taxes on net income of Contractor, shall be at Contractor's actual cost without markup whether paid for by Contractor or Subcontractor.

5.2.6 All costs and expenses (which are not expressly stated in this Section 5.0 to be reimbursable) necessary for Contractor to perform changes to the Work shall be deemed included within the markups for overhead or profit set forth herein. Such costs and expenses shall include all items expressly stated in this Contract that are to be at the cost, expense or for the account of Contractor, or which are stated to be performed by Contractor at no additional cost to PG&E.

5.3 Taxes: The Contract Price includes all taxes, duties and fees. Contractor shall not be reimbursed for personal property taxes on construction equipment and other property owned by Contractor, and taxes on net income of Contractor. Contractor shall promptly pay when due all such taxes, duties, fees and other assessments of whatever nature. Contractor shall pay when due, and the compensation set forth herein of this Contract shall be inclusive of, all taxes, duties, fees and other assessments of whatever nature imposed by governmental authorities and applicable to the

performance of the Work and this Contract.

    5.3.1   Contractor shall be responsible for maintaining and furnishing the necessary records and documentation required by government authorities and PG&E to apply for and obtain tax and duty refund

    5.3.2   If Contractor imports and exports materials, equipment, supplies, tools, or any item for performance of the Work, any custom duties, value added, import or export taxes, document fees, handling charges, or other fees related to the importation or exportation of such materials, equipment, supplies, tools or other items shall be paid by Contractor.

5.4 Payment Milestone Schedule and Reporting Requirements:  The contract payments to Contractor shall be made based upon measured and verified Work progress as described in this Section 5.4.

    5.4.1   Cost and Progress Reporting:  Cost reporting only applies to T&M work.  Progress reporting applies to all work.  Contractor shall use Milestone or Work Package Completion to report project progress.  A hierarchical schedule (Work Breakdown Structure, WBS) and integrated cost plan shall be in place with changes to baseline tightly controlled.  No change shall be made to the accepted Cost-Loaded Schedule Baseline without the prior written authorization of the PG&E Project Manager.  The Cost-Loaded Schedule Baseline shall be the basis for progress payments. The progress payment schedule shall be mutually defined within 90 days of contract execution and implemented with a Contract Change Order.

    5.4.1.1 Within ninety (90) days from project kickoff meeting, the Contractor shall prepare and maintain a detailed, resource-loaded schedule in a PG&E standard project management software application (e.g. Primavera Version 6.0, PPMC, etc.) utilizing Critical Path Method (CPM).  This schedule will be the Contractor's working schedule and shall be used to identify the sequence of activities and to track time and cost estimates for those activities in order to plan, organize, execute, and monitor the work.  The schedule shall be used to record and report actual performance and progress, and to outline how the Contractor plans to integrate engineering, procurement, and construction in order to ensure accurate and timely completion of all required work.  The Contractor schedule must include 10 business days to ensure sufficient time for PG&E review of planning and engineering documents where approval is required.

    5.4.1.2 The control account (CA) structure will be based upon milestones as defined in the Pricing Workbook and will correspond with the Contractor's Cost Loaded Schedule.  In addition, the job cost structure should reflect the PO structure, allowing for proper accounting in the PG&E WBS.

    5.4.1.3 Contractor shall submit weekly P6 progress schedule updates to the Construction Manager no later than two (2) calendar days prior to the day of the weekly meeting.  Show the critical path and completion dates for tasks up to project completion.  Progress schedule shall be updated to include milestone dates for each permit to be obtained by the Contractor.

    5.4.1.4 The Contractor shall develop and deliver to PG&E weekly schedule updates for construction covering the last week's progress and identifying the next three week's work plan at a detailed level.  Specific detail may be increased or reduced at the discretion of the Project Manager. The work plan should contain specific activities, durations, materials, locations, and resources required for on-time

completion of the scheduled activities.

5.4.1.5 Contractor shall provide schedule updates to PG&E every two weeks and a monthly update submitted with each invoice as a condition of payment. Contractor shall provide PG&E with estimated or actual invoices within 10 days of accrual (required accrual date to be specified at project kick-off).

5.4.1.6 The Contractor's schedule updates shall include a detailed variance analysis narrative explaining significant changes in the schedule and their impact to the schedule, cost, and scope of the project since the last update. Items shall include, but are not limited to, duration changes, logic changes, new activities, milestone changes, change order requirements, and any other scheduling elements. The basis of all constraints and lags utilized in the PMB and subsequent schedule updates must be documented in the schedule narrative.

5.4.1.7 Where requested by PG&E management, include detailed work break down structure for selected activities as well as other information needed by PG&E to track Work performance and regulatory compliance.

