UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JH KELLY, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>AECOM TECHNICAL SERVICES, INC..,<br>et al.,<br><br>        Defendants. | Case No. 20-cv-05381-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART AECOM'S FIRST AMENDED COUNTERCLAIM**<br><br>Re: Dkt. No. 48 |

Pending before the Court is PG&E's motion to dismiss certain claims in AECOM's First Amended Counterclaim. Dkt. No. 48 ("Mot."). AECOM has filed an opposition, Dkt. No. 60 ("Opp."), and PG&E has filed a reply, Dkt. No. 63 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the following reasons, the Court **GRANTS** the motion to dismiss with **LEAVE TO AMEND** as to AECOM's claims for negligent misrepresentation, fraudulent concealment, quantum meruit, implied contractual indemnity, and contribution/apportionment.

## I. BACKGROUND

This construction dispute arises out of the Burney K2 Replacement Project ("Project"), which involved the replacement of a natural gas compressor unit and various upgrades at the compressor station near Burnley, California. Dkt. No. 38 (AECOM's First Amended Counterclaim or "Countercl.") ¶ 7. The Burney Compressor Station is part of PG&E's natural gas distribution system that supplies natural gas to the surrounding area and allows compressed gas to continue traveling through pipelines from Oregon to consumers in California. *Id.* ¶ 8. PG&E's natural gas distribution system provides service to around 4.2 million customers from Bakersfield, California to the Oregon border. *Id.*

PG&E and AECOM entered into an Engineering, Procurement and Construction of Natural Gas & Electric Transmission Facilities Agreement (the "EPC Agreement"). *Id.* ¶ 9. AECOM then entered into a subcontract (the "Subcontract") with JH Kelly, which is also a party to this complex construction dispute. *Id.* Under the EPC Agreement, AECOM agreed to design and construct the Project and to procure certain materials and equipment. *Id.* ¶ 10. Under the Subcontract, AECOM assigned its construction obligations to JH Kelly, and JH Kelly agreed to construct the Project, to supply certain materials, and be responsible for construction planning and scheduling. *Id.*

The current case involves disputes between PG&E, AECOM, and JH Kelly over who is responsible for various alleged delays, cost overruns, contractual violations, and tortious actions. The current motion to dismiss addresses the non-contract claims in AECOM's Counterclaim. Mot. at 9.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against

the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

AECOM's Counterclaim alleges sixteen causes of action, including contractual and tort claims against both PG&E and JH Kelly. PG&E moves to dismiss AECOM's non-contractual claims against PG&E, specifically AECOM's claims for Negligent Misrepresentation (5th), Fraudulent Concealment (6th), Quantum Meruit (7th), Implied Contractual Indemnity (8th), and Contribution/Apportionment (16th).[1] Mot. at 9.

### A. AECOM's Negligent Misrepresentation and Fraudulent Concealment Claims

The basis for AECOM's negligent misrepresentation and fraudulent concealment claims are representations allegedly made by PG&E in the Burney project's request for proposal ("RFP"). Specifically, AECOM alleges that "[i]n the RFP, PG&E represented that: (a) it would only make minimum changes to the existing pre-bid design, (b) the pre-bid design was accurate, (c) the allowable means and methods for the construction of the Project were as described in the RFP, and (d) the scope of the Project and the scope of the design would be frozen at the 30% (pre-bid) stage

---

[1] The parties stipulate to the dismissal of AECOM's claim for determination of priority and extent of AECOM's mechanics' lien against PG&E based on this Court's prior ruling on JH Kelly's claim for foreclosure of mechanics' lien. Mot. at 10; Opp. at 2; Dkt. No. 56. Given this stipulation and the Court's reasoning in its prior order, the Court **DISMISSES WITHOUT LEAVE TO AMEND** AECOM's mechanics' lien claim.

3

and any changes thereafter would entitle AECOM to a schedule extension and/or increase in contact price." Countercl. ¶¶ 119, 128. According to AECOM, PG&E knew, or should have known, that these representations contained in the RFP were false. *Id.* ¶¶ 121, 130.

Under California law, AECOM's negligent misrepresentation and fraudulent concealment claims sound in fraud. *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (Cal. Ct. App. 2016) ("Causes of action for intentional and negligent misrepresentation sound in fraud and, therefore, each element must be pleaded with specificity."). AECOM thus must satisfy the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."). To satisfy Rule 9(b), AECOM allegations of misrepresentations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106.

