AARON R. GRUBER (CABN 209509)
agruber@rallsgruber.com
DYLAN J. CROSBY (CABN 299536)
dcrosby@rallsgruber.com
Ralls Gruber & Niece LLP
1700 S. El Camino Real, Suite 150
San Mateo, CA 94402
Telephone: 650.445.0543

Attorneys for Counter-Defendant
PACIFIC GAS & ELECTRIC COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In Re<br><br>PG&E CORPORATION<br><br>v.<br><br>AECOM TECHNICAL SERVICES, INC. | Case No. 4:20-cv-05381-HSG (Lead Case)<br><br>(Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008)<br><br>(Consolidated with Case No. 3:20-cv-08463-EMC)<br><br>**PG&E'S REPLY BRIEF ISO MOTION TO DISMISS/STRIKE RE: AECOM'S SECOND AMENDED COUNTERCLAIM**<br><br>[Fed. R. Civ. P. 12(b)(6), 15(a)]<br><br>Date: November 4, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr.<br><br>Complaint Filed: January 25, 2019<br>Trial Date: February 14, 2022 |

## Table of Contents

I. INTRODUCTION ........................................................................................................... 5

II. DISCUSSION ................................................................................................................ 6

    A. AECOM Improperly Amended Its Contract Claims Without Leave of Court. ........................................................................ 6

    B. AECOM's Negligent Misrepresentation and Fraudulent Inducement Claims Should Be Dismissed With Prejudice. ................................................................. 7

        1. As a Matter of Law, AECOM's Reliance on PG&E's Purported Misrepresentations Was Not Reasonable. ................................................. 7

        2. The Economic Loss Rule Bars AECOM's Tort Claims. .......................... 9

            i. AECOM's Tort Claims Are Not a Per Se Exception to the Economic Loss Rule. ................................................................. 10

            ii. The Economic Loss Rule Bars AECOM's Tort Claims Because They Merely Parallel its Contract Claims. ...................... 10

    C. AECOM's Quantum Meruit Claim Should Be Dismissed With Prejudice. .......... 12

        1. The Allegations in the Second Amened Counterclaim and Judicially Noticeable Facts Prove the Parties Did Not Intend to Abandon the EPC Agreement. ..................................................................................... 12

        2. AECOM Cannot Plead Its Quantum Meruit Claim in the Alternative Under Rule 8(d)(3). ................................................................................ 13

    D. AECOM's Implied Contractual Indemnity and Contribution/Apportionment Claims Should be Dismissed With Prejudice. ................................................... 15

        1. AECOM and PG&E Must Owe JH Kelly a Joint Legal Obligation Sounding in Tort. ................................................................................... 15

        2. As a Matter of Law, PG&E Did Not Owe JH Kelly Any Legal Obligation. ................................................................................................ 18

            i. There Existed No Relationship Between PG&E and JH Kelly Sufficient to Give Rise to a Duty on PG&E's Part. ............. 18

            ii. The Cases Cited by AECOM Concern Different Factual Circumstances. ............................................................................. 19

III. CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995) ............................................. 7

*Am. Licorice Co. v. Total Sweeteners, Inc.*, 2014 U.S. Dist. LEXIS 27705 (N.D. Cal. Mar. 4, 2014) ............................................................................................................................. 19

*Amelco Electric v. City of Thousand Oaks*, 27 Cal.4th 228 (2002) ........................................... 13

*American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455 (7th Cir. 1996) ................................ 15

*Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F.Supp.3d 1117 (N.D. Cal. 2015) ....................................................................................................... 21

*Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471 (9th Cir. 1994) ................................ 8

*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal.App.4th 848 (2004) .......................................................................................................................... 17

*Clayton v. Automated Gaming Techs.*, No. 2:13-cv-00907-JAM-EFB, 2014 U.S. Dist. LEXIS 111845 (E.D. Cal. Aug. 11, 2014) ................................................................................... 8

*Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal.App.3d 151 (1971) .......................................... 14

*FDIC v. Kooyomjian*, 220 F.3d 10 (1st Cir. 2000) ....................................................................... 6

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F.Supp.2d 983 (E.D. Cal. 2012) .. 5

*Guido v. Koopman*, 1 Cal.App.4th 837 (1991) ............................................................................ 8

*HDR Envtl. v. Deason*, No. 15cv1402 JAH (NLS), 2018 U.S. Dist. LEXIS 54958 (S.D. Cal. Mar. 28, 2018) ....................................................................................................................... 14

*In re Med. Capital Sec. Litig.*, 842 F.Supp.2d 1208 (C.D. Cal. 2012) ........................................ 18

*Intelligraphics, Inc v. Marvell Semiconductor, Inc.*, No. C07-02499 JCS, 2009 U.S. Dist. LEXIS 9875 (N.D. Cal. Jan. 28, 2009) ....................................................................................... 10

*Jimenez v. Superior Court*, 29 Cal.4th 473 (2002) ..................................................................... 10

*Linde, LLC v. Valley Protein, LLC*, No. 1:16-cv-00527-DAD-EPG, 2019 U.S. Dist. LEXIS 115730 (E.D. Cal. July 11, 2019) ............................................................................................... 12

*M. Miller Co. v. Dames & Moore*, 198 Cal.App.2d 305 (1961) .................................................. 21

*Maloney v. Scottsdale Ins. Co.*, 256 F.App'x 29 (9th Cir. 2007) ................................................ 15

*Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2020 U.S. Dist. LEXIS 158185 (N.D. Cal. Aug. 31, 2020) (Hon Hai) ....................................................... 7

*Neptune Gunite Co. v. Monroe Enterprises, Inc.*, 229 Cal.App.2d 439 (1964) ......................... 20

*Oracle USA, Inc. v. XL Global Servs., Inc.*, C 09-00537 MHP, 2009 U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009) ............................................................................................... 10

*Pennel v. Pond Union Sch. Dist.*, 29 Cal.App.3d 832 (1973) .................................................... 13

*Powers Regulator Co. v. Seaboard Surety Co.*, 204 Cal.App.2d 338 (1962) ............................ 20

*Prince v. Pacific Gas & Electric Co.*, 45 Cal.4th 1151 (2009) ................................................... 17

*Ratcliff Architects v. Vanir Construction Management, Inc.*, 88 Cal.App.4th 595 (2001) ......... 20

*Roberts v. Daymon Worldwide Inc.*, No. 15-cv-00774-WHO, 2016 U.S. Dist. LEXIS 96163 (N.D. Cal. July 22, 2016) ................................................................................................ 8

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004) ....................................... 10

*Rogers v. Whitson*, 228 Cal.App.2d 662 (1964) ................................................................. 20

*Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp.*, 111 Cal.App.4th 1328 (2003) ................................................................................................................................ 17

*Singh v. Google LLC*, Case No. 16-cv-03734-BLF, 2018 U.S. Dist. LEXIS 27111 (N.D. Cal., Feb. 20, 2018) ..................................................................................................................... 8

*Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 U.S. Dist. LEXIS 117524 (N.D. Cal. Aug. 22, 2014) ................................................................................................................................. 19

*State Farm General Ins. Co. v. Oetiker, Inc.*, 58 Cal.App.5th 940 (2020) ................................ 12

*State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal.App.4th 1227 (2015) ............................... 17

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal.App.4th 1036 (2006) ... 6

*Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc.*, 252 F.App'x 123 (9th Cir. 2007) .................................................................................................................................................. 15

*Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis, Inc.*, 491 F.Supp.3d 506 (N.D. Cal. 2020) ................................................................................ 6, 18

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163 (C.D. Cal. 2009) ........................................................................................................................................ 7

*Windham at Carmel Mountain Ranch Assn. v. Superior Court*, 109 Cal.App.4th 1162 (2003) .... 12

*Woods v. Google Inc.*, No. 05:11-cv-1263-JF, 2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10, 2011) ..................................................................................................................................... 8

*Yi v. Circle K Stores, Inc.*, 258 F.Supp.3d 1075, 1087 (C.D. Cal. 2017) ................................... 5

**Rules**

Fed. R. Civ. P. 8……………………………………………………………………………13

Fed. R. Civ. P. 15 ........................................................................................................................ 6

# INTRODUCTION

AECOM is a Fortune 500 company and self-proclaims it is the "world's premier infrastructure consulting firm." Nonetheless, AECOM alleges PG&E tricked it into executing the EPC Agreement through its misrepresentations concerning the state of completion of the pre-bid design for the Project. AECOM is now asking this Court for a do over, despite executing six (6) change orders pursuant to the terms of the EPC Agreement over the Course of the Project, totaling $5,409,830.21. Khairi Decl., Exs. D-I; Countercl., ¶ 86.[1]

In an attempt to avoid terms of the EPC Agreement it finds unfavorable, AECOM alleges it: (i) was induced to contract via fraud (5th and 6th); and (ii) abandoned the contract (7th). In dismissing these claims previously, the Court noted: (i) its "skeptic[ism] of AECOM's efforts to transform what appears to be a clear, if complex, breach of contract dispute into a tort case" (Dkt. No. 64 at 5 n. 3); and (ii) that "many of AECOM's other causes of action seek to enforce the EPC Agreement against PG&E on the theory that AECOM complied with the contract and PG&E did not" (*Id.* at 6).

Instead of heeding the Court's comments, AECOM amended its claims a third time but did not cure any of the pleading defects. For example, AECOM's fraud claims are still barred by the economic loss rule because they parallel its contract claims and seek to recover purely economic damages. *See Yi v. Circle K Stores, Inc.*, 258 F.Supp.3d 1075, 1087 (C.D. Cal. 2017); *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F.Supp.2d 983, 993-94 (E.D. Cal. 2012). AECOM's quantum meruit claim is still contradicted by myriad AECOM allegations and judicially noticeable facts concerning the parties' compliance with the Agreement. *See* Countercl., ¶¶ 83, 86, 93-94; Khairi Decl., Exs. D-I.

AECOM replead its equitable indemnity claims in an improper attempt shift responsibility to PG&E for the damages JH Kelly alleges it suffered as a result of AECOM's breach of their Subcontract. In an attempt cure the defects highlighted by this Court's prior Order (Dkt No. 64 at 7), AECOM now alleges that PG&E and AECOM owed JH Kelly "joint obligations" "aris[ing] out

---

[1] Countercl., refers to AECOM's Second Amended Counterclaim (Dkt. No. 65).

of a chain of contractual privity." Opp'n at 21.[2] AECOM's new allegations are insufficient for at least two reasons. First, "California law does not permit apportionment of damages for breach of contract." *Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis, Inc.*, 491 F.Supp.3d 506, 518 (N.D. Cal. 2020), citing *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal.App.4th 1036, 1041 n.2 (2006). Second, there is no relationship between PG&E and JH Kelly sufficient to give rise to any duty on PG&E's part.

Given this record, PG&E asks that the grant PG&E's motion, in full.

## DISCUSSION

**A.  AECOM Improperly Amended Its Contract Claims Without Leave of Court.**

AECOM argues the amendments it made to its contract claims without leave of court are proper because the Court did not specify it could not do so. Opp'n at 2. That is not the law.

Rule 15 governs amendments to pleadings. It provides that a party may amend its pleading once "as a matter for course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at 15(a)(2). The rule applies even if the court did not expressly bar amendments other than the ones it did allow. *FDIC v. Kooyomjian*, 220 F.3d 10, 15 (1st Cir. 2000).

Here, AECOM argues that striking its improper amendments is "unwarranted" because they are merely "minor revisions" to "ensure consistency across its claims." Opp'n at 2-3. Not so. They are highly prejudicial attempts to: (i) avoid the economic loss rule's preclusive effect; and (ii) manufacture duties owed by PG&E to JH Kelly to support its equitable indemnity claims. *See*, e.g., Countercl., ¶¶ 103-104, 110, 125. AECOM's excess amendments should be stricken as an improper attempt to circumvent Rule 15. *Estes v. Fed. Bureau of Prisons*, 273 F.Supp.2d 1301, 1305 (S.D. Ala. 2003).[3]

---

[2] Opp'n refers to AECOM's Opposition Brief (Dkt No. 84).
[3] For the purposes of this motion, this Court should also disregard AECOM's improper amendments because they are without "legal effect." *Taa v. Chase Home Fin., LLC*, No. 5: 11-CV-00554 EJD, 2012 U.S. Dist. LEXIS 18972, at *4 (N.D. Cal. Feb. 15, 2012) (an "amendment that has been filed or served without leave of court . . . is without legal effect").

B.  **AECOM's Negligent Misrepresentation and Fraudulent Inducement Claims Should Be Dismissed With Prejudice.**

AECOM argues that its fraud claims are not subject to dismissal because: (i) whether it justifiably relied on PG&E's purported misrepresentations is a question of fact; and (ii) they are a "per se" exception to the economic loss rule. Opp'n at 3-15. AECOM's arguments lack merit.

1.  **As a Matter of Law, AECOM's Reliance on PG&E's Purported Misrepresentations Was Not Reasonable.**

AECOM argues that whether it justifiably relied on PG&E's purported misrepresentations is a question of fact because: (i) the contractual integration clause and disclaimers are not dispositive; and (iii) PG&E's claim that AECOM knew it intended to make changes to the pre-bid design is "misleading." Opp'n at 4-8. AECOM's arguments are not supported by fact or law.

It is within this Court's discretion to conclude AECOM's reliance was not justified "as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995). Considering the totality of the factors discussed below, the Court would be well within its discretion to find that AECOM's reliance was not reasonable as a matter of law. *See, e.g.*, *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1189-90 (C.D. Cal. 2009); *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2020 U.S. Dist. LEXIS 158185, at *34-45 (N.D. Cal. Aug. 31, 2020).

**The Integration Clause Evidences the Unreasonableness of AECOM's Reliance**. AECOM argues there is "no per se rule under California law that the existence of an integration clause precludes a plaintiff from establishing . . . justifiable reliance[.]" Opp'n at 4-5. AECOM misses the point. California Appellate and District Courts have routinely held that integration clauses are relevant to the determination of whether a party's reliance was reasonable. *See, e.g.*, *United Guar.*, 660 F.Supp.2d at 1176, fn.15; *Hon Hai*, 2020 U.S. Dist. LEXIS 158185, at *38-39; *Woods v. Google Inc.*, No. 05:11-cv-1263-JF, 2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10, 2011); *Clayton v. Automated Gaming Techs.*, No. 2:13-cv-00907-JAM-EFB, 2014 U.S. Dist. LEXIS 111845, at *5 (E.D. Cal. Aug. 11, 2014); *Roberts v. Daymon Worldwide Inc.*, No. 15- cv-00774-WHO, 2016 U.S. Dist. LEXIS 96163, at *31 (N.D. Cal. July 22, 2016); *Guido v. Koopman*,

1 Cal.App.4th 837, 843-44 (1991); *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477-78 (9th Cir. 1994) (applying California law).

Instead of disputing this fact, AECOM agues the *Woods* decision is inapplicable because the Court "applied a fact intensive inquiry" in determining whether the contract's integration clause precluded reasonable reliance. Opp'n at 5. However, AECOM fails to mention that after conducting its inquiry, the Northern District dismissed Wood's fraud claims. The Court found that in light of Wood's "sophistication," no reasonable plaintiff would "rely[ ] upon the extraneous statements notwithstanding an unambiguous" integration clause. 2011 U.S. Dist. LEXIS 88795, *27. Like AECOM, Woods failed to explain how he was "prevented [ ] from understanding the clear language in the Agreement, excluding any reliance on extraneous statements or promises." *Id*. at *26.

