UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JH KELLY, LLC, | Case No. 20-cv-05381-HSG |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS JH KELLY, LLC'S SECOND AMENDED COMPLAINT** |
| v. | |
| AECOM TECHNICAL SERVICES, INC.., et al., | Re: Dkt. No. 98 |
| Defendants. | |

Before the Court is Defendant and Counter-Claimant AECOM Technical Services, Inc.'s ("AECOM") motion to dismiss certain claims in JH Kelly LLC's ("JH Kelly") Second Amended Complaint.  Dkt. No. 98 ("Mot.").  The motion is fully briefed.  *See* Dkt. Nos. 105 ("Opp.") and 110 ("Reply").  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART.**

## I.    BACKGROUND

This construction dispute arises out of the Burney K2 Replacement Project ("Project"), which involved the replacement of a natural gas compressor unit and various upgrades at the compressor station near Burnley, California.  Dkt. No. 102 (JH Kelly's Second Amended Complaint or "SAC") ¶ 1.  The Burney Compressor Station is part of Pacific Gas & Electric Company's ("PG&E") natural gas distribution system.  *Id.* ¶ 11.  That system supplies natural gas to the surrounding area and allows compressed gas to travel through pipelines from Oregon to consumers in California.  *Id.*  In all, PG&E's natural gas distribution system provides service to around 4.2 million customers from Bakersfield, California to the Oregon border.  *Id.*

1

2

3

4

5

On February 11, 2016, AECOM entered into an agreement (the "EPC Agreement") with PG&E for the Project. *Id.* ¶ 19. Under the EPC Agreement, AECOM agreed to act as the design-builder and prime contractor for the Project. *Id.* On October 21, 2016, AECOM and Kelly entered into an agreement (the "Subcontract") for the construction portion of the work. *Id.* ¶¶ 25-27.

6

7

8

9

10

11

12

13

14

15

16

17

Various issues on the Project led to disputes between JH Kelly, AECOM and PG&E, and JH Kelly filed the First Amended Complaint on January 29, 2021. Dkt. No. 18. PG&E moved to dismiss JH Kelly's First Amended Complaint and prevailed as to JH Kelly's first claim for foreclosure of mechanic's lien. Dkt Nos. 24, 56. On March 8, 2021, AECOM filed its First Amended Counterclaim against PG&E and JH Kelly. Dkt. No. 38. PG&E moved to dismiss AECOM's First Amended Counterclaim, including AECOM's quantum meruit claim based on an abandonment theory. Dkt. No. 48. On June 28, 2021, the Court granted PG&E's Motion to Dismiss as to AECOM's quantum meruit claim based on an abandonment theory but gave AECOM leave to amend its claim. *See* Dkt. No. 64. AECOM then filed its Second Amended Counterclaim on July 19, 2021. Dkt. No. 65. AECOM and PG&E reached a settlement on October 18, 2021 and ultimately agreed to dismiss their claims against one another with prejudice. *See* Dkt. Nos. 93, 127.

18

19

20

21

22

In light of the Court's order dismissing AECOM's original quantum meruit claim based on an abandonment theory, JH Kelly sought and was granted leave to also amend its First Amended Complaint, which also stated a quantum meruit abandonment claim. *See* Dkt. Nos. 82, 100. JH Kelly then filed the operative SAC, which is the subject of AECOM's present motion to dismiss. Dkt. No. 102.

23

## II.   LEGAL STANDARD

24

25

26

27

28

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

United States District Court
Northern District of California

1    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

2    12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

3    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

4    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

5    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

7    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

8    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

9    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

10   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

11   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

12        If the court concludes that a 12(b)(6) motion should be granted, the "court should grant

13   leave to amend even if no request to amend the pleading was made, unless it determines that the

14   pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

15   1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

16   **III.    DISCUSSION**

17        JH Kelly's SAC alleges eight causes of action against AECOM.  Dkt. No. 102.  AECOM

18   moves to dismiss the SAC's (1) Fifth Claim for Breach of the Implied Covenant of Good Faith

19   and Fair Dealing; (2) Sixth Claim for Quantum Meruit/Abandonment of Contract; and (3) Eighth

20   Claim for Quantum Meruit/Reasonable Value.  *See* Mot. at 6.

21        As an initial matter, JH Kelly contends that the Court should deny AECOM's motion to

22   dismiss its claim for breach of the implied covenant of good faith and fair dealing as untimely.

