1  Marion T. Hack (State Bar No. 179216)
   marion.hack@troutman.com
2  Luke N. Eaton (State Bar No. 280387)
   luke.eaton@troutman.com
3  William Taylor (*admitted pro hac vice*)
   william.taylor@troutman.com
4  **TROUTMAN PEPPER HAMILTON SANDERS LLP**
5  350 South Grand Avenue, Suite 3400
   Los Angeles, CA 90071
6  Telephone:  213.928.9800
   Facsimile:  213.928.9850
7

8  Attorneys for
   AECOM Technical Services. Inc.
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                              OAKLAND DIVISION

13 | In Re | Case No. 4:20-cv-05381-HSG (Lead Case) |
|---|---|
14 | PG&E CORPORATION | (Reference withdrawn from Bankruptcy Case No. 19-30088, Adv. Proc. No. 20-03019 and Adv. Proc. No. 19-03008) |
15 | v. | |
16 | AECOM TECHNICAL SERVICES, INC. | (Consolidated with Case No. 3:20-cv-08463-EMC) |
17 | | |
18 | | **AECOM TECHNICAL SERVICES, INC.'S OPPOSITION TO JH KELLY, LLC'S DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY OF TED SCOTT** |
19 | | |
20 | | |
21 | | Date:       May 31, 2022<br>Time:       11:00 a.m.<br>Location:  Courtroom 2 |
22 | | |

23    AECOM Technical Services, Inc. ("AECOM") hereby opposes the Motion to

24 Exclude Expert Testimony of Ted Scott (the "Motion") filed by JH KELLY, LLC ("JH

25 Kelly") [Dkt. No. 210].  Pursuant to the long standing case law in the Ninth Circuit and

26 beyond, JH Kelly's Motion is an attack on Mr. Scott's credibility and such arguments are

27 more appropriately made during cross-examination.  As such, AECOM respectfully

28 requests that the Court deny JH Kelly's Motion.

## I. INTRODUCTION

JH Kelly, LLC's ("JHK") Daubert Motion to Exclude Expert Testimony of Ted Scott ("Motion") misapplies Federal Rule of Evidence 702 by arguing against Mr. Scott's interpretation of valid facts, and attempting to substitute either JHK's attorneys' opinions or that of JHK's expert regarding scheduling to justify improper attempts to exclude Mr. Scott's testimony in this matter. "The inquiry into the admissibility of expert testimony is 'a flexible one' where '(s)hakey but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.'" *TechShop , Inc. v. Rasure*, No. 18-cv-01044-HSG, 2019 U.S. Dist. LEXIS 69800, at *3 (N.D. Cal. April 24, 2019) citing *Primiano v. Cook* ("Primiano"), 598 F.3d 558, 564 (9th Cir. 2010).

JHK's motion attempts to repackage JHK's anticipated cross-examination of Mr. Scott as a *Daubert* motion, and employs inapt buzzwords in arguing that Mr. Scott used "unreliable reasoning," "unsupported assumptions," or "flawed methodology" to reach his opinions. These unsupported arguments fail because, as shown below, Mr. Scott is knowledgeable in the field of schedule analysis; he reviewed and relied upon proper sources and evidence, including project documents for the Burney Compressor Station Project ("Project"), the testimony of persons with knowledge of the key events on the Project, and AECOM's electrical engineering expert Steve Lewis for his opinions; and the windows analysis method used by Mr. Scott is an industry accepted method to analyze schedule impacts on construction projects. Moreover, JHK's attempts to challenge Mr. Scott's analysis by substituting its own conclusions, and the conclusions of its own schedule expert (Melvin Torres), merely demonstrate disagreement with Mr. Scott rather than any lack of reliability or expertise. Thus, JHK's challenges to Mr. Scott's opinions are not legitimate bases to exclude his testimony under the Daubert standard. As will be seen, Mr. Scott meets all criteria under *Fed. R. Evid.*, Rules 702 and 703 and applicable law. Therefore, AECOM respectfully requests that the Court deny JHK's motion.

