UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JH KELLY, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AECOM TECHNICAL SERVICES, INC.,<br><br>    Defendant. | Case No. 20-cv-05381-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JH KELLY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 211 |

Before the Court is JH Kelly LLC's ("JH Kelly") motion for partial summary judgment against Defendant and Counter-Claimant AECOM Technical Services, Inc. ("AECOM"). Dkt. No. 211 ("Mot."). The motion is fully briefed. *See* Dkt. Nos. 226 ("Opp.") and 228 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART.**

**I.  BACKGROUND**

This construction dispute arises out of the Burney K2 Replacement Project ("Project"), which involved the replacement of a natural gas compressor unit and various upgrades at a compressor station near Burney, California. Dkt. No. 102 (JH Kelly's Second Amended Complaint or "SAC") ¶ 1. The Burney Compressor Station is part of Pacific Gas & Electric Company's ("PG&E") natural gas distribution system. *Id.* ¶ 11. That system supplies natural gas to the surrounding area and allows compressed gas to travel through pipelines from Oregon to consumers in California. *Id.* In all, PG&E's natural gas distribution system provides service to around 4.2 million customers from Bakersfield, California to the Oregon border. *Id.*

On February 11, 2016, AECOM entered into an agreement (the "EPC Agreement") with

1  PG&E for the Project.  *Id.* ¶ 19.  Under the EPC Agreement, AECOM agreed to act as the design-
2  builder and prime contractor for the Project.  *Id.*  On October 21, 2016, AECOM and Kelly
3  entered into an agreement (the "Subcontract") for the construction portion of the work.  *Id.* ¶¶ 25-
4  27.

5       Various issues on the Project led to disputes between JH Kelly, AECOM and PG&E.
6  Relevant here, JH Kelly contends that the Project was changed from what it bid and agreed to
7  perform, and that these changes imposed significant additional work and more difficult working
8  conditions.  *See* Dkt. No. 162.  JH Kelly also asserts that AECOM repeatedly ignored the
9  Subcontract's change-order requirements to pay JH Kelly for the changed work.  *Id.*  AECOM
10 denies each of those claims and counterclaims that JH Kelly breached the Subcontract.  *Id.*

11      JH Kelly filed the First Amended Complaint on January 2021.  Dkt. No. 18.  AECOM and
12 PG&E reached a settlement in October 2021 and ultimately agreed to dismiss their claims against
13 one another with prejudice.  *See* Dkt. Nos. 93, 127.  JH Kelly then filed the operative complaint,
14 which AECOM moved to dismiss in part.  Dkt. No. 102.  AECOM's motion was granted in part
15 and denied in part.  Dkt. No. 179.  JH Kelly now moves for partial summary judgment.

## II.  LEGAL STANDARD

17      Summary judgment is proper when a "movant shows that there is no genuine dispute as to
18 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).
19 A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*
20 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence
21 in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*
22 The Court views the inferences reasonably drawn from the materials in the record in the light most
23 favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
24 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"
25 *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*
26 *Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

27      The moving party bears both the ultimate burden of persuasion and the initial burden of
28 producing those portions of the pleadings, discovery, and affidavits that show the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

**III. DISCUSSION**

JH Kelly contends that it is entitled to partial summary judgment on three different categories of claims. First, it argues that AECOM waived its claims arising from damage to the V-35 valve, leaks to the GOV-2 valve, and repairs for the POV-166 valve ("Property Damage Claims") and cannot prove that it suffered damages from them. Mot. at 2. Second, JH Kelly contends that two of AECOM's implied-in-law claims for equitable indemnity and breach of the implied covenant of good faith and fair dealing are superfluous and must be dismissed. *Id.* And finally, it seeks summary judgment on its "right to prejudgment interest" under Cal. Civ. Code §

3

3287(a), but asks to reserve for trial the determination of the amount of interest to which it is entitled. *Id.*

### A. AECOM's Property Damage Claims

AECOM alleges that a fuel truck operated by one of JH Kelly's suppliers negligently struck and damaged a pressurized valve at the Project site. *See* Dkt. No. 65 (or "AECOM SAC") ¶ 91. PG&E withheld payments from AECOM and alleged additional costs related to the valve strike and for other "incomplete, deficient or defective work" performed by JH Kelly. *Id.* ¶ 208. Relevant here, PG&E also alleged that significant construction debris was left in the gas pipelines at the Project, which damaged two other valves and caused them to leak. *Id.* AECOM and PG&E agreed to a settlement in December 2021, under which AECOM received a lump-sum payment in exchange for PG&E and AECOM mutually releasing all claims against each other. *See* Dkt. No. 93; Mot. at 9.