5.4.2   Payment Schedule Cost and Performance Reporting

5.4.2.1 Contractor shall establish tangible, measurable deliverables (Completion Milestones and/or Work Packages) within the hierarchical schedule so that every WBS element has at least one work package and that there is at least one work package completing bi-weekly, if there is significant spending over $100,000.

5.4.2.2 Contractor shall assign a dollar amount to each Completion Milestone and/or Work Package representing the value of that Completion Milestone and/or Work Package to PG&E. Once PG&E approves the value assigned to each work package the values will be recorded in the Contractor's Schedule of Values. The value of each Completion Milestone and/or Work Package is earned only when the Completion Milestone and/or Work Package has been fully delivered (100% completed and objectively determined) or objectively measured using unit pricing or defined deliverables (e.g. linear feet). Arbitrary percent complete and percent of budget spent are not acceptable forms of progress.

5.4.2.3 Using PG&E's Unifier Document Management System, Contractor shall report to PG&E all current job cost details, budget vs. actual, Completion Milestone and/or Work Package status, trended forecast of schedule and cost and other requirements as requested by PG&E.

5.4.2.4 Contractor shall provide PG&E with notification of the receipt of any goods and services received within ten (10) business days in order to ensure timely reporting of goods receipts and accruals to the appropriate departments.

5.4.2.5 On a bi-weekly basis PG&E and Contractor will determine the amount of Work satisfactorily completed and which Completion Milestones and/or Work Packages, if any, have been fully delivered. The units of Work satisfactorily completed for the current period and the total project to date, as well as the work packages fully delivered will be recorded in the Schedule of Values and agreement. The amount of Work completed and work packages fully delivered will be signed by PG&E and the Contractor on the Schedule of Values. Contractor shall, via Unifier, send a copy of the week's Schedule of Earned Values to the PM and other designated representatives for recording the contract

liability in PG&E's cost and financial records. In the event of a disagreement regarding Completion Milestone and/or Work Package completion for Earned Value reporting purposes, PG&E shall make the final determination.

5.4.2.6 Project Schedule Reports shall be submitted to PG&E on a bi-weekly basis and should include the following materials and formats:

5.4.2.6.1 An electronic file native to scheduling tool (not graphical or flattened output such as PDF) which is 100% compatible with existing PG&E tool.

5.4.2.6.2 Scheduling tool reports shall be 8 ½" by 11" Minimum but 11"x17" is preferred.

5.4.2.6.3 Time Scaled Logic Diagram or Bar Chart based on early dates and organized by WBS Structure with the longest (critical) path printed in red.

5.4.2.6.4 Estimated Cash Flow Histogram with planned cash flow value per period (bar) and cumulative cash flow to date (curve).

5.4.2.6.5 Earned Value curve charts showing planned value, earned value, and actual costs over time.

5.4.2.6.6 Change order log, if necessary.

5.4.2.6.7 Status of purchase orders, and line item if multiple line items exist.

5.4.2.6.8 Photographs of progress to date.

5.4.2.6.9 Invoice and payment status updates.

## 5.5 Payment Terms

5.5.1 Payments made to Contractor shall be made in accordance with Section 4 of the General Conditions. PG&E shall retain 5% from each payment made to Contractor in accordance with Section 5.10 of the General Conditions.

5.5.2 Contractor shall submit a weekly progress report (WPR) meeting the minimum requirements set forth in the document entitled, "Unifier - Weekly Progress Report.pdf," which is located on Unifier in the Gas Shell Document Manager folder entitled, "Training Materials. Complete WPR in the specified format, level detail, and quantity breakdown for each item of the Work. Conduct a visual inspection of the jobsite with PG&E CM near the end of each week in order to reach a mutual agreement on quantity installed in-place or percentage of completion for each item. Submit WPR in Unifier no later than 9:00 a.m. on the Monday morning of the following week.

5.5.3 Contractor shall prepare and submit all invoices in a form that is satisfactory and approved by PG&E in accordance with Section 5.9 of the General Conditions for the Work accomplished. For work performed on a reimbursable or unit price basis, the invoice shall be accompanied by documentation supporting each element of measurement and/or cost. Any invoice submitted, which fails to comply with the terms of this Contract, including the requirements of form and documentation may be returned to Contractor. Any costs associated with the resubmission of a proper invoice shall be to

Contractor's account.