PG&E argues that AECOM's failure to identify which RFP provisions contained the alleged misrepresentations means that AECOM fails to meet the heightened pleading standard. Mot. at 12. In response, AECOM argues that it need not cite specific written provisions and that its characterizations of the RFP's provisions suffice for Rule 9(b) purposes. Opp. at 3-4.

Having carefully reviewed AECOM's Counterclaim, the Court finds AECOM's position less than coherent. On one hand, AECOM alleges that "[t]he RFP included all of the information (provided by PG&E) upon which bidders were supposed to rely in preparing their bids." Countercl. ¶ 27. On the other hand, AECOM is unwilling or unable to identify the provisions of the RFP that contain the alleged misrepresentations that it relied on in agreeing to the EPC Agreement. In describing the RFP package, AECOM even includes language within quotation marks, presumably because it is quoted directly from the RFP. *See* Countercl. ¶ 27. Yet, AECOM argues that it need not even provide a citation or context for this quoted language. Opp. at 3-4.

AECOM's argument fails. "To avoid dismissal for inadequacy under Rule 9(b)," AECOM's Counterclaim "need[s] to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Given that the RFP is a written document

4

in AECOM's possession, *see, e.g.*, Countercl. ¶ 28 ("AECOM provided JH Kelly a copy of the RFP."), AECOM should be able to allege with particularity the specific content and context of the misrepresentations that form the basis of its tort claims.[2] It has thus far failed to do so and therefore does not satisfy Rule 9(b)'s particularity requirement. Accordingly, AECOM's claims for negligent misrepresentation and fraudulent concealment are **DISMISSED WITH LEAVE TO AMEND**.[3]

### B. AECOM's Quantum Meruit Claim

AECOM's quantum meruit claim is based on allegations that because of the excessive changes to the Burney Project demanded by PG&E, PG&E abandoned the EPC Agreement. Countercl. ¶¶ 135-143.[4] According to AECOM, it is therefore entitled to recover under a theory of quantum meruit. *Id.*

PG&E argues that AECOM's quantum meruit claim should be dismissed because the EPC Agreement covers the subject of AECOM's claim and because PG&E did not abandon the EPC agreement. Mot. at 23-25. AECOM responds that it has adequately pleaded abandonment based

---

[2] With its motion to dismiss, PG&E also filed a request for judicial notice of certain documents that it argues show that AECOM's allegations are contradicted by the RFP. Dkt. No. 48-2; Mot. at 12-13. The RFP itself would clearly be appropriate to incorporate by reference as it forms the basis of AECOM's claims. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1002 (9th Cir. 2018). But PG&E did not submit the RFP as an integral document. *See* Dkt. No. 48-1. Instead, PG&E submitted what its counsel characterized as relevant excerpts of the EPC Agreement. Dkt. No. 48-2. AECOM objects that these documents have not been properly authenticated and are being offered to establish disputed facts. Dkt. No. 61. Because the Court does not rely on these documents, the Court need not resolve this dispute and **DENIES AS MOOT** the request for judicial notice.

[3] Because the Court finds that AECOM's negligent misrepresentation and fraudulent concealment claims do not satisfy Rule 9(b)'s heightened pleading standard, the Court need not consider PG&E's economic loss rule arguments. Mot. 17-21. However, the Court notes that it is skeptical of AECOM's efforts to transform what appears to be a clear, if complex, breach of contract dispute into a tort case. The Court finds compelling the argument that the current dispute could present a paradigmatic application of the economic loss rule, which is designed to "prevent[] the law of contract and the law of tort from dissolving one into the other." *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). If AECOM chooses to amend its tort claims, it should be prepared to justify why this economic dispute between two sophisticated, corporate parties based on a negotiated written contract implicates the law of tort.

[4] AECOM also alleges that based on PG&E's fraudulent misrepresentations, the EPC Agreement may be void and unenforceable. Countercl. ¶ 141. To the extent that AECOM's quantum meruit claim is based on its fraudulent misrepresentation claims, the Court finds that AECOM fails to plead fraudulent misrepresentations with the particularity required by Rule 9(b) for the same reasons discussed above.

5

on its allegations that PG&E ignored the EPC Agreement's change order provisions. Opp. at 20-22.

AECOM is correct in arguing that "when an owner imposes upon the contractor an excessive number of changes such that it can fairly be said that the scope of the work under the original contract has been altered, an abandonment of contract properly may be found." *See C. Norman Peterson Co. v. Container Corp. of Am.*, 172 Cal. App. 3d 628, 640 (Cal. Ct. App. 1985). But an owner demanding excessive changes is not the only element of an abandonment claim. "[A]bandonment requires a finding that *both* parties intended to disregard the contract." *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 236 (2002) (alteration and emphasis in original). "Abandonment occurs . . . only where both contracting parties agree 'that the contract is terminated and of no further force and effect.'" *Ben-Zvi v. Edmar Co.*, 40 Cal. App. 4th 468, 474 (Cal. Ct. App. 1995), *as modified* (Nov. 21, 1995).