AECOM also argues that "a subsequent decision from the Northern District of California disagreed with the very interpretation of Woods that PG&E advances here." Opp'n at 5, citing *Singh v. Google LLC*, Case No. 16-cv-03734-BLF, 2018 U.S. Dist. LEXIS 27111 (N.D. Cal., Feb. 20, 2018). Not so. In *Singh*, the Northern District found there were "significant differences between the circumstances presented here and those in *Woods* that [permitted it] to reach a different conclusion[.]" 2018 U.S. Dist. LEXIS 27111, at *25. One of those differences was Singh's lack of sophistication compared to Woods'. *Id.* Here, AECOM has not advanced any argument that it lacked the sophistication to understand the terms of EPC Agreement before it executed it.

**Disclaimers Further Evidence the Unreasonableness of AECOM's Reliance**. AECOM also argues the disclaimers cited by PG&E are not "conclusive" and PG&E is taking them "out of context." Opp'n at 5-6. AECOM arguments lacks merit.

For example, AECOM argues that "Articles 20.2.1, 20.2.2 and 20.2.8 of Attachment 1 to the EPC Agreement have nothing to do with the evaluation of the pre-bid design[.]" Instead, AECOM claims those provisions required it to compare the estimated design hours to actual design hours upon completion. *Id*. at 5-6. Not so.[4] Article 20.2 and its relevant subparts specifically

---

[4] Article 20.1 of the RFP and EPC Agreement referenced by AECOM (which is not cited by PG&E) does concern the calculation of engineering hours.

concern the "engineering services" AECOM was required to provide. Khairi Decl., Exs. A & J at 20.2. Importantly, Article 20.2 (among other provisions of the RFP and EPC Agreement) specifically disclaims any reliance as to the accuracy and completion of the pre-bid designs due to their preliminary nature. Khairi Decl., Exs. A & J at Art. 20.2.1, 20.2.2, 20.2.8; Op. Br.[5] at 14-15.

**AECOM Knew the Pre-Bid Design Was Subject to Change**. AECOM argues that "PG&E misleadingly suggests that AECOM knew the extent of PG&E's planned changes when it executed the EPC Agreement." Opp'n at 7. That is not PG&E's argument.

In its opening brief, PG&E explained that the EPC Agreement specifically contemplates modifications to the scope of work required to complete the Project and allows AECOM to submit written change orders for additional compensation for any changes. Op. Br. at 16; Khairi Decl., Ex. B at Arts. 8.1-8.3. Additionally, AECOM acknowledges that PG&E informed it at least a month before the EPC Agreement was executed that its comments to the "30% electrical design were 'omitted' from the RFP and would be forthcoming." Countercl., ¶¶ 41, 53. AECOM took this information into consideration before it executed the EPC Agreement, knowing it would be compensated through the EPC Agreement's change order provisions, which it was. *See* Khairi Decl., Exs. D-I. After executing six change orders, AECOM cannot now claim it was tricked into executing the EPC Agreement. On this record, the Court would be well within its discretion to find that AECOM's reliance on PG&E's purported misrepresentations was not reasonable, as a matter law.

   **2.   The Economic Loss Rule Bars AECOM's Tort Claims.**

AECOM argues its fraud claims are not subject to dismissal because: (i) "fraudulent inducement and negligent misrepresentation claims are per se exceptions to the economic loss rule;" and (ii) it "adequately plead facts to sufficient to trigger the fraud exception to the economic loss rule." Opp'n at 8. AECOM's arguments lack merit.

---

[5] Op. Br. refers to PG&E's Opening Brief (Dkt. No. 67).

i. **AECOM's Tort Claims Are Not a Per Se Exception to the Economic Loss Rule**.

AECOM advances the meritless position that merely pleading a claim for fraudulent inducement is a "per se exception to the economic loss rule." Opp'n at 8. That is not the law. The Northern District has repeatedly recognized that if AECOM's position were the law:

> Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations . . . To allow [fraud] claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law.

*Oracle USA, Inc. v. XL Global Servs., Inc.*, C 09-00537 MHP, 2009 U.S. Dist. LEXIS 59999, at *7 (N.D. Cal. July 13, 2009), citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004); *see also Intelligraphics, Inc v. Marvell Semiconductor, Inc.*, No. C07-02499 JCS, 2009 U.S. Dist. LEXIS 9875, at *50-51 (N.D. Cal. Jan. 28, 2009). Instead, the Northern District has explained that the "'economic loss rule' as it is understood in California is primarily designed to limit tort damages for losses resulting from defective goods or services." *Oracle*, 2009 U.S. Dist. LEXIS 59999, at *15-16, citing *Jimenez v. Superior Court*, 29 Cal.4th 473, 483 (2002).

Consistent with the above, this Court has already noted its "skeptic[ism] of AECOM's efforts to transform what appears to be a clear, if complex, breach of contract dispute into a tort case." Dkt. No. 64 at 5, n. 3, citing *JMP Sec.*, 880 F.Supp.2d 1042-43. Instead, it found "compelling" PG&E's "argument that the current dispute could present a paradigmatic application of the economic loss rule, which is designed to 'prevent[] the law of contract and the law of tort from dissolving one into the other.'" *Id*. PG&E asks that the Court rule AECOM's fraud claims are barred by the economic loss doctrine because they parallel its contract claims, seek only economic damages, and do not concern defective goods or services.

ii. **The Economic Loss Rule Bars AECOM's Tort Claims Because They Merely Parallel its Contract Claims.**

AECOM contends that any argument that its contract claims parallel its fraud claims is "factually inaccurate." Opp'n at 12. AECOM's allegations prove otherwise.

*First*, AECOM argues it is inaccurate to state that the misrepresentations it complains of are in the EPC Agreement. Instead, AECOM argues its fraud claims are also based on "oral

representations made outside the contract." Opp'n at 13. Not so. Each of the representations AECOM complains of, whether written or oral, concern the following excerpt from the RFP: "It is the intent of this RFP that a minimum of changes be made to the existing 30% Design Deliverables." *See*, *e.g.*, Countercl., ¶¶ 33, 35, 131 142-143, Ex. 2 at 1; Khairi Decl., Ex. J at 4.2.1.2. The parties explicitly incorporated this language into the EPC Agreement. *Compare* Countercl., Ex. 2 at 1 *to* Khairi Decl., ¶ 1, Ex. A at 90 (Work Scope Document); *Yi*, 258 F.Supp.3d at 1087 (Where the "alleged misrepresentation is the contract itself," the economic loss doctrine bars any claim of fraudulent inducement").

*Second*, AECOM argues it is incorrect to state its contract and fraud damages are the same. Opp'n at 13. Specifically, AECOM argues the harm it suffered "as a result of PG&E's fraud stems from the fact that AECOM entered into the EPC Agreement at a lower contract price." *Id*. The harm it purportedly suffered as a result of PG&E's breaches stems from PG&E's "fail[ure] to abide by its obligations." *Id*. AECOM's pleadings prove otherwise. In connection with its fraud claims, AECOM alleges that

> PG&E required AECOM to design and construct a project which was much more expensive than that represented in the RFP and ***PG&E should be required to pay for the services and value it received***.

Countercl., ¶¶ 137, 151 (emphasis added); *see also* ¶ 135. This is the same harm AECOM alleges it suffered because of PG&E's alleged breaches of its contractual obligations. *See*, *e.g.*, *Id*. at ¶¶ 102, 109, 111; *Foster Poultry Farms*, 868 F.Supp.2d at 993 (fraudulent inducement claim barred because "the damages sought by Foster Farms' fraud claim are the same as those arising from the alleged breach of contract").

*Third*, AECOM argues that the underlying conduct giving rise to its contract and fraud claims is distinct. Opp'n at 13. Not so. AECOM's fraud and contract claims are both based upon the same purported representations made by PG&E concerning the Project's pre-bid design. See Op. Br. at 18-20. For example, in its contract claim for breach of implied warranty, AECOM alleges it relied on PG&E's representation that "it would provide a 30% design for the Project and that only a minimum amount of changes to the design should be expected." Countercl., ¶¶ 107-108; *see Windham at Carmel Mountain Ranch Assn. v. Superior Court*, 109 Cal.App.4th 1162,

1168 (2003) ("'A warranty is a contractual term concerning some aspect of the sale, such as title to the goods, or their quality or quantity'"); *State Farm General Ins. Co. v. Oetiker, Inc.*, 58 Cal.App.5th 940, 953 (2020).[6]

Accordingly, the economic loss rule bars AECOM's fraud claims because they are based on the same facts and seek the same damages as its contract claims.

### C. AECOM's Quantum Meruit Claim Should Be Dismissed With Prejudice.

AECOM argues its Quantum Meruit claim is not subject to dismissal because it: (i) properly plead the inconsistent, alternative theories of breach of contract and contract abandonment; and (ii) sufficiently alleged that both parties abandoned the EPC Agreement. Opp'n at 15-20. AECOM's arguments lack merit.

#### 1. The Allegations in the Second Amened Counterclaim and Judicially Noticeable Facts Prove the Parties Did Not Intend to Abandon the EPC Agreement.

AECOM argues that its Quantum Meruit claim is not subject to dismissal because it sufficiently alleged that "both parties abandoned the contract by disregarding the EPC Agreement's change order process." Opp'n at 17. The record proves otherwise.

Under California Law, the intent to abandon a contract must be demonstrated by both parties in a "positive" and "unequivocal" way. *Pennel v. Pond Union Sch. Dist.*, 29 Cal.App.3d 832, 838 (1973). In the construction context, "private parties may impliedly abandon a contract when they fail to follow change order procedures and when the final product differs substantially from the original." *Amelco Electric v. City of Thousand Oaks*, 27 Cal.4th 228, 235 (2002).

**The Parties Executed Six Change Orders During the Course of the Project**. AECOM argues "PG&E's contentions about the execution of change orders is a highly inaccurate[.]" Opp'n at 19. The record proves otherwise.

---

[6] AECOM's efforts to distinguish *Linde, LLC v. Valley Protein, LLC*, No. 1:16-cv-00527-DAD-EPG, 2019 U.S. Dist. LEXIS 115730 (E.D. Cal. July 11, 2019) and *JMP Sec*. are also unpersuasive. For example, in *Linde*, Valley Protein alleged that "Linde's representations and promises induced Valley Protein to enter into the 2011 Agreement, and that absent those representations, Valley Protein would not have done so." 2019 U.S. Dist. LEXIS 115730 at *47. Here, AECOM argues in its Opposition that it "would not have agreed to [enter into the EPC Agreement] but for PG&E's misrepresentations." Opp'n at 13.

Pursuant to EPC Agreement's change order provisions, the parties negotiated seven change orders and executed six over the course of the Project. Khairi Decl., Exs. D-I; Countercl., ¶ 86. The last change order was executed only 6 months before AECOM alleges it achieved substantial completion of the Project. Khairi Decl., Ex. I; Countercl., ¶ 93. Each change order provides:

> Contractor shall perform all Work under this Contract, as amended by this Change Order, ***pursuant to and in accordance with the terms and conditions of the Contract***.
>
> [¶]
>
> This Change Order represents full and final consideration to the changes described herein, including, but not limited to all adjustments to price, schedule, guaranteed dates and performance criteria. ***All other terms and conditions shall remain unchanged and in full force and effect***.

Khairi Decl., Exs. D-I (emphasis added). Any claim by AECOM that PG&E "mischaracterized" the change orders is belied by the language of the change orders themselves. *Id.*[7]

**The Project as Constructed Is Substantially the Same as Designed**. In its opening brief, PG&E argued that AECOM failed to sufficiently specify how the final Project was "significantly and materially different" than the one proposed in the EPC Agreement. Op. Br. at 28. AECOM failed to address PG&E's argument, essentially conceding its merit.

PG&E asks that the Court dismiss AECOM's Quantum Meruit claim because the record establishes the parties complied with the EPC Agreement's change order provisions and the Project, as constructed, is substantially the same as designed. *Amelco*, 27 Cal.4th at 235

**2.  AECOM Cannot Plead Its Quantum Meruit Claim in the Alternative Under Rule 8(d)(3).**

AECOM also argues that: (i) it is a mere "technicality" that did not properly plead its Quantum Meruit claim in the alternative under Rule 8(d); and (ii) PG&E "manufacture[d] inconsistencies" to defeat its claim. Opp'n at 15, 17. AECOM's arguments lack merit.

---

[7] In an attempt to justify its abandonment theory, AECOM cites to *Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal.App.3d 151 (1971) and *HDR Envtl. v. Deason*, No. 15cv1402 JAH (NLS), 2018 U.S. Dist. LEXIS 54958 (S.D. Cal. Mar. 28, 2018). Unlike the circumstances presented here, neither case involved allegations that the contract was abandoned despite change orders being executed.

As explained PG&E in its opening brief, the rule that a party may generally "state as many separate claims or defenses as it has, regardless of consistency" under Rule 8(d)(3) is subject to several important limitations. Op. Br. at 25-26. For example, inconsistent allegations are not "pleaded in the alternative" when "expressly incorporated into each cause of action." *Maloney v. Scottsdale Ins. Co.*, 256 F.App'x 29, 31 (9th Cir. 2007). Additionally, a "'pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'" *Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc.*, 252 F.App'x 123, 126 (9th Cir. 2007). Here, AECOM's failure to comply with Rule 8(d) was not a mere "technicality."

**AECOM's Abandonment Claim Incorporates Contradictory Allegations.** AECOM argues that PG&E "manufacture[d] inconsistencies by misquoting and misrepresenting AECOM's allegations." Opp'n at 17. The allegations themselves prove otherwise.

AECOM's Quantum Meruit claim expressly incorporates the proceeding 153 Paragraphs of its Second Amended Counterclaim, many of which contradict its claim that it abandoned the EPC Agreement. Countercl., ¶ 154. The Court, in its prior Order dismissing AECOM's Quantum Meruit claim, also noted that "many of AECOM's other causes of action seek to enforce the EPC Agreement against PG&E ***on the theory that AECOM complied with the contract and PG&E did not***." Dkt No. 64 at 6 (emphasis added).

Still, AECOM argues there are no inconsistencies. For example, AECOM argues that PG&E took the following allegation of the Second Amended Counterclaim out of context
> For the duration of the Project, AECOM consistently provided PG&E with notice of the added costs and delays resulting from PG&E's design changes, increases to the scope of work, interference with the work, and deviations from the EPC Agreement. Indeed, AECOM submitted nearly 300 RFIs and over 150 proposed change orders ("PCOs") to PG&E.

Opp'n at 18, citing Countercl., ¶ 83. AECOM claims it wasn't alleging that it complied with the EPC Agreement by submitting RFIs and PCOs, but that it "notified PG&E of 'deviations from the EPC Agreement.'" Opp'n at 18. This is a distinction without a difference. AECOM is alleging that it notified PG&E, via RFPs and PCOs, of changed conditions *as required by the terms of the EPC Agreement*. *See* Khairi Decl., Ex. B at Arts. 8.1-8.3

Moreover, AECOM also alleges that it achieved: (i) "substantial completion of the Project" "under the EPC Agreement" on June 6, 2018, and (ii) "final completion" on January 11, 2019. Countercl., ¶¶ 93-94. AECOM does not dispute that these allegations are inconsistent with its abandonment theory. Nor could it. AECOM simply could not have both abandoned the EPC Agreement and completed the Project pursuant to the terms of the EPC Agreement.

**AECOM Knows It Did Not Abandon the EPC Agreement.** AECOM failed to address the Ninth Circuit's decision in *Total Coverage*, which provides a "'pleader may assert contradictory statements of fact [under Rule 8(d)] only when legitimately in doubt about the facts in question.'" 252 F.App'x at 126. As addressed, the record establishes that AECOM cannot still legitimately be in doubt about whether it "positively" and "unequivocally" intended to abandon the EPC Agreement. *Pennel,* 29 Cal.App.3d at 838; Op. Br. at 26-27.

**AECOM's Suggested Amendment Does Not Cure its Pleading Defect.** AECOM asks for leave to amend its Quantum Meruit claim so it "incorporates only paragraphs 1-94 and 127-153 rather than 1–153." Opp'n at 18. AECOM's requested amendment would not cure the inconsistent allegations found in Paragraphs 1-94, as highlighted above. For these reasons, PG&E asks that the Court dismiss AECOM's Quantum Meruit claim with prejudice.

**D. AECOM's Implied Contractual Indemnity and Contribution/Apportionment Claims Should Be Dismissed With Prejudice.**

AECOM argues that its equitable indemnity claims are not subject to dismissal because the law does not require PG&E and AECOM to owe JH Kelly any joint legal duty sounding in tort. Opp'n at 20-23. Instead, AECOM claims it is sufficient to allege obligations to the injured party "aris[ing] out of a chain of contractual privity." Opp'n at 21.[8] AECOM's arguments lack merit.

**1. AECOM and PG&E Must Owe JH Kelly a Joint Legal Obligation Sounding in Tort.**

AECOM offers a strained interpretation of the Supreme Court's decision *Prince v. Pacific Gas & Electric Co.*, 45 Cal.4th 1151 (2009) to conclude that "chains of contractual privity . . . must

---

[8] AECOM cites to a number of other California Court of Appeal cases predating the *Prince* decision to support its position. *See* Opp'n Br. at 21. These cases are inapplicable for the reasons previously discussed. *See* Dkt. No. 63.

give rise to the 'joint legal obligation' described in *Prince*." Opp'n at 22.  Stated more simply, AECOM believes that a joint legal obligation to JH Kelly exists where PG&E breaches its contract with AECOM, which causes AECOM to breach its contract with JH Kelly.  AECOM's argument is contrary to California law and has been rejected by the Northern District on several occasions.

**Equitable Indemnity Requires a Joint Obligation Sounding in Tort**.  In its prior order dismissing AECOM's equitable indemnity claims, this Court explained that *Prince* "has directly addressed the question 'whether or not a requirement of a joint legal obligation also applies when implied contractual indemnity is at issue' and '"conclude[d] the answer is yes."'"  Dkt. No. 64 at 7. This Court further explained that the purpose of the Supreme Court's holding was to "***warn[ ] against attempts to transform a breach of contract claim into a tort claim***[.]" *Id*. (emphasis added).

Consistent with the above, California Courts of Appeal have routinely held that the doctrine of equitable indemnity "***applies only among defendants who are jointly and severally liable to the plaintiff***." *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal.App.4th 848, 852 (2004) (emphasis added).  "[W]ith limited exception, there ***must be some basis for tort liability against the proposed indemnitor***" (here, PG&E).  *Id*. (emphasis added).  A party "cannot seek equitable indemnity [ ] for damages caused by the breach of its own contract." *State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal.App.4th 1227, 1229 (2015), citing *Stop Loss*, 143 Cal.App.4th at 1041-1044.  In *Stop Loss*, the First District Court of Appeal explained that equitable apportionment of contract damages is not permitted in California:

> [a]lthough there may be good reason to [extend equitable indemnification to contractual defendants], any fundamental change should come from our Supreme Court, or from the Legislature.  Absent such a change, I agree with the majority that we must adhere to the rule that equitable indemnity may be obtained only from one who is jointly and severally liable to the injured party based on the commission of a tort.

143 Cal.App.4th at 1054-55.  Here, AECOM's equitable indemnity claims should be dismissed as an improper attempt to shift responsibility to PG&E for JH Kelly's contract damages.

**The Northern District Has Confirmed Contractual Liability is Insufficient.**  The Northern District in *Underwriters* recently confirmed that "contractual liability is not sufficient under California law to plead equitable indemnity."  491 F.Supp.3d 518.  This is because

"California law does not permit equitable apportionment of damages for breach of contract . . . ." *Id.*, citing *Stop Loss*, 143 Cal.App.4th at 1041 n.2.

In *Underwriters*, defendants Abaxis and Zoetis' countersued TCSL and CHR for equitable indemnity and contribution. Their claims were "based on the theory that CHR and TSCL were jointly liable with Abaxis and Zoetis to plaintiff for the breach of contract claim asserted against only Abaxis and Zoetis." *Underwriters*, 491 F.Supp.3d at 512. In opposition to CHR's second motion to dismiss, Abaxis and Zoetis argued that "an indemnitee sued in contract can assert claims for equitable indemnity." *Id.* at 517 (emphasis in original).

The Northern District disagreed with Abaxis and Zoetis a second time. Specifically, after surveying relevant California Appellate and District Court case law, the Court found that "contractual liability is not sufficient under California law to plead equitable indemnity." *Id.* at 517-519. Instead, the Court determined that doctrine of equitable indemnity "applies only among defendants who are jointly and severally liable to the plaintiff." *Id.* at 518, citing *BFGC*, 119 Cal.App.4th at 852. Accordingly, the Northern District dismissed Abaxis and Zoetis' equitable indemnity claim *with prejudice* because "[plaintiff] and Abaxis were in contractual privity before the events in question took place and that relationship governs the rights and duties of the parties." *Id.* at 519.[9] Likewise, AECOM's separate contractual relationships with JH Kelly and PG&E governs the parties' rights and duties.

**The Cases Cited by AECOM Are Inapposite.** AECOM cites to *Am. Licorice Co. v. Total Sweeteners, Inc.*, 2014 U.S. Dist. LEXIS 27705, at *19 (N.D. Cal. Mar. 4, 2014) and *Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 U.S. Dist. LEXIS 117524, at *1 (N.D. Cal. Aug. 22, 2014) to support its position. Neither case is dispositive. In *Am. Licorice Co.*, Imperial filed a motion to dismiss, "assert[ing] that Total Sweeteners ha[d] not plausibly alleged Equitable/Implied Indemnity, **but [gave] no reason why**." *Id.* at *15 (emphasis added). Thus, without the benefit of proper briefing, the Northern District summarily denied Imperial's motion. In *Square 1 Bank*, the

---

[9] The Northern District also dismissed Abaxis and Zoetis' contribution claim without prejudice on the grounds that "contribution requires defendants and CHR to be joint tortfeasors, which for the reasons previously discussed, they are not." *Underwriters*, 491 F.Supp.3d at 510.

Northern District, relying on *Am. Licorice Co.*, denied defendants' motion to dismiss Lo's first claim for equitable indemnity merely because it was "'[d]istinct from an express contractual indemnity claim.'" 2014 U.S. Dist. LEXIS 117524, at *11. In contrast, this Court has had the benefit of extensive briefing as to the merit (or lack thereof) of AECOM's equitable indemnity claims. PG&E asks that AECOM's claims be dismissed because they are based on "chains of contractual privity" (Opp'n at 22) and AECOM "cannot seek equitable indemnity [ ] for damages caused by the breach of its own contract" (*State Ready Mix,* 232 Cal.App.4th at 1229).

**2. As a Matter of Law, PG&E Did Not Owe JH Kelly Any Legal Obligation.**

Assuming, *arguendo*, that a claim for equitable indemnity may be based on nothing more than a breach of a contractual obligation, AECOM's claims would still fail because PG&E did not owe JH Kelly any legal obligation based in contract or otherwise.

**i. There Existed No Relationship Between PG&E and JH Kelly Sufficient to Give Rise to a Duty on PG&E's Part.**

"Duty [ ] is a legal issue and must be determined by the court." *Ratcliff Architects v. Vanir Construction Management, Inc.*, 88 Cal.App.4th 595, 604 (2001). Court have found that a duty "may arise through statute, contract, the general character of the activity, or the relationship between the parties." *Id*. Under the circumstances presented here, there existed no relationship between JH Kelly and PG&E giving rise to any duty on PG&E's part.

**No Contractual Duty**. The EPC Agreement is between AECOM and PG&E. PG&E did not contract with JH Kelly concerning the Project. Countercl., ¶ 9. Furthermore, the provisions of the EPC Agreement "make the intention of the parties clear: they intended to limit the rights under the contract to the parties to the contract." *Ratcliff*, 88 Cal.App.4th at 603. The EPC Agreement specifically provides that "Nothing in the Contract shall create any contractual relations between a Subcontractor and PG&E." Khairi Decl., at Ex. B, Art. B-3.2.[10]

---

[10] In the construction context, California Courts have also routinely found that an owner (here, PG&E) does not owe a subcontractor (here, JH Kelly) a legal obligation, absent privity of contract. *See*, e.g., *Neptune Gunite Co. v. Monroe Enterprises, Inc.*, 229 Cal.App.2d 439, 445 (1964) (a subcontractor generally "has no valid claim against anyone (such as owner [ ]) with whom he has no contractual relationship"); *Rogers v. Whitson*, 228 Cal.App.2d 662, 673-74 (1964); *Powers Regulator Co. v. Seaboard Surety Co.*, 204 Cal.App.2d 338, 345-346 (1962).

**No Statutory Duty**. AECOM does not allege that PG&E owed any statutory duty to JH Kelly (Nor is PG&E aware of any relevant statute).

**No Other Relationship**. There existed no other relationship between PG&E and JH Kelly which could have given rise to a duty on PG&E's part. For example, as to PG&E's purported duty to disclose to JH Kelly, AECOM prohibited JH Kelly from communicating with PG&E concerning the Project. Dkt No. 18 at ¶ 1(g); Ex. A at § 2.1.3 ("Subcontractor shall only communicate with Owner, Design-Builder's Design Consultant or separate contractors of Design-Builder or Owner *through Design Builder*" [emphasis added]).

### ii. The Cases Cited by AECOM Concern Different Factual Circumstances.

AECOM argues that "both federal and state courts in California have found that such duties exist in analogous circumstances." Opp'n at 24. In support of its position, AECOM cites to *Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F.Supp.3d 1117 (N.D. Cal. 2015) and *M. Miller Co. v. Dames & Moore*, 198 Cal.App.2d 305 (1961). In both cases, the question presented was whether an engineer owed a duty of care to a contractor under tort principles. *Apex*, 119 F.Supp.3d at 1126; *M. Miller*, 198 Cal.App.3d at 311. Here, JH Kelly has not sued PG&E in tort or alleged that PG&E owed it any duty whatsoever. Nor could it under the circumstances presented here. Accordingly, PG&E asks that the Court dismiss AECOM's equitable indemnity claims with prejudice.

### CONCLUSION

For the reasons stated above and in PG&E's opening brief, PG&E asks that this Court grant its Rule 15(a) Motion to Strike and Rule 12(b)(6) Motion to Dismiss as to AECOM's Second Amended Counterclaim in full.

Respectfully submitted,

Dated: October 4, 2021

RALLS GRUBER & NIECE LLP

By: _____
AARON R. GRUBER

Attorneys for
PACIFIC GAS & ELECTRIC COMPANY