23   Opp. at 19-20.  JH Kelly argues that AECOM raised its motion after the dispositive motion

24   deadline even though the claim is "materially unchanged" from previous versions of JH Kelly's

25   complaint.  *Id.*  The Court agrees that AECOM waived its right to bring a 12(b)(6) challenge to JH

26   Kelly's claims for implied covenant of good faith and fair dealing and quantum meruit for

27   reasonable value because AECOM previously answered JH Kelly's First Amended Complaint,

28   which contained identical claims.  *See* Dkt. Nos. 18 ¶¶ 73-76, 88-90; 23; *see also* Fed. R. Civ. P.

United States District Court
Northern District of California

12(b)(6); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6) motion must be made *before* the responsive pleading . . . . Here, the Defendants filed their motion to dismiss *after* filing their answer.") (emphases added).

Perhaps recognizing this waiver, AECOM asks the Court to consider its Motion as a motion for judgment on the pleadings.[1]  Mot. at 15.  Such a motion may be brought after the pleadings are closed but only if it is "early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c). Because AECOM's motion may narrow the issues for trial, and because it can be addressed without delaying trial, the Court construes it as a motion for judgment on the pleadings and finds good cause to address its merits.

### A.  Implied Covenant of Good Faith and Fair Dealing

AECOM first moves to dismiss JH Kelly's claim for breach of the covenant of good faith and fair dealing on the ground that it is duplicative of the breach of contract claim.  *See* Mot. at 13-14.  The Court agrees that JH Kelly's implied covenant claim, at least as currently pled, is superfluous.

Every contract contains an implied-in-law covenant that imposes on each party a "duty of good faith and fair dealing" in the performance and enforcement of the contract.  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683, 765 P.2d 373, 389 (1988).  The California Supreme Court has held that "where breach of an actual term [of the contract] is alleged, a separate implied covenant claim, based on the same breach, is superfluous."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327, 8 P.3d 1089, 1095 (2000).  At the same time, however, the Supreme Court explained that an implied covenant claim may not allege a breach of obligations beyond the contract's express terms.  *Id.*

At least one California state court has read the California Supreme Court's decision in *Guz* to preclude any possibility of considering breach of contract and implied covenant of good dealing claims as separate and distinct.  *See Smith v. Int'l Bhd. of Elec. Workers*, 109 Cal. App. 4th 1637,

---

[1] Oddly, AECOM asks the Court for judgment with respect to JH Kelly's *First* Amended Complaint.  *See* Mot. at 15.  The Court finds no basis for doing so because that complaint is no longer the operative complaint in this action.

1645 n. 3, 1 Cal. Rptr. 3d 374, 378 (2003).  But several federal district courts have read *Guz* to allow simultaneous breach of contract and implied covenant claims when the plaintiff alleges that the defendant exercised a right under the contract in bad faith to frustrate the contract's benefits. *See, e.g.*, *Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *5 (N.D. Cal. Nov. 1, 2010); *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004); *Lamke v. Sunstate Equip. Co.*, LLC, 387 F. Supp. 2d 1044, 1048 (N.D. Cal. 2004); *see also Guz*, 24 Cal. 4th at 318 n.18 ("We do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts . . . . [T]he covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits.") (alterations omitted).

AECOM argues that JH Kelly's claim for breach of the implied covenant should be disregarded as superfluous because it "relies on the same alleged facts and seeks the same damages claimed in a contract claim." Mot. at 14.  The Court is not entirely convinced by AECOM's argument.  As the *Celador* court noted, courts analyzing whether a claim for breach of the implied covenant is duplicative of a breach of contract claim "should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought" because only a limited set of circumstances can give rise to a contract lawsuit, and the same remedies are available for both claims.  *Celador*, 347 F. Supp. 2d at 853.  In other words, a finding that the claims involve the same set of facts and seek the same remedy is a necessary but not sufficient condition of a superfluous implied covenant claim.

Rather, the fundamental problem with JH Kelly's SAC is that it does not sufficiently distinguish its implied covenant claim from its breach of contract claim.  The SAC does little more than allege that AECOM breached the implied covenant by the same course of conduct that underlies JH Kelly's claim for breach of contract.[2]  *Compare* SAC ¶ 55 *with* ¶ 70.  These

---

[2] Specifically, the SAC alleges the following:

> As alleged herein, AECOM breached the covenant of good faith and fair dealing by, among other things, its failure and refusal to timely and properly manage and administer the Project; its failure to address and respond to design issues; its refusal to properly and timely

allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1377, 272 Cal. Rptr. 387 (1990). The Court accordingly finds that JH Kelly's fifth claim for breach of the implied covenant "may be disregarded as superfluous" and **GRANTS** AECOM's motion to dismiss as to that claim. *Id.*

      **B.**   **Quantum Meruit/Abandonment of Contract**

     AECOM moves to dismiss JH Kelly's Sixth Claim for Quantum Meruit, which is based on allegations that AECOM abandoned the Subcontract by subsequently demanding a materially different scope of work. *See* SAC ¶¶ 74-8. AECOM similarly alleged in its counterclaim that PG&E abandoned the EPC Agreement by demanding excessive changes to the Project. *See* Dkt. No. 38 ¶¶ 135-143. The Court dismissed AECOM's quantum meruit claim because AECOM failed to allege, as required, that *both* parties agreed that the contract was terminated and of no further force and effect. *See* Dkt. No. 64 at 6; *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 236 (2002) ("[A]bandonment requires a finding that *both* parties intended to disregard the contract.") (alteration and emphasis in original). AECOM now contends that JH Kelly's Sixth Claim for Quantum Meruit fails for the same reason. *See* Mot. at 9-10. The Court disagrees.

     Under the abandonment doctrine, a construction contract is deemed "abandoned" once the parties (1) fail to follow the contract's change order process, and (2) when the final project is "materially different" from the terms of the original contract. [3] *Amelco Elec.*, 27 Cal. 4th at 235,

_____

respond to CORs; its refusal to pay Kelly for both its original and extra work that was directed by AECOM; its refusal to provide Kelly with timely updates regarding changes to the Project Schedule, including, but not limited to, changes to the delivery dates for the IFC drawings, and the delivery dates for materials; its failure to pay even undisputed amounts owing to Kelly in an effort to financially burden Kelly and in an attempt to interfere with Kelly's relationships with its subcontractors; and its general failure and refusal to negotiate or deal in good faith with Kelly.

SAC ¶ 70.

[3] A construction contract with a firm price often includes a "change order" provision, which creates a process for compensation for work performed beyond the scope of the contract. *See Haskell Corp. v. Conoco Phillips Co.*, No. A124446, 2012 WL 845398, at *8 (Cal. Ct. App. Mar.

1    239.  "Abandonment requires a finding that both parties intended to disregard the contract."  *Id.* at

2    236 (citations and internal punctuation omitted).  That is, abandonment occurs "only where both

3    contracting parties agree that the contract is terminated and of no further force and effect."  *Ben–*

4    *Zvi v. Edmar Co.*, 40 Cal. App. 4th 468, 474 (1995) (internal punctuation omitted).

5            There is no dispute that JH Kelly's SAC at least alleges that the final project was

6    "materially different" from the terms of the Subcontract.  *See* SAC ¶ 43 (detailing how "Kelly was

7    forced to perform massive additional, changed and re-sequenced work, forced to work for a far

8    longer period than planned, and forced to incur substantial damages as a result.").  The only

9    question is whether the SAC plausibly alleges that both parties intended to abandon the

10   Subcontract's change order process.

11           As to AECOM, the SAC alleges that of 273 total change order requests ultimately issued

12   by JH Kelly to AECOM, there are 199—valued at over $9.5 million—that are "unresolved" by

13   AECOM and are "still pending years after the Project was completed."  SAC ¶ 44.  The SAC

14   further alleges that AECOM never responded to $7,073,527 worth of requests.  *Id.*  Accepting

15   these factual allegations as true and construing them in the light most favorable to JH Kelly, as the

16   Court must at this stage, the Court can reasonably infer that AECOM never resolved millions of

17   dollars' worth of change order requests because it ultimately abandoned the Subcontract's change

18   order process.  *Manzarek*, 519 F.3d at 1031.

19           AECOM's primary argument to the contrary is that the SAC itself acknowledges that

20   AECOM provided a response to 205 of JH Kelly's 273 requests—96 that AECOM reduced in

21   value, 9 that AECOM rejected, and 26 that AECOM approved (but did not pay).  *See* Mot. at 8-9.

22   If AECOM intended to abandon the contract, it argues, it would make no sense for it to address

23   over 200 requests.  *See* Reply at 9.  But the fact that AECOM responded to or executed *some*

24   change order requests does not render JH Kelly's quantum meruit claim under the abandonment

25   theory fundamentally implausible as a matter of law at the pleading stage—particularly since the

26   SAC alleges that AECOM *ultimately* never responded to several million dollars' worth of

27

28   14, 2012)

United States District Court
Northern District of California

requests.  SAC ¶ 44; *see also C. Norman Peterson Co. v. Container Corp. of Am.*, 172 Cal. App. 3d 628, 641, 218 Cal. Rptr. 592, 599 (1985) (finding abandonment where the requirement for written change orders was only "completely abandoned" during the project's critical shutdown stage).  While evidence that AECOM addressed over 200 requests may undermine Plaintiff's abandonment theory at trial, the Court does not weigh the evidence at this stage in the litigation. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").  The Court therefore finds that the SAC plausibly alleges that AECOM abandoned the Subcontract's change order process.

As to JH Kelly, the SAC alleges that, as a result of AECOM's abandonment, JH Kelly was also forced to abandon the Subcontract's change order process.  SAC ¶¶ 77-78.  The SAC further alleges that, based on JH Kelly's understanding that the Project, as materially changed, would necessarily proceed on a quantum meruit basis, JH Kelly nevertheless completed the work despite the lack of payment.  *Id.*

AECOM contends that these allegations are inconsistent with other parts of the SAC where JH Kelly alleges that it "performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Subcontract," "timely submitted CORs for all of the foregoing additional work, changed work, and resulting damages," and complied with its obligations to ensure that the project was completed.  Mot. at 11.

But the Court does not find these allegations inherently contradictory.  To begin with, JH Kelly's allegation that it timely submitted change order requests is entirely consistent with its allegation that, due to AECOM's failure to resolve those requests, JH Kelly subsequently abandoned the Subcontract's change order process and completed the work despite the lack of payment.  *See* SAC ¶¶ 77-78.

Nor is it inconsistent for JH Kelly to maintain that it both ultimately abandoned the change order process and complied with its obligations under the Subcontract to ensure that the project was completed.  *Id.*  California courts have made clear that even when a construction contract is

8

deemed abandoned, the contractor may properly opt to complete the work and recover in quantum meruit afterwards. *Peterson*, 172 Cal. App. 3d at 640; *see also Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151, 156-57, 92 Cal. Rptr. 120, 123 (1971) ("Performing the work prescribed by the contract and the changes does not preclude the possibility that the labor and materials furnished were outside the contemplation of the parties when the bid was made and the contract signed."). Under these circumstances, the terms of the written contract are deemed abandoned, but the work is not. *Peterson*, 172 Cal. App. 3d at 640. JH Kelly's SAC advances this theory and therefore plausibly alleges that JH Kelly abandoned the Subcontract's change order process. *See* SAC ¶¶ 77-78.

Because the SAC plausibly alleges that both parties ultimately failed to follow the Subcontract's change order process, and that the final project is "materially different" from the terms of the original contract, the Court finds that JH Kelly has plausibly stated a quantum meruit abandonment claim and **DENIES** AECOM's motion to dismiss as to that claim.

### C.   Quantum Meruit/Reasonable Value

Finally, AECOM contends that JH Kelly's Eighth Claim for Quantum Meruit for Reasonable Value should be dismissed because it is unavailable as a matter of law where, as here, a valid agreement exists between the parties. *See* Mot. at 12. The Court agrees.

Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, "implicitly missing contractual terms." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1419, 49 Cal. Rptr. 2d 191 (1996). But contractual terms are not "implicitly missing" when the parties have agreed on express terms regarding that subject. *Id.* Put differently, "[a] quantum meruit analysis cannot supply 'missing' terms that are not missing." *Id.* It is therefore "well settled" that there is "no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." *Id.*; *see also Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights.") (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal.*, Inc., 94 Cal. App. 4th 151, 172 (2001)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    AECOM contends that because the Subcontract specifically contains provisions under

2    which JH Kelly can seek additional compensation for additional work, changed work, and

3    resulting damages, JH Kelly's claim to seek such compensation through quasi-contract fails to

4    state a claim upon which relief can be granted.  *See* Mot. at 13.  In response, JH Kelly points to

5    California case law holding that a party "can pursue and even recover on both claims for breach of

6    contract and for quantum meruit *on an abandonment theory*."  Opp. at 16 (emphasis added).

7        That is true, but irrelevant.[4]  JH Kelly's claim for quantum meruit based on an

8    abandonment theory is its sixth cause of action.  SAC ¶¶ 72-78.  JH Kelly's rebuttal does not

9    address AECOM's argument that JH Kelly cannot maintain its eighth cause of action, which is a

10   claim for quantum meruit for reasonable value.  *Id.* ¶¶ 83-85.

11       The Court agrees with AECOM that the Subcontract governs JH Kelly's claims for

12   compensation against AECOM.  *See, e.g.*, SAC ¶¶ 25, 33, 39, 44.   And while California law

13   authorizes quantum meruit despite the existence of an applicable contractual provision when the

14   underlying contract was procured by fraud or is otherwise unenforceable, ineffective, or expired,

15   *see McBride v. Boughton*, 123 Cal. App. 4th 379, 388, 20 Cal. Rptr. 3d 115, 121-22 (2004);

16   *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000), the SAC

17   does not allege that any of those exceptions apply here.  *See* SAC ¶¶ 83-85.  Accordingly, the

18   Court **GRANTS** AECOM's motion to dismiss as to JH Kelly's Eighth Claim for Quantum Meruit

19   for Reasonable Value.

20   **IV.    CONCLUSION**

21       The Court **GRANTS IN PART and DENIES IN PART** AECOM's motion to dismiss JH

22   Kelly's SAC.  Specifically, the motion is granted as to JH Kelly's Fifth Claim for Breach of the

23   Implied Covenant of Good Faith and Fair Dealing and Eighth Claim for Quantum

24   Meruit/Reasonable Value.  The Court will address whether JH Kelly will be given leave to amend

25   these claims at the Pretrial Conference.  The motion is denied as to JH Kelly's Sixth Claim for

26

27   ───────────────

28   [4] *See Amelco Elec.*, 27 Cal. 4th at 237 ("[W]e conclude the trial court could properly find both a
     breach of the contract and a subsequent abandonment of the contract brought about by the
     breach.").

1   Quantum Meruit for Abandonment of Contract.

2       **IT IS SO ORDERED.**

3   Dated:  1/21/2022

4   _____

5   HAYWOOD S. GILLIAM, JR.
    United States District Judge

United States District Court
Northern District of California