///

## II. MR. SCOTT'S TESTIMONY IS PROPER UNDER FEDERAL RULES OF EVIDENCE 702 AND 703

*Federal Rules of Evidence*, Rule 702, allows an expert to testify as to his/her opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact at issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. *Federal Rules of Evidence*, Rule 703, allows an expert to base an opinion on facts in a case that the expert has been made aware of or personally observed. If experts from that same field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. *Fed. R. Evid.*, Rule 703.

Mr. Scott has more than 30 years in the construction industry, working as both a contractor and an expert in the analysis of construction delay and cost claims. (Declaration of John H. Conrad, Ex. 1.) As can be seen from his curriculum vitae, Mr. Scott has extensive experience in several construction industries and the use of schedule analysis to evaluate claims on major construction projects. (Declaration of John H. Conrad, Ex. 1.) Mr. Scott has been qualified as an expert in three prior federal proceedings. There is no question that Mr. Scott's qualifications meet the requirements of a schedule expert under the first criteria for *Fed. R. Evid.*, Rule 702.

Mr. Scott relied on appropriate evidence to perform a schedule analysis using industry accepted practices. His sources included Project specifications, the AECOM-JHK Subcontract for the Project, schedules issued by AECOM, schedules issued by JHK, project correspondence, daily reports, change order requests, site inspection reports, photos, and the deposition testimony of key Project personnel at Pacific Gas & Electric ("PG&E"), AECOM, and JHK. (Declaration of John H. Conrad, Ex. 2, paragraphs 2.5 and 2.6.) As part of Mr. Scott's analysis, he was able to evaluate delays that occurred on the Project to allocate responsibility for those schedule delays to either JHK, PG&E, or

AECOM. (Declaration of John H. Conrad, Ex. 2, paragraphs 1.5, and 1.8-1.48.) Thus, Mr. Scott meets the criteria for expert testimony under the second, third, and fourth criteria noted above for *Fed. R. Evid.*, Rule 702. Further, all of Mr. Scott's testimony is relevant as it is being used to evaluate JHK's overstated delay claim where JHK seeks all costs caused by delays on the Project.

JHK's Motion misconstrues the work of Mr. Scott, misconstrues the opinions of AECOM's electrical engineering expert (Steve Lewis) that Mr. Scott relied upon, misconstrues facts, misconstrues deposition testimony, and seeks to supplant either the opinions of JHK's attorneys or JHK's schedule expert for the conclusions and opinions of Mr. Scott. In doing so, JHK misapplies the *Daubert* standard. Based on Fed. R. Evid., Rule 702, and the holdings in *Sandoval-Mendoza* and *Primiano* the Court should deny the Motion.

### III. PHASE 1, WINDOW II OPINIONS ARE VALID

Mr. Scott broke the Project into three phases, based on the requirements of the prime contract between PG&E and AECOM. The three phases consisted of the design phase (Phase 1), the construction phase (Phase 2), and the commissioning phase (Phase 3) of the Project. (Declaration of John H. Conrad, Ex. 2, paragraphs 1.3 and 1.7.) The design phase was the timeframe where AECOM would complete the engineering design for the Project to define what would be built. The construction phase involved building the complete compressor station facility, based upon the design. The commissioning phase involved testing of the completed facility to verify its performance pursuant to the plans and specifications.

Phase 1 was broken into several "windows" of time to distinguish key milestones or events that occurred on the Project. Window I occurred from the start of the Project until AECOM submitted its Issued For Construction (IFC) drawings on February 24, 2017. These drawings were intended to be the completed design, from which construction would commence. However, at that time PG&E made additional revisions to the design causing in part the delay of the start of the foundation work on the Project until May 5,

2017.  Thus, Mr. Scott designated the timeframe between January 16, 2017, and November 15, 2017, as Phase 1, Window II.  (Declaration of John H. Conrad, Ex. 2, paragraphs 5.38-5.64.)

Mr. Scott identified 70 days of delay to the Project between February 24, 2017, and May 5, 2017, as the construction was delayed between those two dates.  (Declaration of John H. Conrad, Ex. 2, paragraph 5.63.)  Mr. Scott also attributed the 70 days of delay to two causes.  The first cause was PG&E's revisions to the engineering design that were provided shortly after February 24, 2017.  The second cause identified by Mr. Scott was the change in design of a major electrical underground passageway for conduit between the various buildings on the Project, known as a "ductbank."  For this delay, Mr. Scott relied upon the testimony of AECOM's electrical engineering expert, Steve Lewis, as well as the terms of the JHK Subcontract.  (Declaration of John H. Conrad, Ex. 2, paragraphs 5.45-5.50.)

Mr. Lewis opined that JHK owned the responsibility to identify underground obstructions that may conflict with the new engineering designs by AECOM.  Mr. Lewis also opined that JHK failed to identify a key underground conflict with the new ductbank designed by AECOM and existing gas lines at the site.  (Declaration of John H. Conrad, Ex. 3, paragraphs 24.1-24.3.)  Mr. Lewis opined that these gas line conflicts should have been identified by JHK at either the 60% or 90% drawing stage.  Mr. Lewis opined that if JHK would have identified this conflict at either of those times the impact of relocating the ductbank in conflict with the gas line could have been done in mid-to-late 2016, eliminating the need to relocate the ductbank in Phase 1, Window II.  (Declaration of John H. Conrad, Ex. 3, paragraphs 32-38.)

While Mr. Scott identified the PG&E design changes that were directed in Phase 1, Window II, based upon Mr. Lewis's findings it was ultimately decided by Mr. Scott that approximately half of the overall electrical revisions at that time involved relocating the ductbank to avoid the gas line.  Thus, Mr. Scott opined that half of the 70 day delay

during this window were the responsibility of JHK.  (Declaration of John H. Conrad, Ex. 2, paragraph 5.63.)

The only basis for JHK's Motion regarding this window is that JHK does not agree with Mr. Scott's analysis.  (Motion, 8:8-13:9.)  To that end JHK misconstrues Mr. Scott's statements within his report: "Scott assumes that Kelly is 100% responsible for the utility conflict" (Motion, 9:23); and "Scott assumes that the impact of the (sic) PG&E's preferential design changes and the utility conflict are equal and should be apportioned 50/50 to this time period without any evidence to support this assumption."  (Motion, 10:6-8.)  Mr. Scott did not "assume" anything, and used as his supporting evidence Mr. Lewis' expert report.  As noted above, Mr. Lewis found that JHK was responsible to identify underground conflicts with the new AECOM design, and that JHK should have identified the conflict in mid-to-late 2016.  (Declaration of John H. Conrad, Ex. 3, paragraphs 24.1-24.3, and 32-38.)  While Mr. Lewis did not opine about the actual delay time caused by JHK's failure to identify the gas line conflict sooner, Mr. Scott was within his expertise to assign a portion of the overall 70 day delay to JHK.

JHK goes on to argue that there was no evidence that AECOM was working on the resolution to the duct bank/gas line conflict throughout Phase 1, Window II.  (Motion, 11:12-24.)  However, Mr. Scott had documentary evidence that the ductbank/gas line conflict was identified sometime near February 24, 2017, and the revised ductbank drawings were issued on May 5, 2017.  (Conrad Decl., Ex. 2, paragraphs 1.21-21.22.)  Thus, there was valid documentary evidence that the ductbank delay extended between those dates.  Again, a proper *Daubert* motion does not, as JHK's motion does here, rely upon a disagreement with the data used, or the conclusions reached.  *Primiano, supra*, at 564.

JHK's Motion also argues that Mr. Scott's opinion regarding this window is not relevant.  Again, this is an improper argument under *Daubert*.  JHK may simply cross-examine Mr. Scott at trial to show any relevance issues.  *Id*.

Mr. Scott's procedures were valid, and JHK's basis to exclude Mr. Scott's testimony for this window is not legally supported.

### IV. PHASE 2, WINDOW I OPINIONS ARE VALID

Mr. Scott's analysis also identifies schedule impact to Phase 2, Window I due to the ductbank/gas line conflict. The construction work on the Project initially was to begin on March 24, 2017, but was delayed until June 1, 2017, due to the revisions required to the design drawings. (Declaration of John H. Conrad, Ex. 2, paragraphs 6.31-6.34.) As noted previously, Mr. Scott has apportioned half of that design delay to JHK due to its failure to identify the ductbank/gas line conflict in mid-to-late 2016. (Declaration of John H. Conrad, Ex. 2, paragraph 6.56.) For the same reasons stated in Section III of this Opposition, JHK's request to exclude Mr. Scott's testimony for this window should be denied.

### V. PHASE 2, WINDOW II OPINIONS ARE VALID

JHK argues that Mr. Scott's analysis and conclusion that JHK is responsible for 15 days of delay due to "slower than planned progress installing underground conduit underneath the Auxiliary Building" is "flawed and unreliable." Mr. Scott's analysis and conclusions are not flawed and unreliable because, as explained above, Mr. Scott's scheduling expertise will assist the jury understand the delay issues, he relied on appropriate evidence, he utilized an industry-accepted methodology, and he reliably applied that methodology here.

JHK ignores applicable law by premising its motion on its disagreement with Mr. Scott's conclusions. JHK's contentions about flaws in the expert's analysis "bear on the weight" of an expert's testimony, "not its admissibility," and "experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony." *United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*, No. 5:18-cv-00612-EJD, 2020 WL 470273, at *2 (N.D. Cal. Jan. 2020), citing *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018). "The test under Daubert is not the correctness of the expert's conclusions but the soundness of his

methodology." *Scripps Health v. Nthrive Revenue Syst,.* 2021 U.S. Dist. LEXIS 14790, citing *Primiano, supra*, at 564, and *Daubert v. Marrell Dow Pharms, Inc.*, 509 U.S. 579, 585.

JHK argues that Mr. Scott's understanding of the amount of ductbank under the Auxiliary Building is flawed, and thus his analysis is incorrect. However, Mr. Scott testifies not based on the number of feet of ductbank to determine JHK's delay, but based on a calculation of the total delay in the window minus the amount of delay that JHK can justify as part of its claim. (Declaration of John H. Conrad, Ex. 2, paragraphs 6.60-6.61, and 6.77-6.78.) JHK ignores the basic principle in construction contracts, that an Owner only has to extend delay to a contractor for items the contractor can justify. Where the contractor fails to justify delay, the contractor is responsible for that delay and any related damages caused by that delay to the Owner.

In this instance, Mr. Scott's testimony is that JHK could justify 26 days of delay in this window, but that there were 41 days of total delay. (Declaration of John H. Conrad, Ex. 2, paragraph 6.60.) Mr. Scott refers to Project documents that show JHK had insufficient manpower during this timeframe. (Declaration of John H. Conrad, Ex. 2, paragraph 6.79 and Figure 6-24.) Thus, Mr. Scott opined that JHK was responsible for the unjustified 15 days of delay. (Declaration of John H. Conrad, Ex. 2, paragraph 6.83.) This is a reasonable expert conclusion, regardless if JHK agrees or not. Thus, JHK's motion to exclude Mr. Scott's testimony for this window lacks legal support, and Mr. Scott's testimony meets the criteria under *Fed. R. Evid*., Rules 702 and 703.

**VI.   PHASE 2, WINDOW III OPINIONS ARE VALID**

JHK argues that Mr. Scott's analysis and conclusion that JHK is responsible for six days of delay due to "non-work time … between October 14-20, 2017" "is unsupported by any evidence." (Motion, 16:6-9.) Similar to JHK's Phase 2, Window II assertions, JHK ignores or misapplies applicable law related to Daubert motions. Again, purported analytical flaws, or arguable data deficiencies, "bear on the weight… not the admissibility," of expert testimony. *Bergelectric Corp.*, 2020 WL 470273 at *2.

JHK argues the conclusions reached by Mr. Scott concerning assigning the responsibility for the delay to the schedule, during the time that a portion of the Project site was shut down due to JHK's subcontractor striking the live gas valve, are not supported by the evidence. (Motion, 16:11-17:4.) JHK argues that its schedule expert, Mr. Torres, is correct and that Mr. Scott's conclusion that the critical path of the project was delayed these six days by JHK due to the valve strike, is not. (Motion, 16:23-17:4.) JHK also argues that Mr. Scott uses data that JHK feels is inadequate for his conclusions. (Motion 17:5-20.) Mr. Scott provided a detailed analysis for this window. (Decl. John H. Conrad, Ex. 2, paragraphs 6.85-6.107.) Again, the disagreement of JHK's counsel and its expert with Mr. Scott's analysis is an issue for trial; it is not a valid basis to exclude his testimony under the *Daubert* standard. As previously noted, what data is utilized, and the conclusions and even potentially the flaws in those conclusions, if applicable, are not the proper subject of a *Daubert* motion to exclude testimony. *In re Qualcomm, supra*, at 305. Rather, the opposing party must address these concerns on cross-examination during trial. *Primiano, supra*, at 564-565; *Daubert v. Merrell Dow Pharms, Inc.*, 509, U.S. 579, 585 (1993).

JHK also argues for exclusion of portions of Mr. Scott's expert report that deal with safety violations attributed to JHK's work on the Project. Mr. Scott reviewed material related to safety violations as part of his overall evaluation of the delays on the Project. As even noted in the Motion, Mr. Scott considered JHK's deficient safety performance in reaching his overall conclusion that JHK was responsible for the six day delay due to striking the active gas valve by JHK's subcontractor at the site. (Motion 17:8-12.) (Declaration of John H. Conrad, Ex. 2, paragraph 6.107.) Thus, the safety violation review was a part of Mr. Scott's overall schedule delay analysis and should not be excluded from Mr. Scott's testimony.

Therefore, JHK's motion to exclude Mr. Scott's testimony for this window lacks legal support, and Mr. Scott's testimony meets the criteria under *Fed. R. Evid.*, Rules 702 and 703.

## VII. PHASE 2, WINDOW IV OPINIONS ARE VALID

JHK argues that Mr. Scott's analysis and conclusion that JHK is responsible for six days of delay due to longer than planned time to pull electrical wire on the Project is flawed and likely to mislead the jury. JHK asserts that Mr. Scott did not have adequate documentation to support his opinion. (Motion 17:24-18:2.)

To the contrary, Mr. Scott performed a detailed analysis of this window. (Decl. John H. Conrad, Ex. 2, paragraph 6.108-116.) Mr. Scott reviewed the deposition transcript of AECOM's employee Peter Apostolakis, who testified that JHK failed to consistently supply electrician labor on the Project. (Conrad Decl., Ex. 4, 118:20-120:1.) Again, purported analytical flaws, or arguable data deficiencies, "bear on the weight… not the admissibility," of expert testimony. *Bergelectric Corp.*, 2020 WL 470273 at *2.

JHK also ignores the basic principle in construction contracts, that an Owner only has to extend delay to a contractor for items the contractor can justify. Where the contractor fails to justify delay, the contractor is responsible for that delay and any related damages caused by that delay to the Owner. Here Mr. Scott has determined that neither JHK nor its schedule expert, Mr. Torres, has justified schedule extension for this window timeframe. Thus, JHK is responsible for the delay. Therefore, JHK's motion to exclude Mr. Scott's testimony for this window lacks legal support, and Mr. Scott's testimony meets the criteria under *Fed. R. Evid.*, Rules 702 and 703.

## VIII. CONCLUSION

Therefore, AECOM respectfully requests that the Court deny JHK's motion.

Dated: April 21, 2022

TROUTMAN PEPPER HAMILTON SANDERS LLP


By: /s/ Luke N. Eaton
    MARION T. HACK
    LUKE N. EATON
    WILLIAM TAYLOR
    Attorneys for
    AECOM TECHNICAL SERVICES, INC.