AECOM now seeks $4,883,851 from JH Kelly for the Property Damage Claims. *See* Dkt. No. 211-1, Declaration of Eric A. Grasberger ISO Motion for Partial Summary Judgment ("Grasberger Decl."), Ex. 1 ("Gonzalez Report") at 63. JH Kelly argues that AECOM (1) waived those claims by agreeing to the Subcontract's subrogation waiver and (2) cannot show that it suffered any damage from those claims. As explained below, the Court finds that JH Kelly waived its first argument, and it finds the second one premature at this stage in the litigation.

#### i. Subrogation Waiver

JH Kelly first contends that AECOM waived its Property Damage Claims because (1) they are covered by AECOM's property insurance policy, and (2) the Subcontract waived all damages covered by that policy. Mot. at 2. But as a threshold matter, AECOM argues that JH Kelly is improperly raising this affirmative defense for the first time at the summary judgment stage. Opp. at 8-9. The Court agrees with AECOM.

In this Circuit, a party must give "fair notice" of the affirmative defenses it seeks to raise. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Although the Ninth Circuit has not yet determined whether affirmative defenses must satisfy the *Twombly/Iqbal* plausibility standard, judges in this District have routinely concluded that they do. *See Hernandez v. Dutch Goose, Inc.*,

4

Case No. C13-3537 LB, 2013 WL 5781476, at *4 n.2 (N.D. Cal. Oct. 25, 2013) (citing cases from nineteen different judges). Even among those that do not apply the *Twombly*/*Iqbal* plausibility standard to affirmative defenses, there is no dispute that "fair notice" requires, at minimum, some pleading of facts.[1]

JH Kelly contends that its Answer provided AECOM with sufficient notice of its subrogation waiver defense.[2] The Court disagrees. The Answer fails under either the *Twombly*/*Iqbal* plausibility standard or the lesser "fair notice" standard because it did not plead *any* facts about its subrogation waiver defense. Here is what the Answer said:

> *AECOM's Counterclaim, and each and every cause of action asserted therein, is barred due to the doctrine of waiver.* AECOM had knowledge of the terms of the Subcontract and intentionally failed to act in accordance with the terms of the Subcontract by, without limitation, failing to properly and timely process Kelly's change order requests, pay Kelly undisputed contract amounts, cooperate with and assist Kelly in presenting request for additional compensation to PG&E, proceed on the basis of trust and good faith, and act in a timely manner. AECOM further caused unreasonable delay and interference with Kelly's performance of its obligations under the Subcontract.

Dkt. No. 66 ¶ 229 (emphasis added). The only thing JH Kelly wrote in there that arguably identified its subrogation waiver defense is that "AECOM's Counterclaim, and each and every cause of action asserted therein, is barred due to the doctrine of waiver." *Id.* But just saying the word waiver is not enough. As Judge Seeborg has explained, "[b]aldly naming the broad affirmative defense of waiver falls well short of the minimum particulars needed to identify the affirmative defense and provide fair notice to the plaintiff." *Banga v. Kanios*, No. 16-CV-04270-

---

[1] *See, e.g.*, *Barrilleaux v. Mendocino Cnty.*, No. 14-CV-01373-TEH, 2016 WL 1298860, at *2 (N.D. Cal. Apr. 4, 2016) ("Neither mere reference to a legal doctrine, nor a bare recitation of statutory provisions, provides fair notice of an affirmative defense absent some fact or argument explaining the defense.") (citations omitted); *Stevens v. Corelogic, Inc.*, Case No. 14-cv-1158-BAS-JLB, 2015 WL 7272222, at *4 (S.D. Cal. Nov. 17, 2015); *Leos v. Rasey*, Case No. 1:14-cv-02029 LJO JLT (PC), 2016 WL 1162658, at *1 (E.D. Cal. Mar. 24, 2016) ("Though [fair notice is] not a demanding standard, it does still require a party to plead some factual basis for its allegations."); *Rosen v. Masterpiece Mktg. Grp.*, LLC, 222 F. Supp. 3d 793, 798 (C.D. Cal. 2016) ("[E]ven the fair notice standard requires at least some valid factual basis in support of its affirmative defense.") (citations and quotation marks omitted).

[2] JH Kelly has not argued that it disclosed its subrogation waiver defense anywhere else before summary judgment. *See* Reply at 5-6.

1    RS, 2018 WL 11360187, at *3 (N.D. Cal. Mar. 20, 2018).  And while JH Kelly pled some facts to

2    support the general waiver defense, the facts it pled have nothing to do with the subrogation

3    waiver.  At bottom, JH Kelly's pleadings do not give AECOM any notice—let alone "fair

4    notice"—of the subrogation waiver defense it now seeks to raise.

5         This Court has discretion to allow JH Kelly to raise its affirmative defense in a subsequent

6    motion if AECOM would not be prejudiced.  *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011,

7    1023 (9th Cir. 2010) ("Although Rule 8 requires affirmative defenses to be included in responsive

8    pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a defendant to

9    plead an affirmative defense in a subsequent motion.").  But JH Kelly's failure to disclose its

10   subrogation waiver defense in this case was not harmless.  By not raising this defense until a few

11   weeks before trial, JH Kelly prevented AECOM from mounting an adequate counterargument.

12        For example, AECOM would like to argue that the Property Damage Claims are also

13   covered by JH Kelly's general commercial liability insurance, which could mean that AECOM's

14   Property Policy "Other Insurance" exclusionary clause applies and, therefore, that the claims are

15   not subject to the Subcontract's subrogation waiver.  Opp. at 7.  But AECOM cannot adequately

16   make this argument because it never obtained evidence regarding JH Kelly's liability insurance.

17   *See id.* at 7 ("[I]t is entirely possible that JHK's own insurance should have covered this loss

18   (*although there is no evidence that JHK actually procured the contractually required*

19   *insurance*).") (emphasis added).  AECOM's failure is understandable, since JH Kelly only

20   disclosed its subrogation waiver defense after the close of discovery.

21        In short, JH Kelly's failure to disclose this defense had real consequences and substantially

22   prejudiced AECOM.  *See Karoun Dairies, Inc. v. Karlacti, Inc.*, No. 08CV1521 AJB WVG, 2014

23   WL 3340917, at *6 (S.D. Cal. July 8, 2014) (finding that the defendant was prejudiced by their

24   inability to conduct discovery due to the untimeliness of an affirmative defense that could have

25   been raised much earlier).  The Court accordingly finds that JH Kelly waived its subrogation

26   waiver affirmative defense by waiting to disclose it for the first time a few weeks before trial, and

27   strikes this defense under Rules 16(f) and 37(b)(2)(A)(ii) of the Federal Rules of Civil Procedure.

28   *See Solaria Corp. v. GCL Sys. Integration Tech. Co.*, No. 20-CV-07778-BLF, 2022 WL 267444,

at *5 (N.D. Cal. Jan. 28, 2022) (finding authority to strike the defendant's affirmative defenses under Rules 16 and 37 because the defendant violated the discovery schedule and scheduling order by waiting until summary judgment to disclose its defenses).[3]

### ii. AECOM's Indemnity and Contribution Claims

JH Kelly's next argument is that AECOM cannot show that it suffered any damage from the Property Damage Claims. The Court finds this argument premature and will allow JH Kelly to raise this issue again after the parties have presented their evidence at trial.

Understanding JH Kelly's argument requires some background. AECOM contends that JH Kelly caused the Property Damage Claims, which resulted in PG&E withholding payment from AECOM. Opp. at 12. PG&E brought claims against AECOM including "back-charges" for "a significant safety incident involving work on the Project by JH Kelly," which PG&E valued between $1.1 million and $4.7 million. Dkt. No. 225-1, Declaration of Marion Hack ISO AECOM's Opposition ("Hack Decl."), Ex. 5 ("Settlement Agreement"). AECOM eventually settled all the claims between AECOM and PG&E, which resulted in a lump-sum payment of $16,500,000 to AECOM. *Id.* § 2.A. As part of the Settlement, PG&E also agreed to assign to AECOM all rights related to the backcharges, including the Property Damage Claims. *Id.* § 2.G. AECOM is now pursuing the Property Damage Claims against JH Kelly through various indemnification claims, including one under the Subcontract's express indemnity provision. *See* Subcontract § 11.4.1.[4]

---

[3] JH Kelly contends that "AECOM cannot legitimately sue Kelly for property damage and then claim surprise when Kelly asserts the Subcontract's express waiver of property damage as a defense." Reply at 6. But the relevant question is not whether the defense is logical in theory: it plainly is. Instead, the point of the fair notice requirement discussed above is to require the party asserting the defense to disclose it in a timely manner, in enough detail so the opposing party can determine what discovery it needs to meet the defense. JH Kelly did not do that here, there is no reason this defense could not have been disclosed prior to the close of discovery, and the prejudice to AECOM from this tactic is plain.

[4] The express indemnity provision in the Subcontract says:

> Subcontractor, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, Design-Builder . . . from and against any and all causes of action, demands, claims, losses, damages, and liabilities whatsoever, including attorneys' fees and expenses, including, but not limited to, claims for bodily injury,

7

Now that PG&E and AECOM have settled all claims between them, the only potential source of liability for which JH Kelly has any indemnification obligation is the "back-charge" amounts that PG&E assigned to AECOM. AECOM says it suffered damages because its net settlement payment of $16,500,000 was offset by the back-charge amounts. Opp. at 12.

JH Kelly now essentially argues that AECOM cannot show that it suffered harm from the Property Damage Claims because AECOM settled those claims with PG&E without allocating any value to them. Mot. at 8. Put differently, JH Kelly's argument is that the lump-sum nature of the settlement payment to AECOM makes it impossible to determine to what extent AECOM paid for the Property Damage Claims that it asks JH Kelly to indemnify. Reply at 9.

The Settlement appears to value the backcharges that AECOM now seeks from JH Kelly at $5,096,162. Specifically, Section 2(B) states:

> The Settlement Payment is a compromise and full satisfaction solely of the Burney Proof of Claim and the claims asserted in AECOM's Counterclaim and PG&E's Counterclaim respectively, including but not limited to $1,500,000 in alleged liquidated damages, *$5,096,162 in alleged backcharges for incomplete and/or defective work*, and attorneys' fees and expert costs related to said claims.

*See* Settlement Agreement § 2.B. But as JH Kelly notes, that provision merely identifies which claims the Settlement resolved. It does not tell us what AECOM paid to resolve the claims that it now asks JH Kelly to indemnify.

JH Kelly contends AECOM's failure to clearly identify what it paid in exchange for satisfaction of the Property Damage Claims warrants summary judgment on those claims. But it has not identified case law supporting that position. While its argument relies heavily on *Dillingham Const., N.A., Inc. v. Nadel P'ship, Inc.*, that case did not hold that the failure to

---

sickness or death, and property damage or destruction resulting from the acts, errors or omissions of Subcontractor, Sub- Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable. Subcontractor's provision of indemnification shall be limited to damages to property and personal injury and shall be limited solely to the extent of the Subcontractor's negligence.

Subcontract § 11.4.1.

8

1    allocate between claims in a settlement agreement precludes a later indemnification action. 64
2    Cal. App. 4th 264, 284, 75 Cal. Rptr. 2d 207 (1998). It instead said that "[w]here a settling
3    defendant is entitled to only partial indemnity, failure to allocate between claims in the settlement
4    agreement means that *damages must be proven without the presumptive evidence of the*
5    *nonsettling defendant's liability afforded by a settlement agreement in which proceeds have been*
6    *allocated.*" *Id.* In that situation, the *Dillingham* court explained, "the settlement amount works
7    only to place an upper limit on the indemnity claim" and "there may be other methods to establish
8    damages." *Id.* at 285. Taking the *Dillingham* court's lead, a federal court applying California law
9    explained that "[t]he failure to allocate is not fatal to a determination of indemnity, but instead
10   when there is no allocation, the trier of fact must determine the allocation before determining
11   indemnity." *Res-Care Inc. v. Roto-Rooter Servs. Co.*, No. C-09-03856 EDL, 2011 WL 3353893,
12   at *15 (N.D. Cal. Aug. 3, 2011) (citing *Dillingham*, 64 Cal. App. 4th at 276). Based on this
13   authority, which the Court finds persuasive on the facts here, the Court concludes that AECOM's
14   failure to identify what it paid in exchange for the Property Damage Claims is not necessarily fatal
15   to its efforts to seek indemnification for those claims.

16   That said, the Court confesses that it does not understand what evidence AECOM will or
17   could present to the jury to help them understand what AECOM paid to resolve the Property
18   Damage Claims. As explained above, the Settlement Agreement appears to merely identify which
19   claims the Settlement resolved and does not explain what AECOM paid to resolve those claims.
20   *See* Settlement Agreement § 2.B. AECOM contends (without any citation to evidence) that "[b]ut
21   for these back-charges, AECOM would have received a larger amount in settlement." Opp. at 11.
22   But the Settlement Agreement provides no way for the Court or the jury to answer the obvious
23   follow-up question: How much larger? And while AECOM vaguely says that it "will call
24   witnesses to support the amount of these claims," it is unclear what any of these hypothetical
25   witnesses could say. In theory, a witness directly involved in settling the underlying case could
26   plausibly testify about allocation. *See Res-Care Inc.*, 2011 WL 3353893, at *17. But here, the
27   Settlement Agreement is fully integrated, which means that it "contains the entire understanding
28   and agreement between the Parties" and that "[t]here are no representations, warranties, promises,

or other statements upon which the Parties have relied, by whatever name called, express or implied, written or oral, except as expressly set forth" by it.  Settlement Agreement § 14; *see also Dillingham Const.*, 64 Cal. App. 4th at 285.

In the end, however, what AECOM gave up settling the Property Damage Claims presents factual questions that cannot be resolved on this record at this stage.  *Cf. Collins Dev. Co. v. D.J. Plastering, Inc.*, 81 Cal. App. 4th 771, 776, 97 Cal. Rptr. 2d 83 (2000) ("[A]n indemnitee's right to contractual indemnity is a matter for disposition by way of trial, rather than by way of any abbreviated proceedings").  The Court will accordingly deny JH Kelly's motion as to AECOM's indemnification claims—without prejudice to JH Kelly raising this issue again after the parties have presented their evidence at trial.

**B.   AECOM's Implied-in-Law Claims**

JH Kelly contends that two of AECOM's implied-in-law claims for equitable indemnity and breach of the implied covenant of good faith and fair dealing are superfluous and must be dismissed.  *Id.*

The Court agrees that AECOM cannot maintain an equitable indemnity claim because Subcontract § 11.4.1 expressly controls the indemnification duties and respective liability of the parties.[5]  *See Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628, 532 P.2d 97, 100 (1975) ("Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the

---

[5] The express indemnity provision in the Subcontract says:

> Subcontractor, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, Design-Builder . . . from and against any and all causes of action, demands, claims, losses, damages, and liabilities whatsoever, including attorneys' fees and expenses, including, but not limited to, claims for bodily injury, sickness or death, and property damage or destruction resulting from the acts, errors or omissions of Subcontractor, Sub- Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable. Subcontractor's provision of indemnification shall be limited to damages to property and personal injury and shall be limited solely to the extent of the Subcontractor's negligence.

Subcontract § 11.4.1.

independent doctrine of equitable indemnity."); *Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd.*, No. C 10-2976 SBA, 2010 WL 4510905, at *4 (N.D. Cal. Nov. 2, 2010) (barring implied contractual indemnity and equitable indemnity claims because of an express indemnity agreement). JH Kelly's motion for summary judgment is accordingly **GRANTED** as to AECOM's equitable indemnity claim.

The Court also agrees that AECOM's claim for breach of the implied covenant of good faith and fair dealing is duplicative of its breach of contract claims. JH Kelly's motion is **GRANTED** as to AECOM's implied covenant claims for the same reason the Court previously dismissed JH Kelly's superfluous implied covenant claims. *See* Dkt. No. 179 at 4-6.

### C. JH Kelly's Prejudgment Interest Claim

Finally, JH Kelly seeks summary judgment on its "right to prejudgment interest" under Cal. Civ. Code § 3287(a), but asks to reserve for trial the determination of the amount of interest to which it is entitled. *Id.* AECOM contends that this request is premature because JH Kelly's "damages," if any, have not yet been determined. The Court agrees with AECOM, finds JH Kelly's piecemeal approach inefficient, and **DENIES WITHOUT PREJUDICE** JH Kelly's motion for prejudgment interest. *See Solaria Corp. v. GCL Sys. Integration Tech. Co.*, No. 20-CV-07778-BLF, 2022 WL 267444, at *14 (N.D. Cal. Jan. 28, 2022) (finding the plaintiff's request for prejudgment interest at the summary judgment stage to be "premature").

**IT IS SO ORDERED.**

Dated: May 28, 2022

HAYWOOD S. GILLIAM, JR.
United States District Judge