5.5.4  In the event PG&E or its contractors perform work for Contractor's account, PG&E shall back charge Contractor for such work.  If PG&E effects any work which were otherwise Contractor's responsibility, PG&E may back charge Contractor for the following direct costs of the required work: (i) PG&E union labor at the worker's bare wage times 2.60, (ii) PG&E non-craft labor at the midpoint of the salary or wage range for the job classification of the worker times 2.60, and (iii) for third party rentals, material or outsourced services, the invoice cost times 1.13.

5.5.5  Back charges include but are not limited to the following:

5.5.5.1 Additional work that either PG&E performs or provides in support of Contractor and beyond the materials, equipment and services specified that PG&E will provide or perform.  If PG&E performs Contractor's work, equitable reduction in Contractor's price shall be made.

5.5.5.2 Additional PG&E work that supports Contractor beyond PG&E's Work Hours and Work Week.

5.5.5.3 Additional PG&E work from remedial measures that result from non-compliance with the Work and its requirements.

5.5.5.4 For PG&E costs for work where Contractor fails to remediate warranty defects.

## 5.6 Delay Terms

5.6.1  Extra Work

5.6.1.1 For purposes of delays, extra scopes of work may or may not affect critical path resources (i.e.; Time Dependent Resources (TDRs) like the project manager or trailer rentals).

5.6.1.2 For extra Work that does not affect critical path, only the resources working directly on the extra Work will be charged.

5.6.1.3 No TDRs will be charged until the extra Work becomes critical path. When the extra Work does extended critical path, the TDRs shall be charged only for the actual amount of time the critical path was extended.

5.6.1.4 TDRs shall include the project manager, other general staff like safety engineering and 'non-hands' staff like shift engineer, common field resources that support and stay at KPP for the duration of the Work.

5.6.2  Compensatory Delay Charges Term

5.6.2.1 Delay charges and schedule adjustment (including schedule adjustment for computing schedule incentives, if any) for delays will apply to PG&E-caused delays that are 4 hours or greater per occurrence of delay.

5.6.2.2 Delay charges will only apply if the Schedule is overrun.  This term takes priority over all other delay terms. For example, the schedule is for 400 days and the Work is completed in 390 days not including any PG&E-caused delays (delays only greater than 4 hours per occurrence) of 7 days.  Then for this example, no

delay charges would apply until PG&E-caused delays exceeded 10 days.

5.6.2.3 Delay charges will be reduced if the Contractor can redeploy the delayed resources on other portions of the fixed price Work.

5.6.2.4 For delays of one shift or more, PG&E will provide a minimum of 10 hours advance notice to Contractor for such delays. For these delays only:

5.6.2.4.1   Delay charges will apply for a maximum of 8 hours per day until the delay time and work time equals 40 hours in a weekly pay period. When the delay time and work time exceeds 40 hours for a weekly pay period, then only per diem charges will apply for the days that exceeded the 40 hours and the delay personnel are not required to be at Work Site.

5.6.2.4.2   Contractor will be paid for per diem only for delay days that exceeded 40 hours in a weekly pay period and for those job classifications that are entitled to per diem. However, for delay time that spans a non-working day, no per diem is paid for such non-working day.

## 5.7 Liquidated Damages

### 5.7.1   Late Completion Liquidated Damages

5.7.1.1 PG&E's construction and commercial operation schedule is based upon the required Phase One and Phase Two completion dates provided in 4.1 above. Contractor's failure to meet either of these dates will result in added project costs and other damages to PG&E.  It will be extremely difficult for Contractor and PG&E to identify the amounts of increased or additional costs attributable to Contractor's failure to meet the required completion dates.  Therefore, should Contractor fail to meet one or all of the specified completion dates, Contractor and PG&E agree that Contractor shall pay PG&E liquidated damages per day of delay, provided the total amount of late completion payments for liquidated damages shall not exceed $1,500,000.00, as follows:

5.7.1.2 Phase One:  Contractor shall achieve Completion of Phase One Work by the Engineering Completion Date set forth in Section 4.1.  If Phase One completion is not achieved by the Engineering Completion Date, Contractor shall pay to PG&E as liquidated damages and not as a penalty an amount equal to $10,000 per day for each day by which Engineering Completion is not achieved.

5.7.1.3 Phase Two: Contractor shall achieve Substantial Completion for Phase Two Work by the Date set forth in Section 4.1.  If Phase Two completion is not achieved by the Phase Two Substantial Completion Date, Contractor shall pay to PG&E as liquidated damages and not as a penalty an amount equal to $20,000 per day for each day by which Phase Two Commissioning Completion not achieved.

5.7.1.4 Contractor and PG&E acknowledge and agree that the terms, conditions and amounts fixed pursuant to Section 5.7.1 above for Late Completion Payments are reasonable, considering the anticipated damages that PG&E will suffer in the event of Contractor's failure to achieve the Phase One and Phase Two Completion Dates.  The amounts of these liquidated damages are agreed upon and fixed hereunder because of the difficulty of ascertaining the exact amount of

damage that will be actually incurred by PG&E for late Completion, and PG&E and Contractor agree that the liquidated damage amounts specified in this Section 5.7.1 shall be applicable regardless of the amount of such damages actually incurred by PG&E.

5.7.1.5 The Late Completion Payment shall be the measure of Contractor's liability only for delay in completing the Work by the Completion Dates, and shall not limit Contractor's liability for defects in the Work or for Contractor's failure to perform its other obligations under the Contract.

### 5.7.2   Payment of Liquidated Damage

5.7.2.1 Contractor shall pay the Late Completion Payment herein monthly in arrears on the tenth (10th) day of each month beginning after the date for which the respective Late Completion Payment is payable.  PG&E shall be entitled to deduct the Late Completion Payment from any payments made under this Contract.

## 6   MODIFICATIONS TO THE TERMS OF GENERAL CONDITIONS

6.1 Contractors Pollution Liability General Conditions, Section 7.5 shall be amended for this project only as follows: The limit shall not be less than $10,000,000 each occurrence for bodily injury and property damage.

6.2 Business Auto General Conditions Section 7.3 shall be amended for this project only as follows: The limit shall not be less than $5,000,000 each accident for bodily injury and property damage.

6.3 Performance Bond:  In accordance with the General Conditions, Section 5.16, Contractor shall obtain a payment and performance bond for the full amount of the project.  PG&E shall reimburse the cost of the bond at cost.

6.4 Builders Risk Insurance:  In accordance with the General Conditions, Section 20.4, Contractor shall obtain an All Risk, Builders Risk Property insurance policy.  PG&E shall reimburse the cost of the policy at cost.

6.5 Professional Liability Insurance:  General Conditions, Section 20.6, shall be amended for this project only as follows:  Errors and Omissions Liability Insurance appropriate to the engineering profession with a limit of not less than $10,000,000 per claim and in the aggregate shall be provided by the engineering subcontractor.  Insurance shall cover the professional errors, acts or omissions arising out of the professional services rendered by or for the Provider arising out of the scope of services shown in the Contract, including coverage for bodily injury and property damage.

6.6 AIRCRAFT LIABILITY: If aircraft is used in the Work, coverage shall be classified for the intended aircraft scope of work and include coverage for bodily injury, property damage including injury sustained by any passenger, applying to all aircraft owned, furnished or used by the Contractor in the performance of this Contract.

6.6.1   The limit shall not be less than Five Million Dollars ($5,000,000) single limit for bodily injury and property damage including passenger liability.

6.6.2   Coverage shall: a) By "Additional Insured" endorsement add as additional insureds PG&E, PG&E's directors, officers, employees, agents, and its parent company, affiliates, subsidiaries with respect to liability arising out of or connected with the Work performed by or for the Contractor; b) Be endorsed to specify that the Contractor's insurance is

primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; c) include a severability of interest clause.

6.6.3    HULL INSURANCE: Coverage for physical damage for the full value of the aircraft and coverage shall waive all rights of subrogation against PG&E with respect to all physical damage to any aircraft used during the performance of this Contract.

6.7 OCEAN/INLAND MARINE CARGO INSURANCE: An Ocean/Inland Marine Cargo policy shall be provided for site to site coverage, and loss or damage to freight while in the care, custody or control of Contractor. Contractor shall be responsible for the shipments and safe handling, transport and unloading of the shipment at the destination in the manner and location designated.

6.7.1    Coverage shall be in amounts equal to full replacement value. Coverage shall be separate for each vehicle, vessel or other means of transportation of freight.

6.7.2    Carrier shall by endorsement name PG&E as a loss payee.

6.8 CRIME LIABILITY INSURANCE:

6.8.1    Coverage shall include but not be limited to Employee Dishonesty, with limits of One Million Dollars ($1,000,000) per occurrence and in the aggregate.

6.8.2    Coverage shall provide for losses caused by the actual destruction, disappearance, wrongful abstraction or theft by the Contractor or any other person authorized by the Contractor to have custody.

6.9 ALL RISKS BUILDERS RISK PROPERTY INSURANCE: An All Risk Property insurance policy shall be provided to cover all Work, property and delayed opening coverage for the Project; during construction, testing, start-up for any and all materials, equipment and machinery intended for the project while at the site, off-site and during transit to the site. Coverage to include and shall not be limited to fire, earthquake, flood, extended coverage, expediting expense and extra expense, and collapse shall be maintained during the course of work being performed.

6.9.1    Coverage shall be written on a replacement cost basis for the full completed value of the Project. Limits and deductibles shall be approved by PG&E. Such policy shall remain in full force and effect until possession and control of the Project is transferred to Owner.

6.9.2    PG&E shall be named as Loss Payee.

6.10    EQUIPMENT WARRANTY: For this project only and notwithstanding any language to the contrary contained in this agreement, the warranty for all equipment provided by Contractor on this project shall be the manufacturer's warranty that shall be assigned to PG&E by Contractor.  No further equipment warranty exists for this Project.

6.11    PROJECT SPECIFIC LIMIT OF LIABILITY:  Notwithstanding any language to the contrary contained in this Agreement, including the General Conditions, but subject to specific carve outs contained in Articles B-2.1-B-2.6 of the General Conditions the parties agree that the Contractor's limit of liability for all claims arising out of Contractor's work on the Project shall be capped at Twenty Three Million Dollars ($23,000,000).

# 7    CONTRACTOR'S USE OF PG&E PROPERTY

7.1 All records, reports, computer programs, Documentation, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Contractor's use in the performance of services under this Contract shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of the Contractor's use for the performance of the Work, or earlier upon the request of PG&E.

7.2 Contractor shall implement documented information security controls to maintain the confidentiality, integrity and availability of PG&E's electronic information and network.  These controls include such areas as user access, authentication and password administration; secure network connectivity; electronic control, storage, disposal and transmission of data; security incident reporting and network monitoring to assure compliance.  The requirements of this Paragraph shall be extended to Sub suppliers performing activities on Contractor's behalf.  These requirements are applicable when connecting to or accessing PG&E's network, protecting PG&E information, or introducing products and services, such as computer programs, code, software, firmware or media, into PG&E's network.  Contractor provides PG&E the rights of access for the purpose of verifying these controls at the Contractor's facility.  Contractor shall submit its documented controls to PG&E for review upon request.  Contractor may utilize PG&E's Information Protection Program in lieu of its documented controls upon request to PG&E.

## 8   MODIFICATION TO EXISTING SERVICES AND CHANGE ORDER

8.1 Additional Services other than those described in this Contract shall be performed by Contractor only if described and authorized in a Contract Change Order (CCO) signed by Contractor and PG&E.  Additional work may be requested by PG&E's Work Supervisor.  Any Additional work must be authorized in writing by PG&E prior to performance of such additional work, through the issuance of a fully executed Contract Change Order.  CCO's which are written pursuant to the Contract and which have completion dates beyond the completion date of the Contract shall continue to be governed by the terms of the Contract until said CCO's completion date.

8.2 PG&E reserves the right to make such changes in work, specifications, or level of effort, as may be necessary or desirable and any difference in Contract price resulting from such changes shall be approved in writing by PG&E before the work is begun.

8.3 Contractor shall on a monthly basis prepare a summary of the work performed for and the number of hours worked on behalf of PG&E.  Such a summary shall be given to the PG&E Work Supervisor and shall include the following information, at a minimum, with regard to the status of Work:

8.3.1   PROGRESS. Work performed or completed by Contractor, including significant progress, set-backs, or outstanding issues, for example, permitting, regulatory or PG&E approval.

8.3.2   CHANGES. Changes, additions or decreases, to the scope of Work.

8.3.3   SCHEDULE. Review of the schedule for the Work as compared to actual progress.

8.3.4   Contractor shall immediately notify the PG&E Work Supervisor regarding any problems which may significantly affect the performance of Services by Contractor.

8.3.5   PG&E shall decide, in its reasonable discretion, whether Contractor's performance during the Contract term is satisfactory.

## 9   WORK LOCATION.

9.1 Services may be performed at Contractor's place of business and in various locations throughout the Pacific Gas and Electric Company service territory, as required for successful completion of the work described in Section 4, Scope of Work and Deliverables.

## 10   NOTIFICATION

10.1   Contractor shall immediately notify PG&E regarding any problems which may significantly affect performance of Services by immediately notifying PG&E's Work Supervisor.

## 11   CONTRACT INTERFACE

11.1   In regard to matters relating to this Contract, both parties shall deliver written notices to:

| PG&E Work Supervisor |
| --- |
| Mr. Melvin Wong<br>Sr. Project Manager<br>PG&E<br>24399 Clawiter Road<br>Hayward CA 94545-2200<br>510-784-3375<br>MXW6@pge.com |

## 12   CHANGE CONTROL

12.1   Changes or modifications to this Contract may not occur except by a written change order signed by the Contractor's and PG&E's authorized representatives.

12.2   CONTRACTOR AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONTRACTOR'S SOLE RISK AND EXPENSE.

## 13   ACCEPTANCE & ACCEPTANCE TESTS

13.1   Please refer to Specification 12107, Section 28, Commissioning and Acceptance Tests.

13.2   Acceptance of the Work furnished hereunder will occur when the Work has been placed in operation and tested and found to have met successfully all performance and efficiency warranties made by Contractor. However, if said acceptance tests are delayed beyond a period of two years from the date the Work is placed in operation and provided said operating date is not unreasonably delayed by PG&E, and such delays are not due to Contractor's deliveries or performance limitations, then Contractor's liability for its warranties of efficiency and performance shall terminate unless other terms of liability are mutually agreed upon at the end of the aforementioned two year period.

13.3   Acceptance tests to demonstrate the ability of the Work to meet performance and efficiency warranties will be made by PG&E as soon as possible after the Work is placed in reliable operation, system conditions permitting.

13.4    The conditions of the acceptance test, methods employed, and the test result calculations shall be in accordance with the latest applicable ASME Power Test Code or IEEE Test Code, except where deviations are mutually agreed upon between Contractor and PG&E. Certified correction curves from such deviations from the Contract conditions shall be supplied by Contractor prior to test.

13.5    Contractor will be notified by PG&E and shall have the right to participate in the acceptance tests but shall make no charge to PG&E for the expense of such participation. PG&E will make all field preparations and pay all expenses incidental to the initial acceptance tests, except for the expense of Contractor's personnel. Contractor shall provide on loan without charge any special equipment necessary for testing. To ensure that the unit in which the Work is installed is in proper adjustment and in condition to undergo tests, Contractor may request that preliminary tests be made under Contractor's general direction and at its expense, subject to PG&E's approval.

13.6    Both Parties shall be bound by the results of the acceptance tests. In the event the Work fails to achieve warranted efficiency and performance, further acceptance tests, mutually agreed upon in writing by the Parties, shall be made at Contractor's expense after repair, replacement, or other correction, adjustment, or modification in or to the Work to correct such nonconformity.

13.7    Upon fulfillment of all the terms of the Contract, including successful completion of acceptance tests, PG&E will so notify Contractor in writing, and only such written notice shall constitute acceptance and fulfillment of the sale, subject, however, to the warranties and conditions contained in the Contract.

## 14  LABOR

14.1    Please refer to General Conditions Section 12.12.  Construction work at the Burney Compressor Station must only be performed by a contractor who is signatory to an agreement with IBEW Local 1245 that covers the identified Work.  Contractor shall not subcontract such construction Work to a non-signatory contractor or to a contractor who is signatory to a union other than IBEW Local 1245, unless Contractor has requested and received the prior written approval of PG&E, which approval may be contingent upon, among other things, receipt of any necessary third party approvals.

## 15  SHIPMENT AND DELIVERY

15.1    DELIVERY CHARGES: Quotations for delivery charges shall be; (1) f.o.b. vessel, car, or other vehicle, point of shipment; or (2) f.o.b. destination. Quotations shall be exclusive of applicable sales, use, or other excise taxes, and PG&E will reimburse Contractor therefore. For quotation (2) herein, Contractor shall include in its proposal a separate statement showing the amount included in the quotation for delivery charges and charges for installation, if any. Delivery charges shall include cost of freight, cartage, dunnage, import duty, and insurance. The total shipping weight and dimensions shall be stated in Contractor's proposal.

15.2    SHIPMENT: PG&E prefers that Contractor submit a firm price for shipment, and this will be an important consideration in making the award. If Contractor includes escalation in its proposal, it shall be based upon U.S. Bureau of Labor Statistics indices for the Goods, applied in accordance with Contractor's established practice.

15.3    SHOP PRODUCTION SCHEDULE: As soon as feasible after award of the Contract, Contractor shall submit to PG&E six copies of a complete and detailed shop production schedule. The schedule shall show all component parts with Subcontractors' names, expected dates of receipt of materials, fabrication dates, proposed shipping dates, and other information of a similar nature.

15.4    MATERIAL LIST: A complete list of all Goods shipped shall be mailed to the worksite. All routings, sketches, material lists, and bills of lading shall be identified with PG&E's Contract number or purchase order number, Specification number, and, if applicable, plant name.

    15.4.1 FREIGHT ROUTING: All shipments of material to PG&E shall be routed in accordance with the routing instructions that appear under the "Ship Via" heading located in the upper right hand portion of the PG&E Purchase Order.

    15.4.2 CARLOAD SHIPMENTS: 30 days prior to shipment, routings on carload shipments, together with an outlined sketch showing shipping dimensions and weights, shall be forwarded for approval to the address specified in the CWA. Contractor shall be responsible for assuring that the Goods are properly prepared for shipment and loaded so as to prevent damage during shipment. At or prior to the time of shipment, Contractor shall forward to PG&E complete details, including any diagrams or sketches, concerning the methods and techniques used to prepare the Goods for shipment and loading, including those utilized to prevent both external and internal damage during shipment, loading, and unloading.

15.5    FABRICATION AND SHIPMENT TIME: The time quoted for fabrication and shipment will be an important consideration in making the award. Time is of the essence hereof. Contractor shall give immediate written notice to PG&E of each shipment as made, accompanied with full information as to routing, car numbers, and other matters necessary to enable PG&E to monitor the location of the shipment. Changes in the schedule may be directed by PG&E, and these changes shall be complied with by Contractor insofar as possible.

15.6    TITLE: Title to the Work shall automatically and without further action by the Parties transfer to, and be held by, PG&E upon earliest of; (a) incorporation of the Goods into the Work on the Work site; (b) payment for the Work; or (c) Acceptance of the Work. Contractor shall execute and deliver all appropriate instruments, if any, necessary to evidence transfer of title and shall take such actions as PG&E reasonably requests to protect and perfect PG&E's interest in the Work. Contractor warrants that at the time of transfer pursuant to this Article, it holds good and marketable title to all materials, equipment and supplies, free and clear of all liens. Notwithstanding anything to the contrary in this Contract, the passage of title shall not relieve Contractor of any of its obligations to perform the Work or otherwise fulfill its obligations under this Contract.

## 16  SITE SAFETY PROVISIONS

16.1    CONSTRUCTION REGULATION: Contractor will at all times while performing its obligations under this Contract comply with the requirements of CPUC General Orders 95 (Overhead Electric Construction Standards), 112E (Gas System Construction Standards) and 128 (Underground Electric Constructions Standards), as they apply to the Contract. It will be the duty and responsibility of the Contractor or any Contractor performing any cutting or welding to comply with the safety provisions of the National Fire Protections Association's "National Fire Codes", and Factory Mutual Engineering's cutting and welding procedures and the applicable requirements specified in PG&E's associated documents.

16.2    WORK SITE SAFETY: Contractor shall have an ongoing safety training program for Contractor's personnel involved in the Work. Compensation for safety and first aid training shall be included in the Fees for the Work set forth in this Contract, and there shall be no separate compensation for Contractor's personnel to attend such training.

    16.2.1 WORK AND SAFETY PROGRAM: Contractor will have a work and safety program and rules for the Work. Contractor shall enforce its work and safety requirements for all Work performed on the work site. Contractor will ensure that all Contractor personnel receive,

read and sign a copy of the work and safety rules. Contractor shall retain proof of compliance for PG&E's inspection upon request. Contractor will designate a safety contact person for all matters concerning Contractor's work and safety programs.

16.2.2   SITE SAFETY PLAN: When required by federal OSHA regulations (29 CFR by other Legal Requirements, or by PG&E, the Contractor shall provide a written site safety plan for acceptance by PG&E and the applicable regulatory agency(s) as required, prior to commencement of Work. The site safety plan shall establish policies and procedures for protecting the health and safety of personnel during all operations conducted at a site with hazardous or suspected hazardous materials. The plan shall contain information about the known or suspected hazards, routine and special safety procedures that must be followed, and other instructions for safeguarding the health and safety of all affected personnel.

16.3   SAFETY EQUIPMENT AND TRAINING: Contractor shall provide its employees with applicable safety equipment and training. Contractor shall have available and if requested, submit to PG&E, a copy of a written respiratory protection program in accordance with Cal-OSHA GISO section 5144 and 29 CFR 1910.134. Contractor shall have available and if requested, submit to PG&E, a copy of other safety and hazardous waste and hazardous material training documentation. Contractor shall have the necessary respiratory equipment required to enter a "Category II" environment as defined in section 6.3 of API Pub 2015.

16.4   WORK HOURS AND REST PERIODS: Contractor's employees shall be in good physical and mental health when involved in the activities described in this Contract. If nature of Work requires continuous activities for greater than twenty four (24) hours, Contractor will ensure that fresh personnel are available to continue the Work. If Work is to continue for a period exceeding 24 hours, Contractor shall implement a plan for ensuring fresh personnel shall be available to do the Work, subject to approval by PG&E. Contractor shall comply with all federal and state laws and regulations and standard industry practices regarding work hours and rest periods for the type of Work involved.

16.5   PG&E'S RIGHTS: PG&E will have the right, from time to time, to undertake a safety performance audit of Contractor's Work, work practices, tools, equipment and materials. PG&E may, at any time and in its sole discretion, suspend all or a portion of the Work for safety-related reasons. Contractor will take immediate, appropriate corrective action. Notwithstanding any other provisions of the order, neither the suspension of the Work nor any corrective action taken will result in any increase in the contract price or extension of the schedule for the Work.

16.6   CONTRACTOR RESPONSIBILITY: Although PG&E may monitor Contractor's safety performance, may review safety performance with Contractor's safety contact person, or may suspend the Work for safety-related reasons, these actions are the primary purpose of protecting PG&E personnel and property. Contractor will remain solely responsible for the safe performance of the Work under this Contract. The provisions of this Article will be interpreted and construed in a manner consistent with Contractor's status as an independent contractor.

16.7   PG&E's receipt of Contractor's emergency action plan, safety plan, environmental plan or any other safety and health related information does not imply that PG&E endorses the plan. Contractor is solely responsible for performing the Work in compliance with all applicable Laws and Legal Requirements.

# 17   ADDITIONAL GENERAL PROVISIONS

17.1   COOPERATION: Commencing upon expiration, or upon notice to Contractor of cancellation or termination of this Agreement, and continuing for so long as PG&E may reasonably request, Contractor will cooperate and provide reasonable assistance requested by PG&E to facilitate the orderly transfer of the Work. To the extent that compensation for such assistance is not already provided for by the Contract, PG&E and Contractor will negotiate reasonable compensation not to exceed Contractor's then-current, standard Hourly Rates for similar work.

17.1.1   Contractor acknowledges that it has an affirmative obligation to act in good faith at all times with respect to PG&E and all aspects of this Contract. Consistent with its obligation of good faith, Contractor agrees, neither by its action or inaction, to do anything to compromise PG&E' ability to efficiently and cost-effectively transition the Work from Contractor; and Contractor shall under no circumstances inhibit PG&E's access to and control over any property of PG&E, PG&E's vendors, and PG&E's customers.

17.1.2   If requested by PG&E with respect to one this Contract, Contractor will fully cooperate with PG&E or a Third Party identified by PG&E in connection with the preparation and implementation of a transition plan by PG&E or such Third Party.

17.2   COPYRIGHT REGISTRATION: Notice of PG&E copyright ownership shall be placed by Contractor on all reports, information or instructional manuals, computer programs or other written, recorded, photographic or visual materials or other deliverables to which PG&E has the right of such ownership as provided in this Contract. Such notice shall be placed on the materials in a manner and location as to give reasonable notice of the claim of copyright, and shall consist of the copyright symbol or the word "Copyright" followed by the year in which the material is produced and the words "Pacific Gas and Electric Company". Application for copyright registration shall be the responsibility of PG&E.

17.3   PROPRIETARY RIGHTS: PG&E shall own all proprietary rights, including, but not limited to, exclusive patent and copyright rights, in and to all inventions, software, works of authorship, designs or improvements of equipment, tools or processes conceived, developed, implemented or produced by Contractor in the performance of this Contract, and Contractor shall retain no ownership, interest or title in or to them except as otherwise provided in this Contract.

17.4   NO INTERFERENCE WITH EXISTING OPERATIONS: When working in the vicinity of PG&E's plant or offices, Contractor shall conduct the Work in a manner that will cause a minimum of inconvenience to PG&E, its employees, other contractors and the general public. PG&E's business operations must be maintained without interruption during the progress of the Work, and Contractor shall plan and carry out the Work so that no unnecessary interference with such business operations occurs. Contractor's Work will not be permitted to interrupt utility services without PG&E's prior written authorization. If Contractor believes that the Work may disrupt PG&E's business operations or utility services, Contractor shall notify the PG&E Representative at least Seventy Two (72) hours in advance of performing the Work. Contractor's failure to so notify PG&E of a disruption will be cause for Contract termination.

## 18   CONFLICTS BETWEEN TERMS

18.1   Where there is any conflict in the Specific Conditions stated herein and the General Conditions contained within the Contract for Consulting Services, the Specific Conditions shall control.  Should a conflict exist between the Specific Conditions and General Conditions and applicable Federal, State or local law, rule regulation, order or code, the law, rule, regulation, order or code shall

control.  Varying degrees of stringency between the General Conditions, Specific Conditions, drawings, laws, rules, regulation, order, or codes are not deemed conflicts; and the most stringent requirement shall control.

18.2    Contractor shall immediately notify PG&E Work Supervisor of any conflicts or potential conflicts.