In its Counterclaim, AECOM alleges that PG&E made numerous demands for changes and that PG&E failed to properly follow the EPC Agreement's change order process. Countercl. ¶¶ 36-51, 65-70. These allegations may be adequate to plead the implicit intent of PG&E to abandon. *See Amelco*, 27 Cal. 4th at 229 ("[P]rivate parties may impliedly abandon a contract when they fail to follow change order procedures"). But nowhere does AECOM allege that it also intended to disregard the EPC Agreement such that *both* parties agreed that the contract was terminated and of no further force and effect. On the contrary, many of AECOM's other causes of action seek to enforce the EPC Agreement against PG&E on the theory that AECOM complied with the contract and PG&E did not. *See, e.g.,* Countercl. ¶¶ 94-95 ("AECOM has performed all of the conditions and requirements of the EPC Agreement . . . . PG&E has breached the EPC Agreement."). Accordingly, the Court finds that AECOM has failed to adequately plead its quantum meruit claim, which is **DISMISSED WITH LEAVE TO AMEND**.

### C. AECOM's Implied Contractual Indemnity Claim

With its claim for implied contractual indemnity against PG&E, AECOM asserts that it is entitled to equitable and implied indemnification if AECOM is found to be derivatively liable to JH Kelly in this case. Countercl. ¶¶ 148-153. PG&E argues that implied contractual indemnity is

available under California law only if there is a joint legal obligation to the injured party. Mot. at 25-29. AECOM argues that PG&E misunderstands the nature of a claim for implied contractual indemnification and that PG&E need not owe an independent legal duty to JH Kelly to sustain such a claim, relying on the California Court of Appeal's decision in *Sehulster Tunnels/Pre-Con v. Traylor Bros./Obayashi Corp.*, 111 Cal. App. 4th 1328, 1350-51 (Cal. Ct. App. 2003). Opp. at 22-24.

The Court finds that AECOM is incorrect in asserting that its claim for implied indemnity is viable in the absence of a joint legal obligation to the injured party. *See* Opp. at 23. The California Supreme Court has directly addressed the question "whether or not a requirement of a joint legal obligation also applies when implied contractual indemnity is at issue." *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1161 (2009). The California Supreme Court "conclude[d] the answer is yes." In explaining this holding, the California Supreme Court specifically warned against attempts to transform a breach of contract claim into a tort claim:

> Allowing a claim for implied contractual indemnity to proceed in the absence of any independent liability on the part of the indemnitor to the injured party would essentially subject the indemnitor to liability for the injured party's damages in connection with an alleged breach of contract. Our reiteration that indemnity is restitutionary in nature and our recognition of a shared liability requirement will avoid transforming a breach of contract claim into a vehicle for the recovery of tort damages.

*Id.* at 1166 n.10.

The Court finds that to adequately plead a claim for implied contractual indemnity, AECOM must plausibly allege a joint legal obligation that PG&E owed to JH Kelly. AECOM has not done so. *See* Countercl. ¶¶ 148-153. Accordingly, the Court **DISMISSES WITH LEAVE TO AMEND** AECOM's claim for implied contractual indemnity.

**D.     AECOM's Contribution/Apportionment Claim**

AECOM's claim for contribution/apportionment against PG&E appears to derive from its implied contractual indemnity claim. *See* Opp. at 24 ("[A] claim for implied contractual indemnity will give rise to the right of equitable contribution/apportionment."); Countercl. ¶ 203. Given that the Court has dismissed AECOM's implied contractual indemnity claim and AECOM

has offered no other theory for the viability of its contribution/apportionment claim, the Court also finds that AECOM has failed to adequately plead this claim. Accordingly, AECOM's contribution/apportionment claim as to PG&E is **DISMISSED WITH LEAVE TO AMEND**.

## IV. CONCLUSION

The Court **DISMISSES WITHOUT LEAVE TO AMEND** AECOM's first cause of action for determination of priority and extent of AECOM's mechanics' lien. The Court **DISMISSES WITH LEAVE TO AMEND** AECOM's fifth, sixth, seventh, ninth, and sixteenth causes of action.

AECOM may not add any new causes of action or defendants to an amended counterclaim, and any amended counterclaim must be filed within 21 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 6/28/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge